#06 8220

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JUN 12 2008
U.S. COURT OF FEDERAL CLAIMS

EARLEEN FAUVERGUE, )
)
For Herself and As Representative of a Class of )
Similarly Situated Persons, )
)
Plaintiffs, )
) No. 08-431 L
vs. )
)
THE UNITED STATES OF AMERICA, )
)
Defendant. )
)

## COMPLAINT

### SUMMARY OF THIS CASE

Earleen Fauvergue is a citizen of the United States and the State of Missouri. Ms. Fauvergue is a fee owner of land in Jasper County, Missouri. In 1876, the Memphis, Carthage and Northwestern Railroad Company ("MCNRC") acquired an easement for operation of a railroad across private land. This easement is a part of a 28.25 mile corridor from Columbus, in Cherokee County, Kansas to Carthage, in Jasper County, Missouri.

The Jasper County, Missouri portion of the easement was acquired by a condemnation decree. Under the terms of the condemnation decree and under Missouri law, once the successor to the MCNRC (which is now the Burlington Northern and Santa Fe Railway ("BNSF")) ceased operating a railroad across the right-of-way, the railroad easement was abandoned and the Plaintiffs, as the fee owners of this land, regained their right to the exclusive use and physical possession of their property.

However, § 8 (d) of the 1983 amendments to the National Trails System Act, 16 U.S.C. §1247(d) ("Trails Act"), provides that the issuance of a Notice of Interim Trail Use ("NITU") by the Surface Transportation Board (STB) forestalls or precludes the Plaintiff property owners' "reversionary"[1] right to this land and allows the Plaintiffs' property to be transferred to a trail user for use as a public-access recreational trail and possible future railroad.

The STB issued a NITU affecting this abandoned railroad right-of-way on June 21, 2002. Pursuant to the Trails Act and this NITU, the City of Carl Junction and the Joplin Trail Coalition (collectively "trail operator") entered into negotiations with the BNSF for acquisition of an easement for a public-access recreational trail to be located across the abandoned railroad corridor crossing over land in Kansas and Missouri. Under the terms of the original railroad condemnation decree, and under Kansas and Missouri law, BNSF did not own or possess any right to grant the City of Carl Junction or the Joplin Trail Coalition an easement across the Plaintiff's land.

The denial of the Plaintiff landowner's "reversionary right" to possess her property and the appropriation of a new easement for an interim public-access recreational trail and the creation of a new easement for a future railroad corridor across the Plaintiff's property is a taking of the Plaintiff's property for which the Fifth Amendment to the U.S. Constitution requires that the United States pay "just

[1] Plaintiff's use the term "reversionary" because such term was used in the generic sense by the Federal Circuit in *Barclay* and *Renewal Body Works*. Technically this is not a "reversion" of the property. Rather the Plaintiff and her predecessors in title always held fee title to the property. Their fee title had been burdened by an easement for operation of a railroad. Upon the railroad's abandonment of this easement, their fee became "unburdened" by this easement to the extent that "reversionary" is used in this pleading it is used in the generic sense.

compensation" to the Plaintiff property owner. To date, the United States has taken this landowner's property and has not paid, nor has the federal government offered to pay, any compensation.

This action is the claim by this United States citizen brought pursuant to the Fifth Amendment and the Tucker Act 28 U.S.C. § 1491 (a)(1) seeking "just compensation" for the value of her property taken from her by the federal government through operation of the Trails Act. The "just compensation" she seeks includes compensation for the delay between the date her property was taken (or made subject to the Trails Act) and when the federal government ultimately pays her compensation. She also seeks the government to pay her attorney fees and expenses incurred in bringing this action pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c)(2000).

Plaintiff is seeking to have this matter certified as a class action pursuant to RCFC 23 for all those similarly situated land owners that own land abutting or underlying the abandoned BNSF railroad right of way in Cherokee County, Kansas and Jasper County, Missouri. This is the fourth case that has been filed by a property owner owning land abutting or underlying this abandoned right of way. See, *Carl Junction R-1 School District v. United States*, Case No. 05-31L, *Jeff Lundien et al v. United States*, No. 05-41L, and *Winder v. United States*, 08-324L. None of the previous three cases were filed as class actions. Plaintiff seeks to have this case certified to include all those similarly situated property owners who have not participated in any of the three earlier filed cases.

## COMPLAINT

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. §1491(a)(1) ("Tucker Act") because this action presents a claim against the United States which is founded upon the Constitution and Statutes of the United States.

## STATUTES AND CONSTITUTIONAL PROVISIONS

2. Plaintiff's claim is governed by the following statutes and constitutional provision:

The Fifth Amendment to the United States Constitution, which provides, "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("Trails Act").

The Tucker Act, 28 U.S.C. § 1491(a) ("Tucker Act"), which provides in relevant part, "The United States Court of Federal Claims shall have jurisdiction to render judgment on any claim against the United States founded upon the Constitution."

The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) (2000), which provides that just compensation includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

**The Plaintiff:**

3. Ms. Earleen Fauvergue is a citizen of the United States of America and a citizen of the State of Missouri.

4. Ms. Fauvergue and her late husband, George Fauvergue, owned fee title to property, which abuts and underlies the former Burlington Northern Santa Fe ("BNSF") right-of-way, on June 21, 2002. (A copy of the Warranty by which Plaintiffs acquired their property, recorded in Book 1473, Pages 1020-22 in the Jasper County Recorder of Deeds Office, is attached as "Exhibit A.")

5. On April 24, 2006, Since June 21, 2002, Mr. Fauvergue passed away. (A copy of the death certificate is attached as "Exhibit G.")

6. Ms. Fauvergue, individually, now owns this property.

**The Defendant**:

7. The Defendant in this case is the United States Government, a republic governed by the Constitution and Statutes of the United States of America.

**The Named Plaintiff Seeks to Represent Other Similarly Situated Jasper County, Missouri Property Owners.**

8. Plaintiff, Ms. Fauvergue, brings this action in her individual capacity as a property owner whose land has been taken by the federal government and also as a representative on behalf of herself and all other similarly situated landowners who own property in Cherokee County, Kansas and Jasper County, Missouri.

9. According to the Federal Circuit, those property owners entitled to bring a claim for "just compensation" are those that owned property on the "date of taking" which is the June 21, 2002 date when the STB issued the NITU. The named Plaintiff held title to her property on June 21, 2002 and the members of the representative class she seeks to represent are those other land owners of land in Missouri and Kansas that also held title to property subject to the NITU and Trails Act on June 21, 2002.

10. To the best of Plaintiff's information and belief, there are numerous other landowners along the approximately 25.28 mile length of abandoned right-of-way in Cherokee County, Kansas and Jasper County, Missouri who hold fee title to property for which their state law "reversionary" property rights were forestalled and whose property is now subject to an easement for a public-access recreational trail and possible future railroad use by reason of the NITU and Trails Act.

11. There are questions of law and fact common to the class; Plaintiff's claims are typical of the claims of the class; and Plaintiff will fairly and adequately protect the interests of the class.

**How the Railroad Easement Across the Plaintiff's Land Was Created**

12. On March 13, 1876, the Jasper County Circuit Court in *Memphis, Carthage and North Western Rail Road Company, Plaintiffs v. Evan Evans, et al., Defendants*, Case No. 905, entered a condemnation order appropriating, for the benefit of MCNRR, a strip of land 100 fee wide over and across land now owned by the Plaintiffs. (A copy of this Order is attached as "Exhibit B.")

13. Under settled Missouri and Kansas law, when a railroad condemns land for a right-of-way, the railroad acquires only an easement to use the property for the purpose of operating a railroad. For Missouri, *see* Mo. Const. art. I, § 26; *Quinn v. St. Louis-San Francisco Ry. Co.*, 439 S.W.2d 533, 534-35 (Mo. 1969); *Boyles v. Missouri Friends of the Wabash Trace Nature Trails, Inc.*, 1998 WL 792070 (Mo.Ct.App. 1998). For Kansas, *see* Gen. Stat. 1901, §§ 1359-1365; *Abercrombie v. Simmons*, 71 Kan. 538, 81 P. 208 (1905); *Harvest Queen Mill & Elevator v. Sanders*, 370 P.2d 419, 423 (Kan. 1962).

14. The MCNRR acquired only an easement across the land in Cherokee County, Kansas upon which the right of way was constructed.

15. The MCNRR was the predecessor of the St. Louis and San Francisco Railway Company ("SLSF"), which in 1980, merged into the Burlington Northern Railroad Company ("BN"). The BN subsequently merged with the Atchison, Topeka and Santa Fe Railway in 1995 to become the Burlington Northern and Santa Fe Railway Company ("BNSF").

**Railroad Use of the Plaintiff's Land Was Abandoned**

16. The BNSF formerly held an easement for a railroad right-of-way between milepost 343.55 in Columbus, Cherokee County, Kansas, and milepost 315.30 in Carthage, Jasper County, Missouri, a distance of approximately 28.25 miles (the "Railroad Line").

17. On May 23, 2002, BNSF filed with the Surface Transportation Board ("STB") a Notice of Exemption to abandon the 28.25 Railroad Line. (A copy of the Abandonment Exemption is attached as "Exhibit C" and the accompanying Environmental Assessment is attached as "Exhibit D.")

18. BNSF certified to the STB that "no local traffic has moved over the line for at least 2 years [and] there is no overhead traffic to be rerouted." (*See* Exhibit C).

19. On May 10, 2002, the City of Carl Junction and the Joplin Trail Coalition ("JTC"), represented by the same counsel, jointly filed a request for the issuance of a Notice of Interim Trail Use ("NITU") pursuant to 16 U.S.C. § 1247(d) of the National Trails System Act for the Missouri portion of the right-of-way between milepost 331.23

at the State line and milepost 315.30 near Carthage, a distance of 15.93 miles ("Missouri line").

20. On May 29, 2002, the Joplin Trail Coalition filed a request for the issuance of a NITU for the Kansas portion of the right-of-way between milepost 343.55 at Columbus and milepost 331.23 at the State line, a distance of 12.32 miles ("Kansas line").

21. On June 21, 2002, the STB issued a Decision that granted the commenters' request for issuance of a NITU for both the Missouri line and the Kansas line. The trail use negotiating period was scheduled to expire on December 19, 2002 (A copy of the June 21, 2002 Decision is attached as "Exhibit E.")

22. On November 22, 2002, BNSF filed a request for a 180-day extension of the trail use negotiation period until June 17, 2003. (A copy of the STB's December 19, 2002 Decision is attached as "Exhibit F.")

23. On December 10, 2002, the Cherokee County (Kansas) Landowner's Association[2] ("Association") filed a statement in opposition to an extension of the trail use negotiating period, arguing that "the right-of-way should be allowed to revert to the adjacent landowners." (*See id.*)

24. The BNSF filed a response to the Association's statement in opposition arguing that "it believes that a trail may still be accommodated while taking into account the concerns of the Association." (*See id.*)

25. In response, the STB stated that "[u]nder the Trails Act and our implementing rules, if a prospective trail user requests a trail condition and the carrier

---

[2] The Association was composed of over sixty individuals owning property adjacent to the right-of-way.



STLDOCS 2175000v1

indicates its willingness to negotiate a trail agreement, the Board's role under the Trails Act is largely ministerial....If the railroad indicates its willingness to negotiate, the Board must then issue a notice of interim trail use." (*See id.*)

26. Accordingly, the trail use negotiating period was extended to June 17, 2003. (*See id.*)

**<u>The STB Converted the Abandoned Right-of-Way To Trail Use Under the Trails Act</u>**

27. Pursuant to this NITU and the Trails Act, on June 16, 2003, a Trail Use Agreement was reached between BNSF and the JTC.

28. The Agreement purports to transfer BNSF's interests to the JTC, and upon notice, to the City of Carl Junction, Missouri, provided the City execute written acknowledgment of the Agreement and agree to be bound to its terms.

29. On October 20, 2003, the BNSF posted a letter to the STB advising of the consummation of a Trail Use Agreement with the JTC. The BNSF further represented that "[t]he remainder of the right of way has been salvaged and BNSF's discontinuance of the subject line will be consummated on October 31, 2003."

30. Effective October 31, 2003, the BNSF discontinued its operations on the line and the JTC, a Missouri non-profit corporation, is operating a public-access recreational trail on the abandoned line.

31. On or about September 16, 2004, the BNSF entered into a Quitclaim Deed with the Joplin Trail Coalition, conveying BNSF's right, title and interest to any and all rights of way, reservations and easements of record between the Missouri-Kansas state line and Milepost 315.30 near Carthage, Jasper County, Missouri.

32. The Joplin Trail Coalition is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad.

33. The Plaintiff owns fee title to property in Jasper County, Missouri that adjoins and underlies a portion of the railroad right-of-way originally established as an easement for the use of the Memphis, Carthage and Northwestern Railroad and was subject to the June 21, 2002 NITU.

34. The Plaintiff owned this property on June 21, 2002. (A copy of the deeds by which Plaintiff acquired her property is attached as "Exhibit A").

**<u>The Federal Trails Act Operated To Take The Plaintiff's Land For Which "Just Compensation" Is Due</u>**

35. The Trails Act provides that "in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16. U.S.C. 1247(d).

36. But for operation of the Trails Act, the Plaintiff would have the exclusive right to physical ownership, possession and use of her property free of any present or future easement for recreational trail use and free of any easement for current or future railroad use.

37. Creating an easement for a current or future public access recreational trail across the Plaintiff's land and appropriating a new easement for possible future railroad use has taken from the Plaintiff not just the value of the land physically appropriated for

this rail-trail corridor but has also greatly diminished the value of the Plaintiff's adjoining property.

38. The United States Constitution requires the federal government to pay "just compensation" to all those property owners holding fee title to property that was subject to the NITU. *Preseault v. United States,* 494 U.S. 1 (1990) (*Preseault* I); *Preseault v. United States*, 100 F. 3d 1525 (Fed. Cir. 1996) (*Preseault* II); *Towes v. United States,* 376 F. 3d 1371, 1376 (Fed. Cir. 2004).

39. The easement granted to the Memphis Carthage and North Western Rail Road Company (and its subsequent successors-in-interest, including Burlington Northern and Santa Fe Railway Company) did not grant to the railroad or any other person or entity the right to use the Plaintiff's property for a public-access recreational trail.

40. Under the terms of the Condemnation Order and under Missouri and Kansas law, when operation of a railroad was abandoned over the Plaintiff's property, the easement was abandoned and the Plaintiff regained the right to use and possess her land free of any easement and to exclude others from her land.

41. The Trails Act allows the conversion of abandoned railroad rights-of-way for use as interim public-access recreational trails and preserves the right-of-way for possible future reactivation as a railroad. The Trails Act further provides that such conversion to trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C § 1247 (d).

42. The Plaintiff's property had never been subject to an easement allowing the public to use the Plaintiff's property for a recreational trail.

43. The Plaintiff's property has never been subject to a general right of the public to cross or make use of the Plaintiff's property for any purpose.

44. Any easement for operation of a railroad across the Plaintiff's property had been abandoned and extinguished and the Plaintiff enjoyed under Missouri law the right to use and occupy her land free of any present or future easement for operation of a railroad across her land.

45. The federal government, through operation of the Trails Act and issuance of the NITU, has: (a) forestalled or taken from the Plaintiff her state law "reversionary"[3] right to her property; (b) appropriated an easement across the Plaintiff's property for an interim public-access recreational trail; and, (c) appropriated an easement for a potential future railroad right-of-way across the Plaintiff's property and took the Plaintiff's rights she has under state law to the exclusive use and physical occupation of her land.

46. This taking of the Plaintiff's property occurred when the STB issued the NITU on June 21, 2008. *Caldwell v. United States*, 391 F.3d 1226, 1236 (Fed. Cir. 2004); *Barclay v. United States*, 443 F.3d 1368, 1378 (Fed. Cir. 2006); consolidated on appeal with *Renewal Body Works, Inc. v. United States*.

47. The United States has neither instituted any condemnation proceeding against Plaintiff or the other class members, nor paid, nor offered to pay, the Plaintiff for the property it has taken from her.

48. The actions of the United States have resulted in the taking of Plaintiff's property by reason of the direct physical taking of Plaintiff's land and by reason of the

---

[3] *See* note 1 regarding Plaintiff's use of the term "reversionary" or "reversion" in this Complaint. *See also*, *Toews v. United States*, 376 F. 3d 1371, 1376 (2004).

damage to Plaintiff's remaining adjacent property which has and will suffer a loss of privacy and other severance damages as a result of the proximity of the public on the adjoining trail. The remaining property is also less valuable by reason of being divided into a smaller parcel by reason of the easement for trail use and adjoining an easement for possible future railroad use.

WHEREFORE, Plaintiff respectfully requests a judgment in her favor and in favor of similarly situated land owners in Missouri and Kansas:

1. Certification of this matter as an opt-in class action pursuant to RCFC 23.

2. Awarding Plaintiffs the full fair market value of the property taken by the United States on the date it was taken (including any "severance damages" suffered by the Plaintiff in loss of value to the Plaintiff's remaining property not actually physically taken but affected by the taking);

3. Compensation for the delay between the date of the government's taking of the Plaintiff's property and the actual date when the government finally pays "just compensation" to the Plaintiff;

4. Paying the Plaintiff's costs and attorneys' fees incurred pursuant to The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654(c) (2000), which provides that just compensation includes "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

5. Such further relief as this Court may deem just and proper.

Respectfully submitted,

LATHROP & GAGE, L.C.

Date: June 11, 2008

By: ________________________

MARK F. (THOR) HEARNE, II
LINDSAY S.C. BRINTON
MEGHAN S. LARGENT
The Equitable Building
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
Telephone: (314) 613-2500
Facsimile: (314) 613-2550
(Mailing Address)

Franklin Square, Suite 1050 East
1300 Eye Street, NW
Washington, D.C. 20005
Telephone: (202) 962-0032
Facsimile: (202) 962-0357

Attorney for Plaintiff

# EXHIBIT A

3439

# DEED OF CO-PERSONAL REPRESENTATIVES

BOOK 1473 PAGE 1020

KNOW ALL MEN BY THESE PRESENTS, THAT

WHEREAS, the Probate Division of the Circuit Court of Jasper County, Missouri, by its Order to Sell Real Property made on the 26th day of JANUARY, 1995, did Order, Authorize and Direct the undersigned, as Co-Personal Representatives of the Estate of RONALD LEE CRAIN, Deceased, to sell at Private Sale for Cash the real property hereinafter described, belonging to the Estate of said Decedent, first having said real property appraised according to law, and

WHEREAS, in obedience to said Order We did on the 31st day of JANUARY, 1995, sell said real property at Private Sale to GEORGE FAUVERGUE AND EARLEEN FAUVERGUE, HUSBAND AND WIFE, of Jasper County, Missouri, (Mailing address P. O. Box 114, Joplin, MO 64802) for SEVEN HUNDRED FIFTY-EIGHT THOUSAND FOUR HUNDRED DOLLARS ($758,400.00) in cash, with said sale being for more than three-fourths (3/4) of the appraised value of said real property, as shown by the inventory filed on the 6th day of DECEMBER, 1994, and

WHEREAS, on the 3rd day of FEBRUARY, 1995, WE as Co-Personal Representatives did make and file with said Court a full Report of our proceedings under said Order to Sell Real Property, and on the 14th day of FEBRUARY, 1995, said Court made its Order approving and confirming said sale and our Report thereof and Ordering and Directing us as such Co-Personal Representatives to make, execute, acknowledge and deliver a deed to said real property to the purchasers thereof at said sale.

NOW, THEREFORE, in obedience to the Orders of said Court and in consideration of the payment to me by the said GEORGE FAUVERGUE AND EARLEEN FAUVERGUE, HUSBAND AND WIFE, of the full purchase price for said real property, the sum of SEVEN HUNDRED FIFTY-EIGHT THOUSAND FOUR HUNDRED DOLLARS ($758,400.00), the receipt of which is hereby acknowledged, WE, THOMAS L. NUTT AND BEVERLY A. EPPRIGHT, as Co-Personal Representatives of the Estate of RONALD LEE CRAIN, Deceased, do hereby SELL AND CONVEY unto the said GEORGE FAUVERGUE AND EARLEEN FAUVERGUE, HUSBAND AND WIFE, their heirs and assigns, all of the right, title and interest which the said RONALD LEE CRAIN, Deceased, had at the time of his death in and to the following described real property, lying, being and situate in JASPER County, Missouri, to-wit:

SEE DESCRIPTION ATTACHED

TO HAVE AND TO HOLD the premises aforesaid with all and singular the rights, privileges, appurtenances and immunities thereunto belonging or in anywise appertaining unto the said GEORGE FAUVERGUE AND EARLEEN FAUVERGUE, HUSBAND AND WIFE, their heirs and assigns forever.

IN WITNESS WHEREOF, WE, THOMAS L. NUTT AND BEVERLY A. EPPRIGHT, as Co-Personal Representatives of the Estate of RONALD LEE CRAIN, Deceased, have hereunto set our hands and seals on this 8th day of MARCH, 1995.

Thomas L. Nutt
THOMAS L. NUTT Co-Personal Representative of the Estate of RONALD LEE CRAIN, Deceased

Beverly A. Eppright
BEVERLY A. EPPRIGHT Co-Personal Representative of the Estate of RONALD LEE CRAIN, Deceased

STATE OF MISSOURI )
) ss.
COUNTY OF JASPER )

On the 8th day of March, 1995, before me, the undersigned, a Notary Public in and for said County and State, personally appeared THOMAS L. NUTT AND BEVERLY A. EPPRIGHT, to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed as Co-Personal Representatives of the Estate of RONALD LEE CRAIN, Deceased.

(SEAL) NOTARY PUBLIC

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at Joplin, MO this 8th day of March, 19 95

Cathy M. Beck
Cathy M. Beck Notary Public

My commission expires 10-6-96

STATE OF MISSOURI } ss.
COUNTY OF JASPER }

In The Recorder's Office

*I, Edie Neil, Recorder of Deeds of said county, do hereby certify that the within instrument of writing was, on the 9th day of MARCH A.D. 19 95 at 12 o'clock and 37 minutes P. M., duly filed for record in this office, and is recorded in the records of this office in Book 1473 at page 1020-1022*

*In Witness Whereof, I have hereunto set my hand and affixed my official seal at Carthage, Mo., on the day and year aforesaid.*

EDIE NEIL Recorder

By Deputy

EXHIBIT A

LAND IN SECTION 1, TOWNSHIP 28, RANGE 34:
THE WEST 20 ACRES OF THE WEST 75 ACRES OF THE NORTH 100 ACRES OF THE SOUTHWEST
QUARTER OF SECTION 1, TOWNSHIP 28, RANGE 34, EXCEPT 20 FEET ON THE NORTH SIDE
TAKEN FOR ROAD, AND EXCEPT ANY PART TAKEN OR DEEDED FOR ROAD PURPOSES, ALL IN
JASPER COUNTY, MISSOURI.

LAND IN SECTIONS 2 AND 3, TOWNSHIP 28, RANGE 34:
ALL OF THE SOUTHEAST QUARTER OF SECTION 2, TOWNSHIP 28, RANGE 34, JASPER
COUNTY, MISSOURI, EXCEPT ANY PART TAKEN OR DEEDED FOR ROAD PURPOSES, AND
THE WEST HALF OF LOT TWO (2) OF THE NORTHWEST FRACTIONAL QUARTER OF SECTION 2
AND THE NORTH HALF OF THE NORTH HALF OF SECTION 3, ALL IN TOWNSHIP 28, RANGE
34 NOW AND MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT A STONE AT
THE NORTHWEST CORNER OF SAID SECTION 2, THENCE EAST ALONG THE TOWNSHIP LINE 20
CHAINS TO A STONE, THENCE SOUTH 19 34/100 CHAINS TO A STONE; THENCE WEST 31
1/100 CHAINS TO THE STATE LINE OF MISSOURI AND KANSAS; THENCE NORTH ALONG
STATE LINE 19 28/100 CHAINS TO THE TOWNSHIP LINE, THENCE EAST ALONG TOWNSHIP
LINE 11 71/100 CHAINS TO BEGINNING, ALL IN JASPER COUNTY, MISSOURI, EXCEPT ANY
PART TAKEN OR DEEDED FOR ROAD PURPOSES, AND

ALL OF THE NORTH 65 FEET OF THE WEST HALF OF LOT ONE (1) OF THE NORTHWEST
FRACTIONAL QUARTER OF SECTION 2, AND THE NORTH 65 FEET OF THE SOUTH HALF OF
THE NORTH HALF OF SECTION 3, ALL IN TOWNSHIP 28, RANGE 34, JASPER COUNTY,
MISSOURI, EXCEPT ANY PART TAKEN OR DEEDED FOR ROAD PURPOSES.

LAND IN SECTION 11, TOWNSHIP 28, RANGE 34:
THE NORTHWEST QUARTER, EXCEPT RAILROAD RIGHT-OF-WAY,
THE NORTH HALF OF THE SOUTHWEST QUARTER, EXCEPT RAILROAD RIGHT-OF-WAY,
THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER, EXCEPT THE SOUTH 150 FEET AND
EXCEPT BEGINNING 150 FEET NORTH OF THE SOUTHEAST CORNER OF SAID NORTHWEST
QUARTER OF THE NORTHEAST QUARTER, THENCE WEST 28 RODS, THENCE NORTH 28 RODS,
THENCE EAST 28 RODS, THENCE SOUTH 28 RODS TO THE POINT OF BEGINNING.
THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER EXCEPT A TRACT IN THE SOUTHWEST
CORNER DESCRIBED AS BEGINNING 30 FEET NORTH AND 30 FEET EAST OF THE SOUTHWEST
CORNER OF SAID NORTHEAST QUARTER OF THE NORTHEAST QUARTER, THENCE NORTH 100
FEET, THENCE EAST 100 FEET, THENCE SOUTH 100 FEET, THENCE WEST 100 FEET TO THE
POINT OF BEGINNING.

ALSO THAT PART OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION
11, TOWNSHIP 28, RANGE 34 LYING EAST OF SMITHFIELD AND NORTH OF RAILROAD
RIGHT-OF-WAY.

ALSO THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 1., TOWNSHIP
28, RANGE 34, EXCEPT A TRACT BEGINNING 30 FEET WEST OF THE SOUTHEAST CORNER OF
THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 11, TOWNSHIP 28,
RANGE 34, THENCE NORTH 545 FEET, THENCE WEST 400 FEET, THENCE SOUTH 545 FEET,
THENCE EAST 400 FEET TO THE POINT OF BEGINNING AND EXCEPT A TRACT COMMENCING
AT A POINT 144 FEET SOUTH OF THE NORTHEAST CORNER OF THE NORTHWEST QUARTER OF
THE SOUTHEAST QUARTER OF SECTION 11, TOWNSHIP 28, RANGE 34, THENCE WEST 24
RODS, THENCE SOUTH 39 RODS, THENCE EAST 24 RODS, THENCE NORTH 39 RODS TO THE
POINT OF BEGINNING AND EXCEPT A TRACT BEGINNING AT THE NORTHEAST CORNER OF THE
NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 11, TOWNSHIP 28, RANGE
34, THENCE SOUTH 144 FEET, THENCE WEST 24 RODS, THENCE NORTH 144 FEET, THENCE
EAST 24 RODS TO THE POINT OF BEGINNING, EXCEPT STREETS AND ROADS, AND EXCEPT
ANY PARTS TAKEN OR DEEDED FOR ROAD PURPOSES.

1473 1022

FILED FOR RECORD

AT 12 O'CLOCK MAR 9 1995 37 MINUTES P. M

RECORDER
JASPER COUNTY, MISSOURI

ALSO A TRACT OF LAND DESCRIBED AS BEGINNING 928 FEET NORTH OF THE CENTER QUARTER CORNER (BEING CENTER OF SECTION), THENCE EAST 638 FEET, MORE OR LESS TO WEST LINE OF SMITHFIELD, THENCE NORTH TO NORTH LINE OF MARTIN STREET IF EXTENDED, THENCE WEST TO HALF SECTION LINE, THENCE SOUTH TO THE POINT OF BEGINNING, ALL IN SECTION 11, TOWNSHIP 28, RANGE 34, JASPER COUNTY, MISSOURI, EXCEPT ANY PARTS TAKEN OR DEEDED FOR ROAD PURPOSES.
A TRACT DESCRIBED AS BEGINNING AT THE NORTHWEST CORNER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER, THENCE EAST TO THE NORTHWEST CORNER OF LOT ONE HUNDRED SIX (106) IN MARTIN'S ADDITION TO SMITHFIELD, THENCE SOUTH TO THE SOUTHWEST CORNER OF LOT ONE HUNDRED ONE (101) IN MARTIN'S ADDITION TO SMITHFIELD, THENCE WEST TO THE WEST LINE OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER, THENCE NORTH TO THE PLACE OF BEGINNING, IN SECTION 11, TOWNSHIP 28, RANGE 34, JASPER COUNTY, MISSOURI.

THE EAST 23 ACRES OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER AND ALL OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 11, TOWNSHIP 28, RANGE 34, JASPER COUNTY, MISSOURI, EXCEPT ANY PART TAKEN OR DEEDED FOR ROAD PURPOSES.
AND EXCEPT BEGINNING AT THE SOUTHEAST CORNER OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 11, TOWNSHIP 28, RANGE 34, JASPER COUNTY, MISSOURI, THENCE NORTH 0 DEGREES 00 MINUTES EAST 1326.31 FEET TO THE SOUTHEAST CORNER OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION, THENCE SOUTH 89 DEGREES 43 MINUTES 40 SECONDS WEST 430 FEET, THENCE NORTH 0 DEGREES 00 MINUTES EAST 545 FEET, THENCE NORTH 89 DEGREES 43 MINUTES 40 SECONDS EAST 34 FEET, THENCE NORTH 0 DEGREES 00 MINUTES EAST 781.07 FEET TO A POINT ON THE NORTH LINE OF THE SOUTHEAST QUARTER, SAID POINT BEING 396 FEET WEST OF THE NORTHEAST CORNER OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION, THENCE SOUTH 89 DEGREES 41 MINUTES 32 SECONDS WEST ALONG THE NORTH LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 584 FEET, THENCE SOUTH 0 DEGREES 00 MINUTES WEST 2651.41 FEET TO THE SOUTH LINE OF SAID SECTION, THENCE NORTH 89 DEGREES 45 MINUTES 40 SECONDS EAST ALONG THE SOUTH LINE OF SAID SECTION 980 FEET TO THE POINT OF BEGINNING, AND EXCEPT ANY PARTS TAKEN OR DEEDED FOR ROAD PURPOSES.

LAND IN SECTION 10, TOWNSHIP 28, RANGE 34:
ALSO THAT PART OF THE NORTH ONE-HALF OF THE SOUTH ONE-HALF OF FRACTIONAL SECTION 10, TOWNSHIP 28, RANGE 34 LYING SOUTH OF RAILROAD, IN JASPER COUNTY, MISSOURI, EXCEPT ANY PART TAKEN OR DEEDED FOR ROAD OR RAILROAD PURPOSES.

LAND IN SECTION 25, TOWNSHIP 29, RANGE 34:
COMMENCING AT THE SOUTHEAST CORNER OF THE SOUTHEAST QUARTER OF SECTION 25, TOWNSHIP 29 NORTH, RANGE 34 WEST OF THE FIFTH PRINCIPAL MERIDIAN, JASPER COUNTY, MISSOURI, THENCE WEST ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER A DISTANCE OF 904.2 FEET TO THE POINT OF BEGINNING, THENCE NORTH 2643.6 FEET TO THE NORTH LINE OF SAID SOUTHEAST QUARTER, THENCE WEST ALONG THE NORTH LINE A DISTANCE OF 1746.0 FEET TO THE NORTHWEST CORNER OF SAID SOUTHEAST QUARTER, THENCE SOUTH ALONG THE WEST LINE OF SAID SOUTHEAST QUARTER A DISTANCE OF 2649.6 FEET TO THE SOUTHWEST CORNER OF SAID SOUTHEAST QUARTER, THENCE EAST ALONG THE SOUTH LINE OF SAID SOUTHEAST QUARTER A DISTANCE OF 1746.0 FEET TO THE POINT OF BEGINNING, EXCEPT RAILROAD AND ROAD RIGHT-OF-WAY.
ALSO, ALL OF THE EAST 50 ACRES OF THE SOUTHWEST QUARTER OF SECTION 25, TOWNSHIP 29, RANGE 34, JASPER COUNTY, MISSOURI, EXCEPT ANY PART TAKEN OR DEEDED FOR ROAD PURPOSES.

END OF DOCUMENT

13
11
20.00

# EXHIBIT B

Jasper Circuit Court March 10th 1870

Be it remembered that at a Regular term of the Circuit Court of Jasper County Missouri begun and held at the Court House in the city of Carthage on Monday the 10th day of March A.D. 1870. There being present Hon. Joseph Cravens Judge of said Court. A. L. Thomas Prosecuting Attorney of Jasper County Spencer Richardson Sheriff of Jasper County and Meredith Taylor Clerk [illegible] at which time and [illegible] the following proceedings were had [illegible]

Memphis Carthage and North Western Rail Road Company Plff

vs

John Elliott Et al Defts

Now at this [illegible] [illegible] [illegible] ordered on the premises and it appearing to the satisfaction of the Court that the plaintiff has paid or deposited in the [illegible] the amount of damages assessed [illegible] of the defendants hereafter named [illegible] therefore considered ordered adjudged [illegible]

EXHIBIT

B

The North Half of the South West quarter of Section Thirty four (34) of Township 29 of Range Thirty three the property of John Colbons;

The North East quarter of the South East quarter of Section Thirty three (33) in Township Twenty nine (29) of Range Thirty three (33) the of the defendant William E. Evans,

The South Half of Section Sixteen in Township [illegible] (28) of Range Thirty three (33) the property of Defendant Ho. He Young;

The North West quarter of the North West quarter of Section Twenty [illegible] in Township Twenty eight (28) of Range Thirty four (34) the property of defendant Stephen [illegible];

The North East quarter of the South West quarter of Section Twelve (12) in Township Twenty eight (28) of Range Thirty four the property of defendant John [illegible];

The South Half of the North [illegible] quarter of Section Eleven (11) in Township Twenty Eight (28) of Range Thirty four (34) the property of defendant George B. Martin;

The plaintiff to have and to hold the easement of right of way to itself its successors and assigns as against said defendants

accrued that the plaintiff may have taken and appropriated to its own use as a right of way for its Railroad a strip of land One Hundred feet wide, that is fifty feet square distant from the center of the track of its Railroad when the same is located over and through the following described tracts and parcels of land belonging to the persons named below towit

#1 The North Half of the North East quarter and the North Half of the North West quarter of Section Thirty Six (36) in Township Twenty nine (29) of Range Thirty three (33) the property of Defendant John Elliott

#2 The North East quarter of the North East quarter of Section Thirty [illegible] in Township Twenty nine (29) of Range Thirty three (33) the property of Defendant George [illegible]

#3 The South East quarter of the North West quarter of Section Thirty five (35) in Township Twenty nine (29) of Range Thirty three (33) the property of defendant E. J. [illegible]

Deeded by Granite Char[illegible] The North Half of the South East quarter of Section Thirty four (34) in Township Twenty nine (29) of Range Thirty three (33) the property of Defendant John Sargent.

their heirs and assigns so long as the same
be used for the purposes of Railroad

State of Missouri }
County of Jasper } SS.

J. M. Taylor Clerk
of the Circuit Court within and for the
County of Jasper do hereby certify that
the above and foregoing is a true copy
of the Deed of Right of way for Railroad
as fully as the same is shown on Record Vo[illegible]
page 434 & 435 in my office.

Witness my hand and the Seal of
said Court affixed.
Done at Office in the City of Car
thage this 31st day of May A.D.
1876.

J. M. Taylor
Clerk

14643

Memphis, Carthage & Northwestern Railroad Co,

vs

John Elliott Etal

Jasper Co.

Cert. Copy of Right of way

#81 A

$1.25

# EXHIBIT C

32761 SERVICE DATE - MAY 23, 2002

DO

FR-4915-00-P

DEPARTMENT OF TRANSPORTATION

Surface Transportation Board

[STB Docket No. AB-6 (Sub-No. 395X)]

The Burlington Northern and Santa Fe Railway Company–Abandonment Exemption–in Cherokee County, KS, and Jasper County, MO

The Burlington Northern and Santa Fe Railway Company (BNSF) has filed a notice of exemption under 49 CFR 1152 Subpart F–Exempt Abandonments to abandon and discontinue service over a 28.25-mile line of railroad between milepost 343.55 in Columbus, Cherokee County, KS, and milepost 315.30 in Carthage, Jasper County, MO. The line traverses United States Postal Service Zip Codes 66725, 66728, 64834, 64835 and 64836.

BNSF has certified that: (1) no local traffic has moved over the line for at least 2 years; (2) there is no overhead traffic to be rerouted; (3) no formal complaint filed by a user of rail service on the line (or by a state or local government entity acting on behalf of such user) regarding cessation of service over the line either is pending with the Surface Transportation Board (Board) or with any U.S. District Court or has been decided in favor of complainant within the 2-year period; and (4) the requirements at 49 CFR 1105.7 (environmental reports), 49 CFR 1105.8 (historic reports), 49 CFR 1105.11 (transmittal letter), 49 CFR 1105.12 (newspaper publication), and 49 CFR 1152.50(d)(1) (notice to governmental agencies) have been met.

EXHIBIT C

As a condition to this exemption, any employee adversely affected by the abandonment and discontinuance shall be protected under Oregon Short Line R. Co.–Abandonment–Goshen, 360 I.C.C. 91 (1979). To address whether this condition adequately protects affected employees, a petition for partial revocation under 49 U.S.C. 10502(d) must be filed. Provided no formal expression of intent to file an offer of financial assistance (OFA) has been received, this exemption will be effective on June 22, 2002, unless stayed pending reconsideration. Petitions to stay that do not involve environmental issues,[1] formal expressions of intent to file an OFA under 49 CFR 1152.27(c)(2),[2] and trail use/rail banking requests under 49 CFR 1152.29 must be filed by June 3, 2002.[3] Petitions to reopen or requests for public use conditions under 49 CFR 1152.28 must be filed by June 12, 2002, with: Surface Transportation Board, Case Control Unit, 1925 K Street, N.W., Washington, DC 20423.

---

[1] The Board will grant a stay if an informed decision on environmental issues (whether raised by a party or by the Board's Section of Environmental Analysis (SEA) in its independent investigation) cannot be made before the exemption's effective date. See Exemption of Out-of-Service Rail Lines, 5 I.C.C.2d 377 (1989). Any request for a stay should be filed as soon as possible so that the Board may take appropriate action before the exemption's effective date.

[2] Each offer of financial assistance must be accompanied by the filing fee, which as of April 8, 2002, is set at $1,100. See 49 CFR 1002.2(f)(25).

[3] The City of Carl Junction and the Joplin Trail Coalition filed a request for issuance of a notice of interim trail use (NITU) for Missouri portion of the line (milepost 331.23 to milepost 315.30) pursuant to section 8(d) of the National Trails System Act, 16 U.S.C. 1247(d). The Board will address the trail use request, and any others that may be filed, in a subsequent decision.

A copy of any petition filed with the Board should be sent to applicant's representative: Michael Smith, Freeborn & Peters, 311 S. Wacker Dr., Suite 3000, Chicago, IL 60606-6677.

If the verified notice contains false or misleading information, the exemption is void ab initio.

BNSF has filed an environmental report which addresses the abandonment's effects, if any, on the environment and historic resources. SEA will issue an environmental assessment (EA) by May 28, 2002. Interested persons may obtain a copy of the EA by writing to SEA (Room 500, Surface Transportation Board, Washington, DC 20423) or by calling SEA, at (202) 565-1552. [TDD for the hearing impaired is available at 1-800-877-8339.] Comments on environmental and historic preservation matters must be filed within 15 days after the EA becomes available to the public.

Environmental, historic preservation, public use, or trail use/rail banking conditions will be imposed, where appropriate, in a subsequent decision.

Pursuant to the provisions of 49 CFR 1152.29(e)(2), BNSF shall file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line. If consummation has not been effected by BNSF's filing of a notice of consummation by May 23, 2003, and there are no legal or regulatory barriers to consummation, the authority to abandon will automatically expire.

STB Docket No. AB-6 (Sub-No. 395X)

Board decisions and notices are available on our website at

"WWW.STB.DOT.GOV."

Decided: May 17, 2002.

By the Board, Beryl Gordon, Acting Director, Office of Proceedings.

Vernon A. Williams

Secretary

# EXHIBIT D

32791 **SERVICE DATE - MAY 28, 2002**

**SURFACE TRANSPORTATION BOARD**
WASHINGTON, DC 20423

**ENVIRONMENTAL ASSESSMENT**

**DOCKET NO. AB-6 (Sub-No. 395X)**

**The Burlington Northern and Santa Fe Railway Company – Abandonment Exemption – in Cherokee County, KS and Jasper County, MO**

## BACKGROUND

In this proceeding, the Burlington Northern and Santa Fe Railway Company (BNSF) filed a notice of exemption under 49 CFR 1152.50 seeking exemption from the requirements of 49 U.S.C. 10903 in connection with the abandonment of a line of railroad in Cherokee County, Kansas and Jasper County, Missouri. The line extends 28.25 miles from M.P. 343.55 in Columbus, Kansas to M.P. 315.30 in Carthage, Missouri. A map depicting the rail line in relationship to the area served is appended to the report. If the notice becomes effective, the railroad will be able to salvage track, ties and other railroad appurtenances and to dispose of the right-of-way.

## DESCRIPTION OF THE LINE

According to BNSF, there has been no rail traffic on the line for the past two years. BNSF states that the area surrounding the line is rural and generally flat with some rolling hills. The line passes through the towns of Carthage and Carl Junction, Missouri and the station of Military and the town of Columbus, Kansas.

## ENVIRONMENTAL REVIEW

The applicant submitted an environmental report that concludes the quality of the human environment will not be affected significantly as a result of the abandonment or any post-abandonment activities, including salvage and disposition of the right-of-way. The applicant served the environmental and historical reports on a number of appropriate Federal, state, and local agencies as required by the Surface Transportation Board's environmental rules [49 CFR 1105.7(b)]. We have reviewed and investigated the record in this proceeding.

The Jasper County Commission has submitted comments expressing interest in acquiring the portion of the line from the Missouri state line to Carthage, Missouri.

EXHIBIT
D

The State of Kansas Department of Wildlife and Parks (DWP) has submitted comments stating that the area of the proposed abandonment contains habitat for several state listed threatened or endangered species. These species are the Northern Spring Peeper, the Dark-sided Salamander, the Eastern Narrowmouth Toad, the Central Newt, and the Northern Redbelly Snake. DPW and the U.S. Fish and Wildlife Service (FWS) have submitted comments stating that the Spring River provides habitat for several freshwater mussel species, which are Federal species of concern, especially the threatened Neosho madtom (*Noturus placidus*). However, according to DPW and FWS, if salvage activities are limited to the right-of-way and do not impact the stream channel or its banks, the species of concern will not be affected.

The Kansas Department of Health & Environment has submitted comments stating that if the proposed abandonment disturbs more than five acres of soil, applicants would need to submit a Notice of Intent form to obtain coverage under the Kansas general permit for stormwater discharges.

The Missouri State Emergency Management Agency (SEMA) has submitted comments stating that the City of Carthage and Jasper County, Missouri are participants in the National Flood Insurance Program and the proposed abandonment may require permits from the City of Carthage and Jasper County. The City of Carthage has submitted comments stating that the proposed abandonment does not fall within the corporate limits of the City and would not impact existing flood zones. The Jasper County Floodplain Administrator has submitted comments stating that although the line proposed for abandonment would cross floodplains within the County, if salvage activities are limited to track removal, the floodplains would not be impacted.

SEMA also states that if the proposed abandonment "is located within a regulatory floodway, a 'no rise' certificate and statement as to the effects of possible flooding is required before the development can be permitted. This analysis must be performed by a licensed engineer and to [Federal Emergency Management Agency] standards."

The Cherokee County Kansas Office of County Engineer (OCE) has submitted comments requesting that all trestles and bridge structures be removed as part of the proposed abandonment. OCE states that "[i]n the past when these structures are left in place, they become identified as bridges and the responsibility of the County where they exist." However, the County would have no funds available for their maintenance, repair and inspections.

The Missouri Department of Natural Resources (DNR) has submitted comments stating that a section 402 permit may be required if the proposed abandonment would involve the discharge of wastewater or stormwater into jurisdictional waters. DNR also states that the following measures could protect the quality of water in the abandonment area: keeping machinery out of the waterway as much as possible; not storing fuel, oil, other petroleum products, equipment and any solid waste below the ordinary high water mark at any time or in the adjacent floodway beyond normal working hours; immediately cleaning up and properly disposing of petroleum products spilled into any waterbody or on

the banks where the material may enter waters of the state; minimizing the clearing of vegetation/trees; using best management practices to limit the amount of erosion and deposition of sediment in waters of the state.

The Missouri Department of Natural Resources, Division of State Parks has submitted comments stating that the Battle of Carthage State Historic Site is located about three miles east of the proposed abandonment and the proposed abandonment would not impact the site.

The Missouri Department of Natural Resources State Historic Preservation Office (SHPO) has submitted comments stating that although there are no archaeological concerns associated with the proposed abandonment, the SHPO recommends that an architectural survey be performed prior to salvage to evaluate all the bridges, trestles and railroad structures along the route, including interchanges with other rail alignments. The Kansas State Historical Society has submitted comments stating that the proposed abandonment would not affect any property of historic significance. BNSF has indicated that it "is seeking requests for proposals from qualified architectural historians to perform a survey for the three bridges located along the alignment in Jasper County, Missouri. All other structures on the route are located in Cherokee County, Kansas."

## CONDITIONS

We recommend that the following environmental conditions be placed on any decision granting abandonment authority:

1. Based on the comments of the State of Kansas Department of Wildlife and Parks and the U.S. Fish and Wildlife Service, the Burlington Northern and Santa Fe Railway Company, in order to prevent impacts to several Federal species of concern (several freshwater mussel species and the threatened Neosho madtom), shall limit salvage activities to the right-of-way and avoid impacts to the stream channel and banks of the Spring River.

2. Based on the comments of the Kansas Department of Health & Environment (DHE), the Burlington Northern and Santa Fe Railway Company shall consult with DHE to determine whether the salvage activities would require coverage under the Kansas general permit for stormwater discharges.

3. Based on the comments of the Jasper County Floodplain Administrator (JCFA), the Burlington Northern and Santa Fe Railway Company, in order to minimize floodplain impacts, shall consult with JCFA prior to conducting any salvage activities other than track removal.

4. Based on the comments of the the Missouri Department of Natural Resources (DNR), the Burlington Northern and Santa Fe Railway Company (BNSF) shall consult with DNR to determine whether a section 402 permit is required. If a section 402 permit is required, BNSF

shall be prohibited from performing any salvage or abandonment activities until BNSF obtains the section 402 permit and shall then notify the Surface Transportation Board. BNSF shall also take the following DNR recommended measures during salvage to protect the quality of water in the abandonment area: keep machinery out of the waterway as much as possible; not store fuel, oil, other petroleum products, equipment and any solid waste below the ordinary high water mark at any time or in the adjacent floodway beyond normal working hours; immediately clean up and properly dispose of petroleum products spilled into any waterbody or on the banks where the material may enter waters of the state; minimize the clearing of vegetation/trees; use best management practices to limit the amount of erosion and deposition of sediment in waters of the state.

5. Based on the comments of the Missouri Department of Natural Resources State Historic Preservation Office (SHPO), the Burlington Northern and Santa Fe Railway Company shall take no steps to alter the historic integrity of the bridges, trestles and railroad structures along the route, including interchanges with other rail alignments, within the state of Missouri, until completion of the section 106 process of the National Historic Preservation Act, 16 U.S.C. 470f.

## CONCLUSIONS

Based on the information provided from all sources to date, we conclude that, as currently proposed, and if the recommended conditions are imposed, abandonment of the line will not significantly affect the quality of the human environment. Therefore, the environmental impact statement process is unnecessary.

Alternatives to the proposed abandonment would include denial (and therefore no change in operations), discontinuance of service without abandonment, and continued operation by another operator. In any of these cases, the existing quality of the human environment and energy consumption should not be affected.

## PUBLIC USE

Following abandonment and salvage of the rail line, the right-of-way may be suitable for other public use. A request containing the requisite four-part showing for imposition of a public use condition (49 CFR 1152.28) must be filed with the Board and served on the railroad within the time specified in the Federal Register notice.

**TRAILS USE**

A request for a notice of interim trail use (NITU) is due to the Board, with a copy to the railroad, within 10 days of publication of the notice of the petition for exemption in the Federal Register. Nevertheless, the Board will accept late-filed requests as long as it retains jurisdiction to do so in a particular case. This request must comply with the Board's rules for use of rights-of-way as trails (49 CFR 1152.29).

**PUBLIC ASSISTANCE**

The Board's Office of Public Services responds to questions regarding interim trail use, public use, and other reuse alternatives. You may contact the Office of Public Services directly at (202) 565-1592, or mail inquiries to Surface Transportation Board, Office of Public Services, Washington, DC 20423.

**COMMENTS**

If you wish to file comments regarding this environmental assessment, you should send an **original and two copies** to Surface Transportation Board, Case Control Unit, Washington, DC 20423, to the attention of Rini Ghosh, who prepared this environmental assessment. **Please refer to Docket No. AB-6 (Sub-No. 395X) in all correspondence addressed to the Board.** If you have questions regarding this environmental assessment, you should contact Rini Ghosh, the environmental contact for this case by phone at (202) 565-1539, fax at (202) 565-9000, or e-mail at ghoshr@stb.dot.gov.

Date made available to the public: **May 28, 2002.**

**Comment due date: June 11, 2002.**

By the Board, Victoria Rutson, Chief, Section of Environmental Analysis.

Vernon A. Williams
Secretary

Attachment

cc: Jim Hays, State of Kansas, Department of Wildlife & Parks
William Gill, U.S. Fish and Wildlife Service

Danny Hensley, Jasper County Commission
Mary Lyon, Missouri Department of Conservation
Joe Mester, Kansas Department of Health & Environment
Bob Lytle, Kansas Department of Agriculture
George Riedel, Floodplain Management Manager, SEMA
Joe Butler, The City of Carthage Department of Engineering
Steve Lett, Floodplain Administrator Jasper County
Fred Graham, Cherokee County Kansas, Office of County Engineer
Claire Blackwell, Missouri Department of Natural Resources
Kansas State Historical Society
Missouri Department of Natural Resources


KS – CARTHAGE, MO
COLUMBUS
CARL JUNCTION
NORTH
CARTHAGE
MILEPOST 315.30

# EXHIBIT E

32813
DO

SERVICE DATE - LATE RELEASE JUNE 21, 2002

SURFACE TRANSPORTATION BOARD

DECISION

STB Docket No. AB-6 (Sub-No. 395X)

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY--ABANDONMENT EXEMPTION--IN CHEROKEE COUNTY, KS, AND JASPER COUNTY, MO

Decided: June 21, 2002

The Burlington Northern and Santa Fe Railway Company (BNSF) filed a notice of exemption under 49 CFR 1152 Subpart F–Exempt Abandonments to abandon and discontinue service over a 28.25-mile line of railroad between milepost 343.55 in Columbus, Cherokee County, KS, and milepost 315.30 in Carthage, Jasper County, MO. Notice of the exemption was served and published in the Federal Register on May 23, 2002 (67 FR 36298). The exemption is scheduled to become effective on June 22, 2002.

The Board's Section of Environmental Analysis (SEA) served an environmental assessment (EA) in this proceeding on May 28, 2002. In the EA, SEA stated that the State of Kansas Department of Wildlife and Parks (DWP) indicates that the area of the proposed abandonment contains habitat for the following state listed threatened or endangered species: the Northern Spring Peeper, the Dark-sided Salamander, the Eastern Narrowmouth Toad, the Central Newt, and the Northern Redbelly Snake. SEA also states that DWP and the U.S. Fish and Wildlife (FWS) indicate that the Spring River provides habitat for several freshwater mussel species, which are Federal species of concern, especially the threatened Neosho madtom (Noturus placidus). SEA indicates that DWP and FWS state that, if salvage activities are limited to the right-of-way and do not impact the stream channel or its banks, the species of concern will not be affected. Therefore, SEA recommends that, in order to prevent impacts to several Federal species of concern (several freshwater mussel species and the threatened Neosho madtom), BNSF be required to limit salvage activities to the right-of-way and avoid impacts to the stream channel and banks of the Spring River.

SEA states that the Kansas Department of Health & Environment (DHE), indicates that, if the proposed abandonment disturbs more than five acres of soil, BNSF would need to submit a Notice of Intent form to obtain coverage under the Kansas general permit for stormwater discharges. Therefore, SEA recommends that BNSF be required to consult with DHE to determine whether the salvage activities would require coverage under the Kansas general permit for stormwater discharges.

EXHIBIT
E

SEA states that the Missouri State Emergency Management Agency (SEMA) indicates that the City of Carthage and Jasper County, MO, are participants in the National Flood Insurance Program and that the proposed abandonment may require permits from the City and Jasper County.[1] SEA also states that the Jasper County Floodplain Administrator (JCFA) has indicated that, although the line proposed for abandonment would cross floodplains within the County, if salvage activities are limited to track removal, the floodplains would not be impacted. SEMA further indicates that, if the proposed abandonment "is located within a regulatory floodway, a 'no rise' certificate and statement as to the effects of possible flooding is required before the development can be permitted.[2] Therefore, SEA recommends that, in order to minimize floodplain impacts, a condition be imposed requiring BNSF to consult with JCFA prior to conducting any salvage activities other than track removal.

SEA states that the Missouri Department of Natural Resources (DNR) indicates that a section 402 permit may be required if the proposed abandonment would involve the discharge of wastewater or stormwater into jurisdictional waters. DNR also states that the following measures could protect the quality of water in the abandoned area: (1) keeping machinery out of the waterway as much as possible; (2) not storing fuel, oil, other petroleum products, equipment and any solid waste below the ordinary high water mark at any time or in the adjacent floodway beyond normal working hours; (3) immediately cleaning up and properly disposing of petroleum products spilled into any waterbody or on the banks where the material may enter waters of the state; (4) minimizing the clearing of vegetation/trees; and (5) using best management practices to limit the amount of erosion and deposition of sediment in waters of the state. Therefore, SEA
recommends that a condition be imposed requiring BNSF to consult with DNR to determine whether a section 402 permit is required. SEA states that, if a section 402 permit is required, BNSF shall not perform any salvage or abandonment activities until BNSF obtains the section 402 permit and shall then notify the Board. SEA recommends that BNSF also be required to take the following DNR recommended measures during salvage to protect the quality of water in the abandonment area: keep machinery out of the waterway as much as possible; not store fuel, oil, other petroleum products, equipment and any solid waste below the ordinary high water mark at any time or in the adjacent floodway beyond normal working hours; immediately clean up and properly dispose of petroleum products spilled into any waterbody or on the banks where the material may enter waters of the state;

---

[1] SEA notes that the City of Carthage has submitted comments stating that the proposed abandonment does not fall within the corporate limits of the City and would not impact existing flood zones.

[2] SEMA states that this analysis must be performed by a licensed engineer and to Federal Emergency Management Agency standards.

minimize the clearing of vegetation/trees; and use best management practices to limit the amount of erosion and deposition of sediment in waters of the state.

SEA states that the Missouri Department of Natural Resources State Historic Preservation Office (SHPO), indicates that, although there are no archaeological concerns associated with the proposed abandonment, it recommends that an architectural survey be performed prior to salvage to evaluate all the bridges, trestles and railroad structures along the route, including interchanges with other rail alignments.[3] Therefore, SEA recommends that a condition be imposed requiring BNSF to take no steps to alter the historic integrity of the bridges, trestles and railroad structures along the route, including interchanges with other rail alignments, within the state of Missouri, until completion of the section 106 process of the National Historic Preservation Act, 16 U.S.C. 470f (NHPA).

Finally, SEA states that the U.S. Army Corps of Engineers (Corps) indicates that it requires further information to determine whether the proposed abandonment would affect waters of the United States with the State of Kansas. Therefore, SEA recommends that a condition be imposed requiring BNSF to consult with Mr. Kenny Edgecomb at the Corps' Pomona Regulatory Field Office prior to conducting any salvage activities within the State of Kansas to determine whether any Corps permits would be required.

SEA states that the right-of-way may be suitable for other public use following abandonment. By petition filed May 10, 2002, the City of Carl Junction and the Joplin Trail Coalition (collectively commenters) jointly filed a request for the issuance of a notice of interim trail use/rail banking (NITU) under the National Trails System Act, 16 U.S.C. 1247(d) (Trails Act), for the Missouri portion of the right-of-way between milepost 331.23 at the State line and milepost 315.30 near Carthage, a distance of 15.93 miles. On May 29, 2002, the Joplin Trail Coalition (1) filed a request for the issuance of a NITU for the Kansas portion of the right-of-way between milepost 343.55 at Columbus and milepost 331.23 at the State line, a distance of 12.32 miles, and (2) for a public use condition under 49 U.S.C. 10905.

Commenters request that BNSF be barred from disposing of rail bridges, trestles, culverts or roadbed materials, except for public use as a trail or other compatible purposes, for a 180-day period from the effective date of the exemption. Commenters submitted statements of willingness to assume

---

[3] The Kansas State Historical Society submitted comments stating that the proposed abandonment would not affect any property of historic significance. BNSF indicates that it "is seeking requests for proposals from qualified architectural historians to perform a survey for the three bridges located along the alignment in Jasper County. BNSF states that all other structures on the route are located in Cherokee County, KS.

financial responsibility for management of, for any legal liability arising out of the transfer use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against, the right-of-way, as required at 49 CFR 1152.29, and acknowledged that the use of the right-of-way for trail purposes is subject to future reactivation for rail service. In responses filed on May 16, 2002, and June 12, 2002, BNSF states that it is agreeable to the requests.

Because Commenters' requests comply with the requirement of 49 CFR 1152.29 and BNSF is willing to negotiate for trail use, a NITU will be issued. The parties may negotiate an agreement during the 180-day period prescribed below. If the parties reach a mutually acceptable final agreement, no further Board action is necessary. If no agreement is reached within 180 days, BNSF may fully abandon the line. See 49 CFR 1152.29(d)(1). Use of the right-of-way for trail purposes is subject to restoration for railroad purposes.

As an alternative to interim trail use under the Trails Act, the right-of-way may be acquired for public use as a trail under 49 U.S.C. 10905. See Rail Abandonment–Use of Rights-of-Way As Trails, 2 I.C.C.2d 591, 609 (1986). Under section 10905, the Board may prohibit the disposal of rail properties that are proposed to be abandoned and are appropriate for public purposes for a period of not more than 180 days after the effective date of the decision approving or exempting the abandonment.

To justify a public use condition, a party must set forth: (i) the condition sought; (ii) the public importance of the condition; (iii) the period of time for which the condition would be effective; and (iv) justification for the imposition of the period of time requested. See 49 CFR 1152.28(a)(2). Commenters have satisfied these requirements and, therefore, a 180-day public use condition will be imposed commencing with the effective date of the exemption.

When the need for interim trail use/rail banking and public use are shown, it is the Board's policy to impose both conditions concurrently, subject to the execution of a trail use agreement. If a trail use agreement is reached on a portion of the right-of-way, BNSF must keep the remaining right-of-way intact for the remainder of the 180-day period to permit public use negotiations. Also, a public use condition is not imposed for the benefit of any one potential purchaser, but rather to provide an opportunity for any interested person to acquire the right-of-way that has been found suitable for public purposes, including trail use. Therefore, with respect to the public use condition, BNSF is not required to deal exclusively with Commenters, but may engage in negotiations with other interested persons.

As conditioned, this action will not significantly affect either the quality of the human environment or the conservation of energy resources.

It is ordered:

1. This proceeding is reopened.

2. Upon reconsideration, the exemption of the abandonment of the line described above is subject to the conditions that BNSF shall: (1) limit activities to the right-of-way and avoid impacts to the stream channel and banks of the Spring River; (2) consult with DHE to determine whether the salvage activities would require coverage under the Kansas general permit for stormwater discharges; (3) consult with the JCFA prior to conducting any salvage activities other than track removal; (4) consult with DNR to determine whether a section 402 permit is required, and if so, BNSF shall be prohibited from performing any salvage or abandonment activities until BNSF obtains the section 402 permit and shall then notify the Board. BNSF shall also take the following DNR recommended measures during salvage to protect the quality of water in the abandonment area; keep machinery out of the waterway as much as possible; not store fuel, oil, other petroleum products, equipment and any solid waste below the ordinary high water mark at any time or in the adjacent floodway beyond normal working hours; immediately clean up and properly dispose of petroleum products spilled into any waterbody or on the banks where the material may enter waters of the state; minimize the clearing of vegetation/trees; and use best management practices to limit the amount of erosion and deposition of sediment in waters of the state; (5) take no steps to alter the historic integrity of the bridges, trestles, and railroad structures along the route, including interchanges with other rail alignments, within the State of Missouri, until completion of the section 106 process of the NHPA; and (6) consult with Mr. Kenny Edgecomb at the Corps' Pomona Regulatory Field Office prior to conducting any salvage activities within the State of Kansas to determine whether any Corps permits would be required.

3. The notice served and published in the Federal Register on May 23, 2002, exempting the abandonment of the line described above is modified to the extent necessary to implement interim trail use/rail banking as set forth below, subject to the conditions that BNSF keep intact the right-of-way underlying the tracks, including bridges, trestles, culverts and tunnels, for a period of 180 days from the effective date (until December 19, 2002), to enable any state or local government agency, or other interested person to negotiate the acquisition of the line for public use. If an interim trail use/rail banking agreement is executed before the expiration of the 180-day period specified above, the public use condition will expire to the extent that the trail use/rail banking agreement covers the same line.

4. If an interim trail use/rail banking agreement is reached, it must require the trail user to assume for the term of the agreement, full responsibility for management of, for any legal liability arising out of the transfer or use of (if the user is immune from liability, it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against, the right-of-way.

5. If interim trail use is implemented, and subsequently the user intends to terminate trail use, it must send the Board a copy of this decision and notice and request that it be vacated on a specified date.

6. If an agreement for interim trail use/rail banking is reached by December 19, 2002, interim trail use may be implemented. If no agreement is reached by that time, BNSF may fully abandon the line.

7. This decision is effective on its service date.

By the Board, David M. Konschnik, Director, Office of Proceedings.

Vernon A. Williams
Secretary

# EXHIBIT F

33236
DO

SERVICE DATE – LATE RELEASE DECEMBER 19, 2002

SURFACE TRANSPORTATION BOARD

DECISION AND NOTICE OF INTERIM TRAIL USE OR ABANDONMENT

STB Docket No. AB-6 (Sub-No. 395X)

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY–ABANDONMENT EXEMPTION –IN CHEROKEE COUNTY, KS, AND JASPER COUNTY, MO

Decided: December 19, 2002

The Burlington Northern and Santa Fe Railway Company (BNSF) filed a notice of exemption under 49 CFR 1152 Subpart F–Exempt Abandonments to abandon and discontinue service over a 28.25-mile line of railroad between milepost 343.55 in Columbus, Cherokee County, KS, and milepost 315.30 in Carthage, Jasper County, MO.[1] By decision served June 21, 2002, the proceeding was reopened and the City of Carl Junction and the Joplin Trail Coalition (JTC) were authorized to negotiate an interim trail use/rail banking agreement with BNSF, pursuant to section 8(d) of the National Trails System Act, 16 U.S.C. 1247(d) (Trails Act).[2] The trail use negotiating period is scheduled to expire on December 19, 2002.

On November 22, 2002, BNSF filed a request for a 180-day extension of the trail use negotiation period until June 17, 2003. BNSF states that it is in negotiations with a trail organization and it has been determined that additional time is needed to finalize a potential trail transaction.

On December 10, 2002, Cherokee County (Kansas) Landowner's Association (Association)[3] filed a statement in opposition to an extension of the trail use negotiating period, arguing instead that the

---

[1] Notice of the exemption was served and published in the Federal Register on May 23, 2002 (67 FR 36298).

[2] The June 21 decision also imposed a public use condition (which will expire on December 19, 2002), several environmental conditions, and a historic preservation condition. By decision served November 20, 2002, the historic preservation condition was removed. The November 20 decision also noted that the other conditions imposed in the June 21 decision remain.

[3] The Association states that it is composed of over sixty individuals owning property adjacent to the right-of-way.

EXHIBIT
F

right-of-way should be allowed to revert to the adjacent landowners. The Association asserts: (1) that recreational trails have not been successful in that region of the state; (2) that JTC lacks the financial and human resources that will be required to: (a) develop the trail to useable status, (b) comply with Kansas state law regarding interim trail use, and (3) comply with Cherokee County bonding requirements for recreational trails; and (3) that JTC has indicated that it is no longer interested in pursuing trail use for the part of the line located in Kansas because of the financial and legal burdens that would be imposed by the state and county.

BNSF filed a response to the Association by facsimile on December 18, 2002. BNSF states that it is still in the process of negotiating with JTC and urges the Board to grant its request for an extension of the negotiating period. BNSF also states that it will give serious consideration to the expressions of concern from the community regarding the Kansas portion of the right-of-way. The railroad states that it believes that a trail may still be accommodated while taking into account the concerns of the Association.

Under the Trails Act and our implementing rules, if a prospective trail user requests a trail condition and the carrier indicates its willingness to negotiate a trail agreement, the Board's role under the Trails Act is largely ministerial. Goos v. ICC, 911 F.2d 1283 (8th Cir. 1990) (Goos). To invoke the Trails Act, a prospective trail sponsor need only file a request accompanied by the necessary statement of willingness to assume liability and acknowledgment that interim trail use is subject to possible reinstitution of rail service. See National Ass'n of Reversionary Property Owners v. STB, 158 F.3d 135, 138 (D.C. Cir 1998); 49 CFR 1152.29(a) and (d). If the railroad indicates its willingness to negotiate, the Board must then issue a notice of interim trail use. Goos, 911 F.2d at 1295.

Where, as here, the carrier is willing to continue trail use negotiations, the negotiating period may be extended.[4] An extension of the negotiating period will promote the establishment of trails and rail banking consistent with the Trails Act. Accordingly, the negotiating period will be extended to June 17, 2003.

This decision will not significantly affect either the quality of the human environment or the conservation of energy resources.

It is ordered:

1. The trail use negotiating period is extended to June 17, 2003.

---

[4] See Rail Abandonments--Supplemental Trails Act Procedures, 4 I.C.C.2d 152, 157-58 (1987).

2. This decision is effective on its service date.

By the Board, David M. Konschnik, Director, Office of Proceedings.

Vernon A. Williams
Secretary

# EXHIBIT G

TYPE/PRINT IN PERMANENT BLACK INK. FOR INSTRUCTIONS SEE HANDBOOK

MISSOURI DEPARTMENT OF HEALTH AND SENIOR SERVICES

# CERTIFICATE OF DEATH

STATE FILE NUMBER 124-

REGISTRATION DISTRICT NO. 145 REGISTRAR'S NUMBER 280

**DECEDENT**

1. DECEDENT'S NAME (First, Middle, Last): GEORGE OSCAR FAUVERGUE
2. SEX: Male
3. DATE OF DEATH (Month, Day, Year): April 24, 2006
4. SOCIAL SECURITY NO.: [redacted]
5a. AGE - Last Birthday (Years): 75
5b. UNDER 1 YEAR: MONTHS / DAYS
5c. UNDER 1 DAY: HOURS / MINUTES
6. DATE OF BIRTH (Month, Day, Year): Sept 24, 1930
7. BIRTHPLACE (City and State or Foreign Country): Arma, KS
8. WAS DECEDENT EVER IN U.S. ARMED FORCES? ☐ Yes ☒ No ☐ Unk.
9a. PLACE OF DEATH (Check only one): HOSPITAL: ☒ Inpatient ☐ ER/Outpatient ☐ DOA OTHER: ☐ Nursing Home ☐ Residence ☐ Other (Specify)
9b. FACILITY NAME (If not institution, give street and number): Freeman Hospital West
9c. CITY, TOWN, OR LOCATION OF DEATH: Joplin
9d. COUNTY OF DEATH: Newton
10. MARITAL STATUS - Married, Never Married, Widowed, Divorced (Specify): Married
11. SURVIVING SPOUSE'S NAME (If wife, give full maiden name): Earlene Leist
12a. DECEDENT'S USUAL OCCUPATION (Give kind of work done during most of working life. Do not use retired.): Owner/Operator
12b. KIND OF BUSINESS OR INDUSTRY: Scrap Metal
13a. RESIDENCE - STATE: Missouri
13b. COUNTY: Jasper
13c. CITY, TOWN, OR LOCATION: Carthage
13d. ZIP CODE: 64836-
13e. STREET AND NUMBER: 1222 County Loop 95
13f. INSIDE CITY LIMITS: ☐ Yes ☒ No
13g. YEARS AT PRESENT ADDRESS: ☐ Under 5 ☐ 5-9 ☐ 10-19 ☒ 20 or more
14. WAS DECEDENT OF HISPANIC ORIGIN (Specify No or Yes - If yes, specify Cuban, Mexican, Puerto Rican, etc.): ☒ No ☐ Yes Specify
15. RACE - American Indian, Black, White, etc. (Specify): White
16. DECEDENT'S EDUCATION (Specify only highest grade completed): Elementary/Secondary (0-12): College (1-4 or 5+): 1

**PARENTS**

17. FATHER'S NAME (First, Middle, Last): George D. Fauvergue
18. MOTHER'S NAME (First, Middle, Maiden Surname): Zula Todd

**INFORMANT**

19a. INFORMANT'S NAME (Type/Print): Earlene Fauvergue
19b. MAILING ADDRESS (Street and Number or Rural Route Number, City or Town, State, Zip Code): 1222 County Loop 95 Carthage, MO 64836-

**DISPOSITION**

20a. BURIAL, CREMATION, OTHER (Specify): Burial
20b. DATE OF DISPOSITION (Month, Day, Year): April 27, 2006
20c. PLACE OF DISPOSITION (Name of cemetery, crematory, or other place): Evergreen Cemetery
20d. LOCATION (City or Town, State): Ft. Scott Kansas
21. SIGNATURE OF FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH: [signature]
22a. NAME AND ADDRESS OF FACILITY: Knell Mortuary Inc. 308 W. Chestnut Carthage, MO 64836
22b. FUNERAL ESTABLISHMENT LICENSE NUMBER: 500

**CAUSE OF DEATH**

23. PART I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line.

IMMEDIATE CAUSE (Final disease or condition resulting in death) a. Cerebral hemorrhage

Approximate Interval Between Onset and Death:

DUE TO (OR AS A CONSEQUENCE OF): b.

DUE TO (OR AS A CONSEQUENCE OF): c.

DUE TO (OR AS A CONSEQUENCE OF): d.

Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (disease or injury that initiated events resulting in death) LAST

PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I.

24. IF DECEASED WAS FEMALE 10-49, WAS SHE PREGNANT IN THE LAST 90 DAYS? ☐ Yes ☐ No ☐ Unk.
25a. WAS AN AUTOPSY PERFORMED? ☐ Yes ☒ No
25b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? ☐ Yes ☒ No
26. MANNER OF DEATH: ☒ Natural ☐ Pending Investigation ☐ Accident ☐ Suicide ☐ Could not be Determined ☐ Homicide
27a. DATE OF INJURY (Month, Day, Year):
27b. TIME OF INJURY: M
27c. INJURY AT WORK? ☐ Yes ☐ No ☐ Unk.
27d. DESCRIBE HOW INJURY OCCURRED:
27e. PLACE OF INJURY - At home, farm, street, factory, office building, etc. (specify):
27f. LOCATION (Street and Number or Rural Route Number, City or Town, State):

**CERTIFIER**

28a. (Specify) ☒ CERTIFYING PHYSICIAN ☐ MEDICAL EXAMINER/CORONER
28b. To the best of my knowledge, death occurred at the time, date and place and due to the cause(s) stated. (Signature and Title) [signature]
28c. DATE SIGNED (Month, Day, Year): 4/27/06
28d. TIME OF DEATH: 4:26 A M
29a. NAME AND ADDRESS OF CERTIFIER (PHYSICIAN, MEDICAL EXAMINER OR CORONER) (Type or Print): James M. Lynch 3202 McIntosh Circle Dr., Joplin, MO 64804
29b. MO. LICENSE NUMBER: R5F36
30. WAS CASE REFERRED TO MEDICAL EXAMINER/CORONER? ☐ Yes ☒ No
31. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (Type or Print):
32. REGISTRAR'S SIGNATURE: [signature]
33. DATE RECEIVED BY LOCAL REGISTRAR (Month, Day, Year): May 1, 2006

THIS IS A CERTIFIED COPY OF AN ORIGINAL DOCUMENT
(Do not accept if rephotographed, or if seal impression cannot be felt.)

THE REPRODUCTION OF THIS DOCUMENT IS PROHIBITED BY LAW (sec. 193.245, 193.255, & 193.315 RSMo 1994).

STATE OF MISSOURI } ss
COUNTY OF NEWTON

I HEREBY CERTIFY that this is an exact reproduction of the certificate for the person named therein as it now appears in the permanent records of the Bureau of Vital Records of the Missouri Department of Health and Senior Services. Witness my hand as County Registrar of Vital Statistics and the Seal of the Missouri Department of Health and Senior Services this date of

May 1, 2006

MO 580-1100 (10-01)

EXHIBIT G

[signature]
Registrar of Vital Statistics