IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EARLEEN FAUVERGUE | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 08-431 L |
| v. | ) | |
| | ) | Sr. Judge Loren A. Smith |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
E-MAIL: kristine.tardiff@usdoj.gov

ELIZABETH NICHOLAS
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044
TEL: (202) 305-0436
FAX: (202) 305-0506
E-MAIL: elizabeth.nicholas@usdoj.gov

Electronically filed on August 21, 2008

# TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . 1

II. BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Regulatory Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A. The Criteria For Certifying a Class Action Pursuant to RCFC 23.. . . . . . . . . . . . . . 9

B. Plaintiff's Proposed Class Does Not Satisfy the Numerosity Requirement. . . . . 12

C. Plaintiff Has Not Met the Commonality and Typicality Requirements of RCFC 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

D. Plaintiff's Proposed Class Action is Not Superior to Other Available Methods. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

E. The Government Has Not Acted on Grounds Generally Applicable to the Whole Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

F. The Proposed Class Members Are Adequately Representing Their Interests in Other Cases and Are Represented Therein By Other Counsel. . . . . . . . . . . . . 22

G. The Court Should Not Allow Litigants to Evade the Statute of Limitations by Seeking Certification of a Class That Plainly Does Not Meet the Established Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

H. The Certification of Class Actions in Other Factually and Legally Distinguishable Cases Does Not Support Certification in this Case. . . . . . . . . . . 24

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

### FEDERAL CASES


Abel v. United States,
18 Cl. Ct. 477 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Andrews v. Bechtel Power Corp.,
780 F.2d 124 (1st Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Barnes v. United States,
68 Fed. Cl. 492 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 15, 22, 23

Birt v. STB,
90 F.3d 580 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

Buchan v. United States,
27 Fed. Cl. 222 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Caldwell v. United States,
391 F.3d 1226 (Fed. Cir. 2004), cert denied, 546 U.S. 826 (2005). . . . . . . . . 4, 5, 16, 18, 21

Caldwell v. United States,
57 Fed. Cl. 193 (2003), aff'd, 391 F.3d 1226 (Fed. Cir. 2004),
cert. denied, 546 U.S. 826 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,
450 U.S. 311 (1981).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Citizens Against Rails-To-Trails v. STB,
267 F.3d 1144 (D.C. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Colorado v. United States,
271 U.S. 153 (1926).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Curry v. United States,
81 Fed. Cl. 328 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 22

Filosa v. United States,
70 Fed. Cl. 609 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fisher v. United States,
69 Fed.Cl. 193 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Forest Props, Inc. v. United States,
177 F.3d 1360 (Fed. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

General Tel. Co. of the Southwest v. Falcon,
457 U.S. 147 (1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Goos v. ICC,
911 F.2d 1283 (8th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Grantwood Village v. Mo. Pac. R.R.,
95 F.3d 654 (8th Cir. 1996), cert. denied, 519 U.S. 1149 (1997). . . . . . . . . . . . . . . . . . . . 3

Hayfield N. R.R. v. Chicago & N.W. Transp. Co.,
467 U.S. 622 (1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

In re American Medical Sys., Inc.,
75 F.3d 1069 (6th Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Jaynes v. United States,
69 Fed. Cl. 450 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Loretto v. Teleprompter Manhattan CATV Corp.,
458 U.S. 419 (1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Marable v. Dist. Hosp. Partners, L.P.,
No. 01-02361, 2006 WL 2547992 at 5 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 15

Moore v. United States,
41 Fed. Cl. 394 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 24

Nat'l Ass'n of Reversionary Property Owners v. STB,
158 F.3d 135 (D.C. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

Nat'l Wildlife Fed. v. ICC,
850 F.2d 694 (D.C. Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Neb. Trails Council v. STB,
120 F.3d 901 (8th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Preseault v. ICC,
494 U.S. 1 (1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

Quinault Allottee Association v. United States,
197 Ct. Cl. 134, 453 F.2d 1272 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

RLTD Ry. Corp. v. STB,
166 F.3d 808 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Saunooke v. United States,
8 Cl. Ct. 327 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tuthill Ranch, Inc. v. United States,
381 F.3d 1132 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Yee v. City of Escondido,
503 U.S. 519 (1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**FEDERAL STATUTES**

16 U.S.C. § 1247(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

49 U.S.C. § 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

49 U.S.C. § 10502. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

49 U.S.C. § 10903. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

49 U.S.C. § 10906 (1982 ed.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

H.R. Rep. No. 98-28. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**FEDERAL RULES**

RCFC 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 15

RCFC 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 21

RCFC 23(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

RCFC 23(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

RCFC 23(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

RCFC 23(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

RCFC 23(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

RCFC 23(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

RCFC 23(b)(2)(A)-(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

RCFC 23(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**FEDERAL REGULATIONS**

49 C.F.R. §1152. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

49 C.F.R. § 1152.29(a)(1)–(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

49 C.F.R. § 1152.29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

49 C.F.R. § 1152.29(c)-(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

49 C.F.R. §§ 1152.29(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

49 C.F.R. §§ 1152.29(d)(1), (e)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

49 C.F.R. § 1152.50. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## INDEX TO EXHIBITS IN DEFENDANT'S APPENDIX
(ALL DOCUMENTS FILED WITH THE STB IN DOCKET No. AB-6 (Sub-No. 395X))


| Exhibit No. | Description |
|---|---|
| 1 | Comments from the City of Carl Junction and the Joplin Trail Coalition, Request for an Order and Notice of Interim Trail Use ("NITU") (Missouri segment), filed on May 10, 2002). |
| 2 | Letter from Burlington Northern and Santa Fe Railway Company ("BNSF") to the Surface Transportation Board ("STB"), stating that BNSF does not object to the issuance of a NITU. |
| 3 | Joplin Trail Coalition Statement requesting issuance of a NITU (Kansas segment), filed May 20, 2002. |
| 4 | Letter from BNSF to the STB, stating that BNSF does not object to the issuance of a NITU, filed on June 12, 2002. |
| 5 | Letter from BNSF to the STB, requesting a 180-day extension of the NITU, filed on November 22, 2002. |
| 6 | Letter from the Cherokee County, Kansas Landowner's Association (CCKLA) to the STB stating objections to interim trail use for the Kansas segment, filed Dec. 10, 2002. |
| 7 | Letter from BNSF to the STB responding to letter filed by the CCKLA, filed December 19, 2002. |
| 8 | Letter from BNSF to the STB, requesting extension of deadline to consummate abandonment of its rail line, filed April 16, 2003. |
| 9 | STB Decision, issued May 14, 2003 |
| 10 | Letter from BNSF to the STB, re: Interim Trail Use Railbanking Agreement for the Missouri properties, filed October 21, 2003. |
| 11 | Letter from BNSF to the STB, re: consummation of abandonment of the Kansas segment, filed February 4, 2004. |

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Earleen Fauvergue alleges a taking of her private property in Jasper County, Missouri, pursuant to a provision of the National Trails System Act, 16 U.S.C. § 1247(d). Specifically, Fauvergue alleges that she is the fee owner of property that "abuts and underlies" a railroad easement. Compl. ¶ 4 (Doc. 1). She alleges that this easement was abandoned and extinguished under Missouri state law due to the railroad's non-use of the property. Compl. ¶¶ 17–18. Fauvergue further alleges that, but for the Trails Act, the operation of which authorized the preservation of the easement for future rail use and interim trail use of the corridor, she would have regained unencumbered fee title to the lands subject to the easement. Compl. ¶¶ 36. In addition to bringing a takings claim on her own behalf, Fauvergue has moved for class certification. Fauvergue seeks to represent a class of landowners along a 28.25-mile right-of-way between Columbus, Kansas, and Carthage, Missouri. See Pl.'s Mot. to Certify Class Action, filed June 18, 2008 (Doc. 4-5).

Certification of a class action is not appropriate in this case. Plaintiff has not met several of the prerequisites for certification, including numerosity. In addition, as set forth in more detail below, the 28.25-mile right-of-way encompasses a 15.93-mile segment located in Jasper County, Missouri. The remaining 12.32-mile segment is located in Kansas. There is no need to certify a class action as to the Missouri segment because other landowners along this segment have retained their own counsel and have filed their takings claims in four separately filed complaints that have been consolidated by the court. Likewise, there is no justification for certifying a class with respect to the 12.32-mile segment in Kansas because the regulatory facts involving that segment are significantly different from the facts involving the Missouri segment, and because

Fauvergue's individual claim involving the Missouri segment is not typical of any claims that could be brought with respect to the Kansas segment.

## II. BACKGROUND

### A. Regulatory Background

Under federal law, the Surface Transportation Board ("STB" or "Board") has exclusive and plenary authority over the construction, operation and abandonment of virtually all of the nation's rail lines.[1] Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 319 (1981). Consequently, a railroad cannot be relieved of its legal obligation to offer service on a particular rail line without first obtaining the STB's authorization. See Colorado v. United States, 271 U.S. 153, 167 (1926); Nat'l Ass'n of Reversionary Property Owners v. STB, 158 F.3d 135, 137 (D.C. Cir. 1998) ("NARPO") . In federalizing this authority, "Congress sought to balance the railroad companies' need to dispose of trackage that was no longer profitable with the public's need for a working interstate track system." RLTD Ry. Corp. v. STB, 166 F.3d 808, 810 (6th Cir. 1999).

A railroad's termination of active rail service generally occurs in one of two ways. First, a railroad can apply for permission to discontinue service. This authority allows the railroad to decide "to cease operating a line for an indefinite period while preserving the rail corridor for possible reactivation of service in the future." Preseault v. ICC, 494 U.S. 1, 6 n.3 (1990); see also NARPO, 158 F.3d at 137 n.1 ("A line that is no longer in use, but has not been officially abandoned, may be reactivated later and is termed 'discontinued.'"). Second, a railroad may seek

---

[1]The STB assumed such authority on January 1, 1996 as the successor agency to the Interstate Commerce Commission ("ICC"). See 49 U.S.C. § 702. Reference to the STB herein includes both the STB and the ICC.

permission to terminate its service over a corridor through an abandonment proceeding. If the STB grants authority to abandon, and the railroad satisfies the conditions imposed on that authority and "consummates" the abandonment, the rail line is removed from the national transportation system and the STB's jurisdiction generally comes to an end. Hayfield N. R.R. v. Chicago & N.W. Transp. Co., 467 U.S. 622, 633 (1984); Preseault, 494 U.S. at 6 n.3; Birt v. STB, 90 F.3d 580, 585 (D.C. Cir. 1996).

In 1976, Congress passed legislation to address concerns about the loss of railroad rights-of-way nationwide. See Preseault, 494 U.S. at 5-6. The provisions of the 1976 legislation authorized the STB to delay disposition of lines subject to abandonment for a period of time to allow the sale of the line for public purposes and recreational use. 49 U.S.C. § 10906 (1982 ed.). However, Congress subsequently found that these provisions "ha[d] not been successful in establishing a process through which railroad rights-of-way which are not immediately necessary for active service can be utilized for trail purposes." H.R. Rep. No. 98-28, p. 6 (1983) (quoted in Preseault, 494 U.S. at 6). Accordingly, in 1983, Congress acted once again, this time passing the Trails Act and providing railroads seeking to either abandon or discontinue their use of a rail line with a third option: railbanking.[2] See RLTD Ry., 166 F.3d at 811 ("Railbanking is an alternative to abandonment."); Grantwood Village v. Mo. Pac. R.R., 95 F.3d 654, 659 (8th Cir. 1996) ("Congress determined that interim trail use was to be treated like discontinuance rather than as an abandonment."), cert. denied, 519 U.S. 1149 (1997). The railbanking provision of the Trails

[2] The term railbanking refers to "the preservation of railroad corridor for future rail use." Neb. Trails Council v. STB, 120 F.3d 901, 903 n.1 (8th Cir. 1997). See also Caldwell v. United States, 57 Fed. Cl. 193, 194 (2003) (under the railbanking process, "[t]he right-of-way is 'banked' until such future time as railroad service is restored"), aff'd, 391 F.3d 1226 (Fed. Cir. 2004), cert. denied, 546 U.S. 826 (2005).

Act states that,

> . . . Consistent with the purposes of [the Railroad Revitalization and Regulatory Reform Act of 1976], and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for the purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.

16 U.S.C. § 1247(d); see also 49 C.F.R. § 1152.29 (implementing regulations).

In order for a railroad corridor or right-of-way to be railbanked, the railroad must first engage in the STB's regulatory abandonment process, which involves either the filing of an abandonment application under 49 U.S.C. § 10903, the filing of a petition for a petition for exemption from that process under 49 U.S.C. § 10502 (previously 49 U.S.C. § 10505); or, for lines that have been "out-of-service" for at least two years, the filing of a "notice of exemption" under 49 C.F.R. § 1152.50. See Caldwell v. United States, 391 F.3d 1226, 1228 (Fed. Cir. 2004), cert denied, 546 U.S. 826 (2005); see also 49 C.F.R. § 1152.29. This case involves a notice of exemption.

Once a railroad requests authorization to abandon a line through the filing of an exemption notice, a party interested in acquiring or using the right-of-way for railbanking and interim trail use may then request the issuance of a notice of interim trail use or "NITU." 49 C.F.R. § 1152.29(c)-(d). The STB's regulations require a qualified party interested in "acquiring or using" a right-of-way proposed to be abandoned for railbanking and interim trail use to file a

request or petition that includes, *inter alia*, a statement of willingness to assume responsibility for the right-of-way, and an acknowledgment that interim trail use of the right-of-way is subject to the "possible future reconstruction and reactivation of the right-of-way for rail service." 49 C.F.R. § 1152.29(a)(1)–(3). Upon receipt of this required documentation, the STB applies a "rebuttable presumption of fitness" of the potential trail sponsor. Citizens Against Rails-To-Trails v. STB, 267 F.3d 1144, 1150 (D.C. Cir. 2001) ("CART") . Railbanking and interim trail use is voluntary on the part of the railroad, see Nat'l Wildlife Fed. v. ICC, 850 F.2d 694, 702 (D.C. Cir. 1988), but if the railroad indicates that it is willing to negotiate a Trails Act agreement, the issuance of the NITU is required. 49 C.F.R. § 1152.29(d)(1); see also, 267 F.3d at 1151-53; Goos v. ICC, 911 F.2d 1283, 1295 (8th Cir. 1990).

The NITU operates to preserve the STB's jurisdiction, thereby preempting the application of any state law that would otherwise apply in the event that the railroad were to abandon its property interests in the right-of-way. Caldwell, 391 F.3d at 1229-30. If a railbanking and interim trail use agreement is reached, the NITU automatically authorizes the interim trail use, and the trail sponsor may then assume management of the right-of-way, subject only to the right of a railroad to restore active rail service. Goos, 911 F.2d at 1295; Birt, 90 F.3d at 583. If no such agreement is reached, the railroad may, in accordance with any other conditions and requirements imposed by the STB, exercise its authority to abandon the rail line. Preseault, 494 U.S. at 7; Caldwell, 391 F.3d at 1230; 49 C.F.R. §§ 1152.29(d)(1), (e)(2). The railroad is generally provided with a specified period of time to exercise that authority and is required to file a notice of consummation with the STB "to signify that it has exercised the authority granted and fully abandoned the line." 49 C.F.R. §§ 1152.29(d)(1), (e)(2); NARPO, 158 F.3d at 139 & n.7.

B. Factual Background[3]

In 1876, the Memphis, Carthage and Northwestern Railroad Company acquired a 28.25-mile right-of-way from Columbus, in Cherokee County, Kansas, to Carthage, in Jasper County, Missouri, and constructed a railroad.[4] As a result of a series of railroad mergers, the subject right-of-way was transferred to the Burlington Northern and Santa Fe Railway Company ("BNSF") in 1995.

On or about May 3, 2002, BNSF filed a Notice of Exemption with the STB under 49 C.F.R. 1152 Subpart F, seeking authorization to abandon and discontinue service over 28.25 miles of rail line between milepost 343.55 in Columbus, Cherokee county, Kansas, and milepost 315.30 in Carthage, Jasper County, Missouri. Compl. Ex. C; Def. Ex. 10. On May 23, 2002, the STB served and published the Notice of Exemption in the Federal Register. 67 Fed. Reg. 36298 (May 23, 2002).

On May 10, 2002, the City of Carl Junction and the Joplin Trail Coalition ("JTC") filed comments on the Notice of Exemption and jointly filed a request for the issuance of a NITU for the segment of the right-of-way located between milepost 331.23 at the Missouri state line and milepost 315.30 near Carthage, Missouri, a distance of 15.93 miles. Def. Ex. 1. On May 16,

---

[3]The allegations in Plaintiff's Complaint are assumed to be true for the purposes of this opposition brief. However, Defendant reserves the right to address and contest any of these alleged facts in any subsequent proceedings.

[4]Plaintiff alleges that the railroad company acquired only an easement to this right-of-way. The exact nature of the property interests acquired by the railroad to the lands within the right-of-way is a question of law that turns on an interpretation of the original instruments by which the railroad acquired its interests under either Missouri or Kansas state law. The title issues, which remain dispute issues at this early stage of the case, need not be resolved in order for the Court to rule on Plaintiff's motion for class certification.

2002, BNSF filed a letter with the STB stating that it did not object to the issuance of a NITU, as requested by the City of Carl Junction and the JTC. Def. Ex. 2. The STB made note of this request in the published Notice of Exemption, and stated that "[t]he Board will address the trail use request, and any others that may be filed, in a subsequent decision." Compl., Ex. C at 2 n.3. See also Compl., Ex. C at 3 ("Environmental, historic preservation, public use, or trail use/rail banking conditions will be imposed, where appropriate, in a subsequent decision").

On May 29, 2002, JTC filed a request for the issuance of a NITU for the Kansas portion of the right-of-way between milepost 343.55 at Columbus, Kansas, and milepost 331.23 at the Kansas state line, a distance of 12.32 miles ("Kansas line"). Def. Ex. 3. BNSF filed a letter with the STB on June 12, 2002, stating that it did not object to JTC's request for the issuance of a NITU. Def. Ex. 4.

On June 21, 2002, the STB issued a Decision in which it reopened the exemption proceedings and made the exemption subject to a number of conditions. This decision included the issuance of a NITU for the entire 23.25-mile right-of-way, pursuant to the requests filed by the City and JTC, and BNSF's consent to negotiate a railbanking and interim trail use agreement. The decision allowed the parties to negotiate such an agreement during a 180-day period (until December 19, 2002). The STB's decision further states that,

> If an interim trail use/rail banking agreement is reached, it must require the trail user to assume for the term of the agreement, full responsibility for management of, for any legal liability arising out of the transfer or use of . . ., and for the payment of any and all taxes that may be levied or assessed against, the right-of-way.

Compl., Ex. C, at 5 (¶ 4). In addition, the STB's decision provides that if such an agreement is reached within the 180 day negotiating period, interim trail use may be implemented, and if no

such agreement is reached during that time period, "BNSF may fully abandon the line." Id. at 6 (¶ 6).

By a letter filed with the STB on November 22, 2002, BNSF requested that the STB extend the NITU negotiating period for an additional 180 days. Def. Ex. 5. By a letter filed on December 10, 2002, the Cherokee County, Kansas Landowner's Association objected to any interim trail use of the segment of the right-of-way located in Kansas. Def. Ex. 6. BNSF responded with a letter filed on December 19, 2002, in which it stated that it was still negotiating with JTC. Def. Ex. 7. BNSF reiterated its prior request for an extension of the NITU negotiating period, stating that "[i]t is our hope to reach a solution that addresses the concerns of as many interests as possible. Meanwhile, the rights of the Joplin Trails Coalition to negotiate with BNSF should not be prematurely terminated." Id. On December 19, 2002, the STB issued a decision granting BNSF's request for a 180-day extension of the NITU negotiating period, to June 17, 2003. Compl., Ex. F.

By letter filed April 16, 2003, BNSF requested an extension of the previously imposed deadline to exercise its abandonment authority and file a notice of consummation of abandonment of the subject right-of-way, to October 31, 2003. Def. Ex. 8. In making this request, BNSF pointed to a number of factors that warranted an extension, including its ongoing negotiations with JTC regarding railbanking and interim trail use. Id. The STB granted this request in a decision issued on May 14, 2003.[5] Def. Ex. 9.

On June 16, 2003, a railbanking and interim trail use agreement was reached between

---

[5]BNSF did not request or receive a further extension of the NITU negotiating period, which was set to expire on June 17, 2003.

BNSF and JTC for the segment of the right-of-way located in Missouri. Def. Ex. 10–11. BNSF notified the STB of its agreement with JTC in a letter filed October 21, 2003. Def. Ex. 10. In this same letter, BNSF notified the STB that "[t]he remainder of the right of way has been salvaged and BNSF's discontinuance of the subject line will be consummated on October 31, 2003." Id. In a subsequent letter, BNSF subsequently clarified that,

> The remainder of the right of way, located in the State of Kansas, has been salvaged and fully abandoned. Therefore, BNSF's *discontinuance* of the line for the properties in the State of Missouri and the *abandonment* of the properties in the State of Kansas were consummated as of October 31, 2003.

Def. Ex. 11 (emphasis in original).

## III. ARGUMENT

Plaintiff Fauvergue seeks to represent a "class of similarly situated individuals or entities that held fee title to any land in Jasper County, Missouri or Cherokee County, Kansas, which is or was encumbered by the reason of the Trails Act and the June 21, 2002 NITU." Pl.'s Mem. at 2 (Doc. 5). As set forth below, the criteria for class certification have not been met with respect to the class proposed by Plaintiff. Accordingly, Plaintiff's motion for class certification should be denied in its entirety.

### A. The Criteria For Certifying a Class Action Pursuant to RCFC 23

The determination as to whether a class should be certified in the Court of Federal Claims is governed by Rule 23, which was amended significantly in 2002 and generally incorporates the criteria for class certification set forth in Quinault Allottee Association v. United States, 197 Ct.

Cl. 134, 453 F.2d 1272 (1972).[6] The prerequisites for class certification are set forth in Rule 23(a) as follows:

> One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

RCFC 23(a). In addition, Rule 23(b) provides that an action

> may be maintained as a class action if the prerequisites in Rule 23(a) are satisfied, and in addition:
>
> (1) the United States has acted or refused to act on grounds generally applicable to the class; and
>
> (2) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the

---

[6]The Quinault factors are:

> (i) [the members must] constitute a large but manageable class, (ii) there is a question of law common to the whole class, (iii) this common legal issue is a predominant one, overriding any separate factual issues affecting the individual members, (iv) the claims of the present plaintiffs are typical of the claims of the class, (v) the Government has acted on grounds generally applicable to the whole class, (vi) the claims [of the class members] are so small that it is doubtful that they would be pursued other than through this case, (vii) the current plaintiffs will fairly and adequately protect the interests of the class without conflict of interest, and (viii) the prosecution of individual actions by members of the class, some in district courts and some in this court, would create a risk of inconsistent or varying adjudications. [footnote omitted.]

Quinault, 197 Ct. Cl. at 140-41, 453 F.2d at 1276.

> prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of the class action.

RCFC 23(b).

To facilitate the analysis of a request for class certification, the Court of Federal Claims has grouped the requirements of Rule 23(a) and 23(b) into five categories or elements: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; and (5) superiority. Curry v. United States, 81 Fed. Cl. 328, 332 (2008); Barnes v. United States, 68 Fed. Cl. 492, 494 (2005).

A plaintiff seeking class certification "bears the burden of establishing that all of the requirements of Rule 23 are satisfied." Jaynes v. United States, 69 Fed. Cl. 450, 453 (2006). See also Barnes, 68 Fed. Cl. at 495 ("Plaintiffs bear the burden of establishing that action satisfies these [RCFC 23] requirements"); Abel v. United States, 18 Cl. Ct. 477 (1989). In assessing whether this burden has been met, the Court has emphasized that the requirements of Rule 23 "are in the conjunctive; hence, a failure to satisfy any one of them is fatal to class certification." Barnes, 68 Fed. Cl. at 494. See also Curry, 81 Fed. Cl. at 332 ("To prevail in their motion to certify a class action, plaintiffs must establish that their proposed class satisfies each element").

Even when the Court of Federal Claims determines that the certification of a class would provide "discernable advantages over the available alternative methods of adjudication[,] [t]he court's rules allow only opt-in classes, not opt-out classes." Jaynes, 69 Fed. Cl. at 460. See also RCFC 23, Rules Committee Notes, 2002 Revision ("unlike the FRCP, the court's rule contemplates only opt-in class certifications, not opt-out classes"); Curry, 81 Fed. Cl. at 331 n.8 (noting that the 2002 revision of RCFC 23 "allows only opt-in classes"). The opt-in approach

allowed under this Court's rules "'resembles permissive joinder in that it requires affirmative action on the part of every potential plaintiff' in order to join the lawsuit and 'unidentified claimants are not bound' by a ruling in defendant's favor." Jaynes, 69 Fed. Cl. at 460 (quoting Buchan v. United States, 27 Fed. Cl. 222, 223 (1992)).

As set forth below, Plaintiff has not met several of the requirements for class certification in this case. The failure to meet her burden of proof as to any one of these requirements compels the denial of Plaintiff's motion for class certification.

B. Plaintiff's Proposed Class Does Not Satisfy the Numerosity Requirement

The first prerequisite for the certification of a class action in the CFC is that "the class is so numerous that joinder of all members is impracticable." RCFC 23(a). As noted by Plaintiff in her memorandum, this court has "implied that a proposed class size of fifty members or less was too small." Pl.'s Mem. at 10 (citing Saunooke v. United States, 8 Cl. Ct. 327, 333 (1985)). More recently, in Jaynes v. United States, the court found that a proposed class of up to 258 members did not satisfy the numerosity requirement where the class members were geographically proximate and could be identified through available records. Jaynes, 69 Fed. Cl. at 454-55; id. at 454 ("Joinder is considered more practicable when all members of the class are from the same geographic area." (quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st Cir. 1985)). By contrast, in other recent decisions the court has found that a class estimated to include approximately 5,000 members, and a class estimated to exceed 10,000 members, met the numerosity requirement. Barnes, 68 Fed. Cl. at 493-95 (5,000 class members); Curry, 81 Fed. Cl. at 332 (10,000 class members).

In this case, Plaintiff contends that the numerosity requirement is met because the proposed class, by her estimate, "likely exceeds seventy-five or more members" who own property along the 28.25-mile stretch of right-of-way at issue in the Complaint. Pl.'s Mem. at 10-12. Plaintiff states that prospective class members can be readily identified by searching public records in the two county tax assessors and recorder of deeds offices. Id. at 10-11.

Plaintiff's numerosity argument fails for several reasons. First, 12.32 miles, or 43.6%, of the subject right-of-way is located in Kansas. As set forth below, this segment of the subject right-of-way was not subject to railbanking and interim trail use. Instead, the record reflects that BNSF exercised its authority to abandon this segment of its line. The railroad's filings with the STB state that it consummated its abandonment by October 31, 2003. Accordingly, the STB no longer has regulatory jurisdiction over this segment of the right-of-way and the disposition of the lands within the Kansas segment of the subject right-of-way are a matter of Kansas state law, unaffected by the provisions of the Trails Act. Although the landowners in Kansas may have been able to file temporary regulatory takings claims based on the stay of the abandonment proceedings to allow BNSF and JTC to negotiate a railbanking and interim trail use agreement, no such claims were filed during the six-year statute of limitations that would be applicable to such claims. Fauvergue has not alleged such a claim in her Complaint, nor could she, given that she only claims to own property in Missouri. Accordingly, the claims that relate to the Kansas segment of the subject right-of-way must be excluded from any estimate of the size of the class.

Moreover, for the 15.93-mile segment of the right-of-way that is located in Missouri, approximately 102 landowners along this segment already have filed their claims in four separate complaints in the Court of Federal Claims. The case of Terry and Diane Winder, et al. v. United

States, No. 08-324L, was filed on May 1, 2008. The case of Stan and Rebecca Beecham, et al. v. United States, No. 08-435L, was filed on June 16, 2008. The case of Bessie Shira, et al. v. United States, No. 08-453L, was filed on June 19, 2008. Finally, the case of Norman and Mirna Jones v. United States, No. 08-457L, was filed on June 20, 2008. The Court consolidated these four separately filed complaints, and designated Winder as the lead case. These cases are now proceeding in accordance with the rules of this court, with the plaintiffs represented by counsel of their choosing.[7] There are another eight plaintiffs who filed takings claims involving the Missouri segment in 2005 in the cases of Carl Junction v. United States, No. 05-4L, and Hance v. United States, No. 05-3L. The plaintiffs in these additional cases accepted an offer of judgment and final judgment was entered by the Court earlier this year. All of these separately filed claims must be excluded from any estimate as to the proposed class size.

When the landowners in Kansas, and the landowners in Missouri who have filed and are pursuing their own claims (or already have resolved their claims), are excluded, Plaintiff's numerosity argument falls apart. Indeed, based on Plaintiff's estimate that the class will "likely exceed seventy-five or more members," the fact that approximately 110 plaintiffs have filed separate claims involving property in Missouri suggests that there are few, if any, remaining landowners who might qualify as members of the class proposed by the Plaintiff.

As noted above, the failure of a plaintiff to satisfy any one requirement of Rule 23 is fatal to their request for class certification. Here, Plaintiff has not met her burden of proving that the numerosity requirement is satisfied. Plaintiff's motion for class certification must therefore be

---

[7]Fauvergue's attorney, who also seeks to be designated as class counsel, does not represent the plaintiffs in the consolidated action.

denied.[8]

C. Plaintiff Has Not Met the Commonality and Typicality Requirements of RCFC 23

The second requirement for class certification is that there be "questions of law or fact common to the class." RCFC 23(a)(2). "This requirement is satisfied where there is at least 'one core common legal question that is likely to have one common defense.'" See Filosa v. United States, 70 Fed. Cl. 609, 617 (2006) (quoting Fisher v. United States, 69 Fed.Cl. 193, 199-200 (2006). The third requirement for class certification is that the claims of the representative parties must be "typical of the claims for the class." RCFC 23(a)(3). Typicality has been defined by the Supreme Court as the requirement that the named plaintiff "possess the same interest and suffer the same injury as the class members." General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156 (1982). As the Court of Federal Claims explained in one recent decision, "'[a] necessary consequence of the typicality requirement . . . is that the representatives' interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." Barnes, 68 Fed. Cl. at 498 (quoting In re American Medical Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996)). Because the commonality and typicality requirements of RCFC 23 often involve the same inquiry into substantive facts and law for a particular case, these inquires tend to merge. See, e.g., Marable v. Dist. Hosp. Partners, L.P., No. 01-02361, 2006 WL 2547992 at *5 (D.D.C. 2006) (citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 158 n.13 (1982)). Because the Plaintiff in this case fails to

[8] Although Plaintiff's failure to satisfy the numerosity requirement is fatal to her request for class certification, and the Court need not reach or assess whether any of the other requirements are met, Defendant addresses several additional requirements herein to show that Plaintiff's proposed class fails to meet multiple requirements.

meet the commonality and typicality requirements for the same reasons, these two factors are discussed together.

In this case, Fauvergue alleges that the operation of the Trails Act resulted in a permanent physical taking of her property in Missouri. Her claim relies on the fact that a NITU was issued on June 21, 2002, and the railroad company (BNSF) and a qualified trail sponsor (JTC) reached a railbanking and interim trail use agreement with regard to the Missouri segment of the subject right-of-way. Plaintiff asserts that the common legal issue between her individual claim and the claims of the proposed class is whether the NITU issued on June 21, 2002, constitutes a taking. See Pl.'s Mem. at 12. Even assuming *arguendo* that Fauvergue's individual claim could be considered typical of the claims of the other landowners in Missouri that she seeks to represent, her claim is not typical of the claims of the landowners in Kansas that she seeks also to represent.[9]

In the context of ruling on when takings claims based on the operation of the Trails Act accrue, the Federal Circuit has explained that the issuance of a NITU "operates as a single trigger to several possible outcomes." Caldwell, 391 F.3d at 1234. The Federal Circuit elaborated that

---

[9]Plaintiff has not established that the title issues that must be resolved with respect to her claim are common or typical. Plaintiff alleges that the right-of-way that affects her property was acquired by the railroad through a condemnation proceeding under Missouri law, but she states in her memorandum only that "much of the Missouri portion of the rail line was constructed pursuant to a single condemnation decree[.]" Pl.'s Mem. at 15. Plaintiff has not indicated how the remaining Missouri portions of the right-of-way were acquired, or how any of the Kansas segment was acquired. In another rails-to-trails takings case, the Court of Federal Claims required the plaintiffs seeking class certification to "furnish a representative sampling of the conveyances at issue" prior to ruling on whether the title and ownership issues were truly common. See Moore v. United States, 41 Fed. Cl. 394, 398-99 (1998). Such an approach would also be appropriate here were it not for the numerous other deficiencies in Plaintiff's motion.

the issuance of a NITU

> may . . . trigger a process that results in a permanent taking in the event that a trail use agreement is reached and abandonment of the right-of-way is effectively blocked. Alternatively, negotiations may fail, and the NITU would then convert into a notice of abandonment. In these circumstances, a temporary taking may have occurred.

Id. (internal citations omitted).

Under Caldwell, Plaintiff Fauvergue has alleged a permanent physical takings claim involving the property she allegedly owns in Missouri. However, as discussed above in Section II, the railroad right-of-way at issue runs through two different states. A full 12.32 miles or 43.6% of the subject right-of-way is located in Kansas. Although the NITU issued on June 21, 2002, authorized railbanking negotiations as to the entire right-of-way, including the Kansas segment, those negotiations did not lead to an agreement as the Kansas segment. Once the negotiating period authorized by the NITU expired without a railbanking agreement having been reached as to the Kansas segment, BNSF was fully authorized to abandon this segment of its rail line, provided that the other conditions imposed on such an abandonment were met. BNSF's subsequent filings with the STB indicate that the railroad exercised this authority and consummated its abandonment of the Kansas segment on October 31, 2003. Def. Ex. 10-11. Since that date, the STB no longer has had regulatory jurisdiction over this segment of the right-of-way and the disposition of the lands within the Kansas segment of the subject right-of-way are a matter of Kansas state law, unaffected by the provisions of the Trails Act. Accordingly, the only taking claim that could be alleged based on the operation of the Trails Act with respect to

the Kansas segment of the subject right-of-way is a temporary regulatory takings claim.[10] See Caldwell, 391 F.3d at 1234. Plaintiff has not alleged such a claim in this case.

Moreover, the permanent physical takings claims that Plaintiff does allege is not typical of any temporary regulatory takings claim that could be alleged by the Kansas landowners she seeks to represent. Indeed, it is well established that there is a distinction between physical takings claims and regulatory takings claims. To establish a physical taking, a landowner must prove that the government's action required the landowner to submit to a physical occupation of his land, either by the government or by a third party authorized by the government to physically occupy that land. Yee v. City of Escondido, 503 U.S. 519, 527 (1992); Forest Props, Inc. v. United States, 177 F.3d 1360, 1364 (Fed. Cir. 1999). In contrast, when the government's regulatory action does not require the landowner "to suffer the physical occupation of a portion of his [property] by a third party, they will be analyzed under the multifactor [Penn Central] inquiry generally applicable to nonpossessory governmental activity." Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 440 (1982). The analysis that applies to these two types of takings claims is decidedly different. See Tuthill Ranch, Inc. v. United States, 381 F.3d 1132, 1135 (Fed. Cir. 2004) ("The Supreme Court has recognized that the government may 'take' private property by either physical occupation or regulation, and that these two categories of takings are subject to different analyses."). In addition, the Federal Circuit recently noted that the Supreme Court has confirmed the distinction between a permanent physical occupation, a physical invasion short of an occupation, and a regulation that merely restricts the use of

[10]By stating that the Kansas landowners might be able to allege a temporary regulatory takings claim under Caldwell, Defendant in no way concedes that such a claim would be successful on the merits.

property, holding that both of the latter categories were not physical takings: "Physical invasions short of an occupation and regulations that merely restrict the use of property may qualify as regulatory takings, but not as physical takings." Tuthill Ranch, 381 F.3d at 1137.

The claims of the proposed class member involving the Kansas segment are, at best, temporary regulatory takings claims. The NITU issued on June 21, 2002, did nothing more than place a regulatory hold or moratorium on the exemption proceedings in order to allow the railroad and a qualified trail sponsor to negotiate regarding railbanking and interim trail use for a limited period of time. No such agreement was reached, and the railroad proceeded to abandon the Kansas segment of its rail line after all the regulatory conditions had been met. Def. Ex. 8–11. The temporary regulatory takings claims arising out of these facts are "subject to different analyses" than the permanent physical taking claim alleged by Fauvergue, the sole representative plaintiff in this proposed class action. Accordingly, Fauvergue has not met her burden of proving that her claim is typical of the claims of the prospective Kansas class members she seeks to represent, and her motion for class certification should therefore be denied.

D. Plaintiff's Proposed Class Action is Not Superior to Other Available Methods

In order for the Court to certify a class action, it also must find that the proposed class action "is superior to other available methods for the fair and efficient adjudication of the controversy." RCFC 23(b)(2). Factors relevant to this requirement include "the interest of members of the class in individually controlling the prosecution of separate actions" and "the extent and nature of any litigation concerning the controversy already commenced by members of the class." RCFC 23(b)(2)(A)-(B).

Here, as noted above in Section III.B., there are approximately 102 plaintiffs who fall within the class proposed by Plaintiff and who have separately filed their takings claims in one of four pending lawsuits. These four actions have been consolidated, with the case of Winder v. United States serving as the lead action. An additional eight plaintiffs filed similar claims in 2005 and have since resolved those claims. The separate filing of these numerous claims, with the individual plaintiffs represented by a counsel of their choosing, demonstrates conclusively that the members of the proposed class do have an interest in individually controlling the prosecution of separate actions. The filing of these other lawsuits also demonstrates that, contrary to Plaintiff's assertion, a class action is not the only viable way for potential class members to bring their claims. Pl.'s Mem. at 19. Finally, the pendency of these claims shows that a class action is not a necessary or a superior method for the fair and efficient adjudication of takings claims arising out of the application of the Trails Act to the right-of-way in question.

For all of these reasons, Plaintiff has not met her burden of proving that her proposed class action is superior to other available methods for adjudicating the claims in question.

E. The Government Has Not Acted on Grounds Generally Applicable to the Whole Class

In addition to the prerequisites for class certification set forth in Rule 23(a), Plaintiff is required to also show that "the United States has acted or refused to act on grounds generally applicable to the class." RCFC 23(b)(1). Plaintiff asserts that this requirement is met because the STB issued a decision and NITU on June 21, 2002, that was "applicable to and had a common effect upon the entire class." Pl.'s Mem. at 18. Plaintiff's cursory analysis of this requirement ignores the rest of the regulatory history of the subject right-of-way.

As detailed above in the factual background section, although a NITU was issued for the entire 28.25-mile right-of-way, no railbanking and interim trail use agreement was reached with respect to the Kansas segment. Instead, the negotiating period authorized by the NITU expired as to that segment, and the railroad was then fully authorized to abandon its rail line along that segment of the right-of-way. The railroad requested and received an extension of time to consummate such abandonment, and subsequently notified the STB that it had consummated its abandonment of the Kansas segment of its rail line as of October 31, 2003.

As explained above, the effect of the NITU on the Kansas segment is thus different than the effect on the Missouri segment. For the Kansas segment, the NITU operated to stay the railroad's authorization to abandon for a set period of time to allow for negotiations regarding railbanking and interim trail use. When that negotiation period ended, the railroad was fully authorized to abandon its rail line, subject to its satisfaction of the other conditions imposed upon such abandonment by the STB's orders. The question of whether this temporary regulatory delay operates to burden or defeat the property interests of the proposed class members in Kansas in a manner that results in a taking is distinct from the question of whether the NITU and resulting railbanking and trail use agreement constitute a permanent physical taking of the property interests of Fauvergue and the proposed class members in Missouri. See Caldwell, 391 F.3d at 1234.

Accordingly, Plaintiff has not met her burden of showing that the government has acted on grounds common to the entire class that she seeks to have certified. This provides yet another basis for the denial of Plaintiff's motion.

F. The Proposed Class Members Are Adequately Representing Their Interests in Other Cases and Are Represented Therein By Other Counsel

To meet the fourth requirement of Rule 23(a), Plaintiff Fauvergue must establish that she "will fairly and adequately protect the interests of the class." RCFC 23(a)(4). This requirement is met when the proposed class counsel is found to be "qualified, experienced and generally able to conduct the litigation," and there is no conflict of interest between the named representative plaintiff and the class member that she seeks to represent. Barnes, 68 Fed. Cl. at 499 (citations omitted); see also Curry, 81 Fed. Cl. at 336 (same). As detailed above, Fauvergue has filed a permanent physical takings claim that is factually and legally distinct from any temporary claims that could be pursued by the Kansas landowners that she seeks to represent, a situation that is bound to result in some conflicts of interest. In addition, although Plaintiff has addressed the qualifications of her counsel in her brief, Pl.'s Mem. at 20-21, the 102 plaintiffs who have filed their claims separate from this proposed class action have chosen to be represented by other counsel, and should not be divested of that choice by Plaintiff's request that her counsel be designated as class counsel under RCFC 23(g).

G. The Court Should Not Allow Litigants to Evade the Statute of Limitations by Seeking Certification of a Class That Plainly Does Not Meet the Established Requirements

Plaintiff also advocates in favor of class certification on the ground that it "would serve to eliminate any potential problems raised by the impeding statute of limitations." Pl.'s Mem. at 8. Plaintiff correctly notes in this respect that under the Federal Circuit's rulings on claim accrual, the takings claims involving the subject right-of-way accrued on June 21, 2002, when the NITU was issued. Id. Accordingly, any takings claims arising out of the application of the Trails Act to this right-of-way had to be filed within 6 years of that date, or by June 21, 2008. Here,

Plaintiff filed her class action complaint on June 12, 2008, just 9 days before the six-year limitations period was set to expire, and filed her motion for class certification on June 18, 2008. Plaintiff explains that she is seeking class certification "to ensure that any interested parties with claims for compensation in either Kansas or Missouri are eligible to receive 'just compensation' for the federal government's taking of their land." Pl.'s Mem. at 8. Class certification is not necessary to ensure that landowners can bring and adjudicate their claims.

The record reflects that the proceedings involving the Trails Act were well known to the landowners in both Missouri and Kansas. As noted above, over 100 landowners in Missouri filed their takings claims in the four lawsuits identified above prior to the running of the statute of limitations. The filing of these claims shows that there have been no impediments to pursuing claims involving the subject right-of-way. In other words, this case does not present a situation in which the individual claimant "may well be unable to vindicate their rights" without a class action. Barnes, 68 Fed. Cl. at 500.

Although no takings claims have been filed by the landowners along the Kansas segment of the subject right-of-way, the record shows that such landowners were well aware of the exemption proceedings before the STB, including the negotiations taking place under the NITU, and actively participated in those proceedings. Specifically, on December 10, 2002, the Cherokee County, Kansas Landowner's Association filed a letter with the STB stating its objections to any interim trail use of the segment of the right-of-way located in Kansas. Def. Ex. 6. The letter states that the Association is "composed of over sixty individuals owning property adjacent to the [BNSF] railroad right-of-way" at issue in this case. Id. The NITU negotiating period for the Kansas segment of the right-of-way subsequently expired and BNSF consummated

its authorization to abandon this segment of its rail line on October 31, 2003. Def. Ex. 10–11. These landowners had over 4 ½ years following the railroad's abandonment of its line to pursue a takings claim based on these events. There is no need to certify a class action filed by a single Plaintiff who owns no property in Kansas in order to protect the rights of these landowners.[11]

H. The Certification of Class Actions in Other Factually and Legally Distinguishable Cases Does Not Support Certification in this Case

As additional support for its motion for class certification, Plaintiff notes that class actions have been certified in other rails-to-trails takings cases. Pl.'s Mem. at 21, 24. However, the assessment of the requirements for class certification is necessarily fact specific. The certified class actions Plaintiff cites to included claims of between 100 and 330 landowners. Here, the number of potential class members if far smaller than that. Moreover, none of the class actions cited by Plaintiff involve the precise factual situation here, where a portion of the right-of-way was not railbanked, the rail line was abandoned by the railroad, and the disposition of lands within or subject to that right-of-way is now a matter of Kansas state law, unaffected by the Trails Act. Thus, this case is distinguishable on a number of grounds and the mere fact that class actions have been certified in other actions brought pursuant to the Trails Act does not compel or even support the same result here.

[11]Defendant notes that this case does not involve a situation such as that described in Moore, 41 Fed. Cl. 394. There, the named plaintiffs filed a class action on the day that the six-year statute of limitations would have run after learning, just days before the statute of limitations was set to expire, that the Mountain States Legal Foundation would not be able to bring class action claims on their behalf in other pending suit. 41 Fed. Cl. at 400. The court noted that a denial of class certification would forever barr the claims of the potential class members, and stated that "[a]lthough this is not sufficient in itself to permit a class action, it weighs in plaintiffs' favor, especially because there are no counter-balancing equitable factors." Id.

## IV. CONCLUSION

For the reasons set forth in this opposition brief, Plaintiff Earleen Fauvergue has not met her burden of proving that the multiple prerequisites and other requirements are satisfied in this case. Accordingly, Defendant respectfully requests that the Court deny her motion for class certification.

Dated: August 21, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

s/ Kristine S. Tardiff
KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
E-MAIL: kristine.tardiff@usdoj.gov

ELIZABETH NICHOLAS
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
601 D Street, N.W., 3rd Flr., Room 3529
Washington, DC 20004
TEL: (202) 305-0436
FAX: (202) 305-0506
E-MAIL: elizabeth.nicholas@usdoj.gov

Of Counsel:
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
395 E Street, SW
Washington, DC 20024