IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EARLEEN FAUVERGUE | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 08-431 |
| v. | ) | |
| | ) | Sr. Judge Loren A. Smith |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S APPENDIX OF EXHIBITS IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
TEL: (603) 230-2583
FAX: (603) 225-1577
E-MAIL: kristine.tardiff@usdoj.gov

ELIZABETH NICHOLAS
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
601 D Street, N.W., 3rd Flr., Room 3529
Washington, DC 20004
TEL: (202) 305-0436
FAX: (202) 305-0506
E-MAIL: elizabeth.nicholas@usdoj.gov

Electronically filed on August 21, 2008

# INDEX TO EXHIBITS IN DEFENDANT'S APPENDIX

(ALL DOCUMENTS FILED WITH THE STB IN DOCKET No. AB-6 (Sub-No. 395X))

| Exhibit No. | Description |
|---|---|
| 1 | Comments from the City of Carl Junction and the Joplin Trail Coalition, Request for an Order and Notice of Interim Trail Use ("NITU") (Missouri segment), filed on May 10, 2002). |
| 2 | Letter from Burlington Northern and Santa Fe Railway Company ("BNSF") to the Surface Transportation Board ("STB"), stating that BNSF does not object to the issuance of a NITU, filed May 16, 2002. |
| 3 | Joplin Trail Coalition Statement requesting issuance of a NITU (Kansas segment), filed May 20, 2002. |
| 4 | Letter from BNSF to the STB, stating that BNSF does not object to the issuance of a NITU, filed on June 12, 2002. |
| 5 | Letter from BNSF to the STB, requesting a 180-day extension of the NITU, filed on November 22, 2002. |
| 6 | Letter from the Cherokee County, Kansas Landowner's Association (CCKLA) to the STB stating objections to interim trail use for the Kansas segment, filed Dec. 10, 2002. |
| 7 | Letter from BNSF to the STB responding to letter filed by the CCKLA, filed December 19, 2002. |
| 8 | Letter from BNSF to the STB, requesting extension of deadline to consummate abandonment of its rail line, filed April 16, 2003. |
| 9 | STB Decision, issued May 14, 2003 |
| 10 | Letter from BNSF to the STB, re: Interim Trail Use Railbanking Agreement for the Missouri properties, filed October 21, 2003. |
| 11 | Letter from BNSF to the STB, re: consummation of abandonment of the Kansas segment, filed February 4, 2004. |

BEFORE THE SURFACE TRANSPORTATION BOARD

RECEIVED
MAY 10 2002
MAIL MANAGEMENT
STB

Burlington Northern and Santa Fe Railway Co. -- Columbus, KS to Carthage, MO ) AB-6 (Sub-no. 395X)

205380

To: STB Secretary
Re: filing and <u>fee waiver request for one party</u>

Enclosed please find the original and ten copies of a "statement of willingness invoking 16 U.S.C. § 1247(d) and 49 C.F.R. § 1152.29 in connection with this proceeding for both Joplin Trail Coalition (JTC) and City of Carl Junction. Also enclosed please find a check in the amount of $150 for the filing fee on behalf of JTC.

Since Carl Junction is a local government entity, Carl Junction seeks waiver of any filing fee for railbanking pursuant to 49 C.F.R. § 1002.2(e)(2).

DID# 20194300

Comments on behalf of
City of Carl Junction
and
<u>Joplin Trail Coalition</u>

These comments are on behalf of City of Carl Junction (Carl Junction), a municipality located on the line at issue in this proceeding, and the Joplin Trail Coalition (JTC), a non-profit in the State of Missouri.

The entire line at issue in this proceeding is suitable for trail and other compatible public uses, including railbanking. Both Carl Junction and JTC supply herewith originals and ten copies of "statements of willingness" pursuant to 49 C.F.R. § 1152.29, invoking the relief provided in 16 U.S.C. § 1247(d) and this Board's regulations (interim trail use/railbanking) in connection with the Missouri portion of the rail corridor (MP 331.23 at State line to MP 315.30 near Carthage).

<u>Public use condition</u>. Carl Junction and JTC also request the imposition of a public use condition pursuant to 49 C.F.R. §



ENTERED
Office of the Secretary
MAY 13 2002
Part of
Public Record

FEE RECEIVED
MAY 10 2002
SURFACE

FILED
MAY 10 2002

1152.28 and 49 U.S.C. § 10905.

Condition sought: an order barring disposition of rail bridges, trestles, culverts or roadbed materials, other than for public use as a trail or other compatible purposes, for the entire Missouri portion of this corridor, namely MP 331.23 to MP 315.30.

Public importance: the line at issue in this proceeding would make an excellent trail and greenway, inasmuch as it would provide a safe, off-road bicycle commuting and recreational route connecting Carl Junction with Carthage. The extension into Kansas would interconnect with Columbus, serving similar purposes.

Duration: 180 days.

Rationale: Carl Junction and JTC seek to negotiate to acquire all BNSF's interests in the Missouri portion of the corridor pursuant to the federal railbanking statute for interim trail and railbanking purposes. A public use condition barring removal of structures useful for trail purposes is typically granted in such cases. Based on past experience, a period of at least 180 days is required to complete negotiations. In addition, Carl Junction and JTC are advised that a local shortline may be interested in some of the line at the Carthage end for storage (not for actual service to customers). While Carl Junction and JTC are fully prepared to work out joint use (and this may best be accomplished in the circumstances if the entire corridor in Missouri is railbanked), this necessarily will require additional negotiations. Based on conversations with BNSF, counsel for Carl Junction and JTC does not understand anything sought herein to be

contrary to any plans, purposes, or interests of BNSF. Jasper County has already expressed support for public acquisition during the environmental process of this proceeding.

Conclusion

For the reasons stated herein, Carl Junction and JTC request this Board to enter an order applying the federal railbanking statute (16 U.S.C. § 1247(d)) to the Missouri portion of this corridor, namely, MP 331.23 to MP 315.30. Carl Junction and JTC also seek a public use condition as to that portion of the corridor. Carl Junction and JTC support similar relief as to the Kansas portion should any other party (presumably from Kansas) request same.

Respectfully submitted,

Charles H. Montange
426 NW 162d St.
Seattle, WA 98177
(206) 546-1936
fax: -3739
for Carl Junction and Joplin
Trail Coalition

Encls. (one check, two statements of willingness)

cc. Carl Junction
Joplin Trail Coalition

Certificate of Service

I hereby certify service of the foregoing by US Mail, postage pre-paid, first class, this 9th day of May, 2002, upon Brian Nettles, Freeborn & Peters, 311 South Wacker Drive, Suite 3000, Chicago, IL 60606-6677 (fax: 312-360-6596) and Rich Batie, BNSF, 2600 Lou Menk Drive, 2d Floor, Fort Worth, TX 76131 (fax: 817-352-7938).

BEFORE THE SURFACE TRANSPORTATION BOARD

RECEIVED
MAY 10 2002
MAIL MANAGEMENT
STB

| | | |
|---|---|---|
| Burlington Northern and Santa Fee Railway Co., -- Columbus, KS to Carthage, MO | ) ) ) | AB-6 (sub-no. 395X) |

Statement of Willingness to Assume
Financial Responsibility

In order to establish interim trail use and rail banking under 16 U.S.C. 1247 (d) and 49 CFR 1152.29, the Carl Junction (Missouri) ( "City" or "Interim Trail User"), is willing to assume full responsibility for management of, for any legal liability arising out of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against the right-of-way owned and operated by Burlington Northern and Santa Fe Railway Company, (Railroad) with respect to that portion of the right-of-way in Jasper County, Missouri. The property extends from MP 331.23 at the State Line (border of Cherokee County, KS and Jasper County, MO) to MP 315.30 near Carthage, Missouri, a distance of approximately 15.93 miles in Jasper County, Missouri. [1] The right of way is part of a line proposed for abandonment in Docket AB-6 (Sub-no. 395X)

A map depicting the property is attached.

City acknowledges that use of the right-of-way is subject to the user's continuing to meet its responsibilities described above and subject to possible future reconstruction and reactivation of the right-of-way for rail service. A copy of this statement is being served on the railroad on the same date it is being served on the Board.

City of Carl Junction

by: Jim Wisdom
title: Mayor
City of Carl Junction
PO Box 447
Carl Junction, MO 64834
Tel: 417-649-7237

[1] The Jasper County segment is a portion of a larger line described as MP 343.55 at Columbus, KS to MP 315.30 near Carthage, MO, a distance of 28.25 miles in Cherokee County, KS and Jasper County, MO.


COLUMBUS, KS – CARTHAGE, MO
COLUMBUS
MILEPOST 343.55
MILITARY
State Line
Milepost 331.23
CARL JUNCTION
CARTHAGE
MILEPOST 315.30
NORTH

BEFORE THE SURFACE TRANSPORTATION BOARD

RECEIVED
MAY 10 2002
MAIL MANAGEMENT
STB

Burlington Northern and Santa Fe )
Railway Co. -- Columbus, KS to ) AB-6 (Sub-no. 395X)
Carthage, MO )

Statement of Willingness to Assume
Financial Responsibility

In order to establish interim trail use and rail banking under 16 U.S.C. 1247(d) and 49 CFR 1152.29, the Joplin Trail Coalition ("Coalition" or "Interim Trail User"), is willing to assume full responsibility for management of, for any legal liability arising out of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against the right-of-way owned and operated by Burlington Northern and Santa Fe Railway Company (Railroad) with respect to that portion of the right-of-way in Jasper County, Missouri. The property extends from MP 331.23 at the State Line (border of Cherokee County, KS and Jasper County, MO) to MP 315.30 near Carthage, Missouri, a distance of approximately 15.93 miles in Jasper County, Missouri.[1] The right of way is part of a line proposed for abandonment in Docket AB-6 (Sub-no. 395X).

A map depicting the property is attached.

Coalition acknowledges that use of the right-of-way is subject to the user's continuing to meet its responsibilities described above and subject to possible future reconstruction and reactivation of the right-of-way for rail service. A copy of this statement is being served on the railroad on the same date it is being served on the Board.

Joplin Trail Coalition

Paul Teverow
by: Paul Teverow
title: President,
Joplin Trail Coalition
P.O. Box 2102
Joplin, MO 64803
tel: 417-625-3114

---

[1] The Jasper County segment is a portion of a larger line described as MP 343.55 at Columbus, KS to MP 315.30 near Carthage, MO, a distance of 28.25 miles in Cherokee County, KS and Jasper County, MO.



TRANSPORTATION BOARD




Fauvergue v. US
No. 08-431L (Fed. Cl.)
Def.'s Opp. to Class Cert.
Defendant's Exhibit 1

BNSF

SARAH WHITLEY BAILIFF
*Senior General Attorney*

The Burlington Northern and Santa Fe Railway Company

2500 Lou Menk Drive, 3rd Floor
P.O. Box 961039
Fort Worth, Texas 76161-0039
(817) 352-2354 - Telephone
(817) 352-2397 – Fax
Sarah.Bailiff@BNSF.com

205408

RECEIVED MAY 16 2002 MAIL MANAGEMENT STB

**VIA UPS OVERNIGHT MAIL**

May 15, 2002

ENTERED
Office of the Secretary

MAY 17 2002

Part of
Public Record

Mr. Vernon A. Williams
Secretary
Surface Transportation Board
1925 K Street, N.W.
Washington, DC 20423-0001

**Re: Surface Transportation Board Docket No. AB-6 (Sub-No. 395X); The Burlington Northern and Santa Fe Railway Company (BNSF) Abandonment between Columbus, Kansas and Carthage, Missouri**

Dear Secretary Williams:

In reply to the comments filed on behalf of the City of Carl Junction and Joplin Trail Coalition dated May 9, 2002 regarding the above-referenced docket, BNSF does not object to the issuance of a Notice of Interim Trails Use.

Sincerely,

Sarah Whitley Bailiff

SWB/js

cc: Charles Montange (Carl Junction/Joplin Trail Coalition)
Richard Batie
Brian Nettles

Fauvergue v. US
No. 08-431L (Fed. Cl.)
Def.'s Opp. to Class Cert.
Defendant's Exhibit 2

205420 DID# 01019149002

RECEIVED MAY 20 2002 MAIL MANAGEMENT STB

BEFORE THE SURFACE TRANSPORTATION BOARD

Burlington Northern and Santa Fe Railway Co. -- Columbus, KS to Carthage, MO ) AB-6 (Sub-no. 395X)

Statement of Good Cause on behalf of
Joplin Trail Coalition

Joplin Trail Coalition (JTC) makes this Statement of Good Cause, pursuant to 49 C.F.R. § 1152.29(b)(3), in connection with the "statement of willingness" tendered herewith applicable to the Kansas portion of the line at issue in this proceeding. JTC, along with City of Carl Junction, had previously and timely filed a "statement of willingness" in connection with the Missouri portion of the line. Good cause exists for filing the accompanying statement of willingness for the reasons stated herein.

JTC recognizes that the entire rail line from Columbus, KS, to Carthage, MO, would make an excellent recreational and commuting trail facility, as well as constitute a valuable railbanking asset. However, before initiating the railbanking process with respect to the Kansas portion, JTC wished to ascertain if there would be sufficient local support. In cooperation with Ozark Regional Land Trust, JTC undertook to examine support in Cherokee County, KS, and now believes sufficient support exists to incorporate the Kansas portion of this line into negotiations under 16 U.S.C. § 1247(d) with Burlington Northern and Santa Fe (BNSF).

Through counsel, JTC had previously advised BNSF (Mr. Batie)

FEE RECEIVED MAY 20 2002 SURFACE

ENTERED Office of the Secretary MAY 20 2002 Part of Public Record



FILED MAY 20 2002

Fauvergue v. US
No. 08-431L (Fed. Cl.)
Def.'s Opp. to Class Cert.
Defendant's Exhibit 3
Page 1 of 4

that JTC was examining support and might well file an additional "statement of willingness" encompassing the Kansas portion of the line. JTC understands that BNSF will support issuance of a NITU for the entire line in the circumstances.

The time period for filing a "statement of willingness" is very abbreviated in § 1152.50 proceedings such as this. Any delay in meeting the ten day time window here was in the nature of undertaking a reasonable "due diligence" investigation. This delay was ameliorated to the extent possible by prior notice to BNSF that a "statement" might be filed for the Kansas portion of the line as well. Accordingly, good cause exists to accept for filing the otherwise late-filed "statement of willingness" for the Kansas portion of the line at issue, and JTC requests that its additional statement of willingness be filed.

Respectfully submitted,

Charles H. Montange
426 NW 162d St.
Seattle, WA 98177
(206) 546-1936
fax: -3739
for Joplin Trail Coalition

Encls. (additional check, statement of willingness)

cc. Joplin Trail Coalition

Certificate of Service

I hereby certify service of the foregoing by US Mail, postage pre-paid, first class, this 17th day of May, 2002, upon Brian Nettles, Freeborn & Peters, 311 South Wacker Drive, Suite 3000, Chicago, IL 60606-6677 (fax: 312-360-6596) and Rich Batie, BNSF, 2600 Lou Menk Drive, 2d Floor, Fort Worth, TX 76131 (fax: 817-352-7938).

BEFORE THE SURFACE TRANSPORTATION BOARD

RECEIVED
MAY 20 2002
MAIL MANAGEMENT
STB

| | | |
|---|---|---|
| Burlington Northern and Santa Fe Railway Co. Columbus, KS to Carthage, MO | ) ) ) | AB-6 (Sub-no. 395X) |

Statement of Willingness to Assume
Financial Responsibility

In order to establish interim trail use and rail banking under 16 U.S.C. 1247 (d) and 49 CFR 1152.29, the Joplin Trail Coalition ("Coalition" or "interim Trail User"), is willing to assume full responsibility for management of, for any legal liability arising out of (unless the user is immune from liability, in which case, it need only indemnify the railroad all taxes that may be levied or assessed against the right-of-way owned and operated by Burlington Northern and Santa Fe Railway Company (Railroad) with respect to that portion of the right-of-way in Cherokee County, Kansas. The property extends from MP343.55 at Columbus, KS to MP 331.23 at the State Line (border of Cherokee County, KS and Jasper County, MO) a distance of 12.32 miles in Cherokee County, KS[1]. The right of way is part of a line proposed for abandonment in Docket AB-6 (Sub-no. 395X).

A map depicting the property is attached.

Coalition acknowledges that use of the right-of-way is subject to the user's continuing to meet its responsibilities described above and subject to possible future reconstruction and reactivation of the right-of-way for rail service. A copy of this statement is being served on the railroad on the same date it is being served on the railroad on the same date it is being served on the Board.

Joplin Trail Coalition
Paul Teverow
by: Paul Teverow
title: President,
Joplin Trail Coalition
P.O. Box 2102
Joplin, MO 64803
Tel: 417-625-3114

[1] The Cherokee County segment is a portion of a larger line described as MP 343.55 at Columbus, KS to MP 315.30 near Carthage, MO, a distance of 28.25 miles in Cherokee County, KS and Jasper County, MO.


COLUMBUS, KS – CARTHAGE, MO
COLUMBUS
MILEPOST 343.55
State Line
Milepost 331.23
MILITARY
CARL JUNCTION
CARTHAGE
MILEPOST 315.30
NORTH

205600

BNSF

Burlington Northern Santa Fe Railway

SARAH WHITLEY BAILIFF
*Senior General Attorney*

**The Burlington Northern and Santa Fe Railway Company**

2500 Lou Menk Drive, 3rd Floor
P.O. Box 961039
Fort Worth, Texas 76161-0039
(817) 352-2354 - Telephone
(817) 352-2397 – Fax
Sarah.Bailiff@BNSF.com

RECEIVED JUN 12 2002 MAIL MANAGEMENT STB

**VIA UPS OVERNIGHT MAIL**

June 11, 2002

ENTERED
Office of the Secretary
JUN 13 2002
Part of
Public Record

Mr. Vernon A. Williams
Secretary
Surface Transportation Board
1925 K Street, N.W.
Washington, DC 20423-0001

Re: **Surface Transportation Board Docket No. AB-6 (Sub-No. 395X); The Burlington Northern and Santa Fe Railway Company (BNSF) Abandonment between Columbus, Kansas and Carthage, Missouri**

Dear Secretary Williams:

In reply to the comments filed on behalf of the Joplin Trail Coalition dated May 17, 2002 regarding the above-referenced docket, BNSF does not object to the issuance of a Notice of Interim Trails Use.

Sincerely,

SW Bailiff

Sarah Whitley Bailiff

SWB/js

cc: Charles Montange (Joplin Trail Coalition)
Richard Batie
Brian Nettles

Fauvergue v. US
No. 08-431L (Fed. Cl.)
Def.'s Opp. to Class Cert.
Defendant's Exhibit 4

206699

**BNSF**

SARAH WHITLEY BAILIFF
*Senior General Attorney*

**The Burlington Northern and Santa Fe Railway Company**

2500 Lou Menk Drive, 3rd Floor
P.O. Box 961039
Fort Worth, Texas 76161-0039
(817) 352-2354 - Telephone
(817) 352-2397 – Fax
Sarah.Bailiff@BNSF.com

**VIA UPS OVERNIGHT MAIL**

November 21, 2002

ENTERED
Office of Proceedings
NOV 22 2002
Part of
Public Record

RECEIVED
NOV 22 2002
MAIL
MANAGEMENT
STB

Mr. Vernon A. Williams
Secretary
Surface Transportation Board
1925 K Street, N.W.
Washington, DC 20423-0001

**Re: Surface Transportation Board Docket No. AB-6 (Sub-No. 395X); The Burlington Northern and Santa Fe Railway Company (BNSF) Abandonment between Columbus, Kansas and Carthage, Missouri**

Dear Secretary Williams:

Please reference a Board decision served on June 21, 2002, in the above-referenced docket. A notice of interim trail use ("NITU") and a public use condition (until December 19, 2002) were issued to enable any state or local government agency, or other interested person to negotiate the acquisition of the line. BNSF is in negotiations with a trail organization at this time and has determined that we will need additional time to finalize a potential trail transaction. Therefore, BNSF respectfully requests an extension of the NITU for an additional 180 day period (through June 17, 2003).

Sincerely,

Sarah Whitley Bailiff /js

Sarah Whitley Bailiff

SWB/js

cc: Charles Montange (Joplin Trail Coalition)
Richard Batie

Fauvergue v. US
No. 08-431L (Fed. Cl.)
Def.'s Opp. to Class Cert.
Defendant's Exhibit 5

206801

ENTERED
Office of Proceedings
DEC 10 2002
Part of
Public Record

RECEIVED
DEC 10 2002
MAIL
MANAGEMENT
STB

December 6, 2002

U.S. Surface Transportation Board
Attn: Mr. David M. Konschnik, Director
1925 K Street NW
Washington, DC 20006-1105

RE: STB Docket No. AB-6 (Sub. No. 395X)

Dear Mr. Konschnik and Surface Transportation Board Members:

We represent the Cherokee County, Kansas Landowner's Association composed of over sixty individuals owning property adjacent to the Burlington Northern Santa Fe railroad right-of-way being considered in the aforementioned decision entered June 21, 2002, by your Board. We write to you today to express what we consider to be three compelling reasons why the right-of-way in question should be allowed to revert to the adjacent landowners rather than be approved for interim trail use.

First, recreational trails have not been successful in our region of the state. Although trail use is promoted as an attractive addition to a community for economic development and/or tourism purposes, the reality for southeastern Kansas landowners has been quite different from the statements put forth by trail supporters. After discussing this issue with several landowners in other southeast Kansas counties who currently own property adjacent to right-of-ways having interim trail use, all reported identical results. Namely, that trail groups lack the significant amount of funding, manpower, and quite frankly, motivation, required to develop and properly maintain the trails they control. Common problems these landowners encounter with recreational trails include:

1. **Inadequate or No Police Protection by the Trail Group**. Kansas landowners report that recreational trails become popular spots for assaults, methamphetamine manufacturing, loitering, underage drinking, parties, etc.
2. **Increased Liability Risks for Adjacent Landowners.** Landowners have found themselves exposed to the liability risks that arise when trespassing trail users interact with livestock, farm ponds, farm machinery, recently applied herbicides/insecticides, fencing, open pits, etc.
3. **Littering and Vandalism.** Adjacent landowners and local government must contend with the property damage to fences, equipment, and buildings, as well as the mess made by trail users.
4. **Poaching.** Landowners often report fences being cut to allow access by poachers to illegally killed game.
5. **Bisection of Property.** Many railroads bisect property owned by the same individual. If easements are allowed to revert, landowners may once again enjoy a contiguous parcel of land and avoid the added expense of maintaining unneeded fences adjacent to the right-of-way.
6. **Removal from Tax Rolls.** Most trail groups claim exemption from property taxes as a not-for-profit group.
7. **Failure to Develop or Maintain the Trail.** The most common response from landowners adjacent to current recreational trails is that the trails were never developed, are overgrown with noxious weeds and trees, and have unfortunately become nothing more than an eyesore for the community.

Second, the Joplin Trails Coalition (the group petitioning for interim trail use) lacks the financial and human resources that will be required to: (1) develop the trail to useable status, (2) comply with Kansas

state law regarding interim trail use, and (3) comply with Cherokee County Kansas bonding requirements for recreational trails.

The railroad right-of-way in question will require an enormous amount of funding to maintain between Columbus, Kansas and the Missouri state line. The right-of-way has already overgrown with weeds and contains approximately twelve miles of surface that will require maintenance as well as eight bridges, one of which spans a major river. When asked by our Association how the trail was to be funded and physically developed, Paul Teverow of the Joplin Trails Coalition replied that "donations" and "volunteer labor" would be utilized. Given estimates that trails require over $100,000 per mile to develop initially and that the Joplin Trails Coalition will potentially be responsible for an additional 18 miles in Missouri, we have no reservations in stating that Mr. Teverow has little chance of accumulating the resources needed to make the trail usable within Kansas.

The Kansas legislature has also acknowledged the problems that inadequately financed and maintained recreational trails have created for both adjacent landowners and local governments by passing the Kansas Recreational Trails Act of 1996 (K.S.A. 58-3211 to 58-3216), a copy of which has been provided for your review. Some of the many obligations the Act imposes upon any "responsible party" include the duty to perform the following:

- Weed control along the trail
- Litter control along the trail
- Installation and maintenance of all signs along the trail
- Installation and maintenance of all livestock fencing along the trail
- Provide for law enforcement along the trail
- Grant easements to adjacent landowners to cross the trail for agricultural purposes
- Prohibit hunting and trapping along the trail
- Maintain all trail surfaces and structures such as bridges, culverts, intersections and crossings on the trail
- Provide proof of liability insurance (if not a governmental entity)
- Provide a detailed use plan of the proposed trail to the County Commissioners within 180 days of the interim use permission grant date
- Notify all adjacent landowners of intent to build trail adjacent to their property

In addition to the aforementioned requirements, the Act grants the governing body of any city or county through which a recreational trail passes the right to require the responsible party to post an annual bond in an amount sufficient to meet the obligations imposed by the Act.

It should be further noted that after hearing the concerns of our Association, the Board of Commissioners for Cherokee County, Kansas voted **unanimously** on September 30, 2002, to **oppose** the approval of interim trail use for the railroad right-of-way in question and require that any trail group granted interim trail within the county use post an annual bond in the amount of $10,000 per mile, or $120,000 total for the particular right-of-way in question between Columbus, Kansas and the Missouri state line (mileposts 343.55 and 331.23, respectively). A copy of this ordinance is also provided for your review.

As with the practical aspect of funding and constructing the initial trail infrastructure, our Association has legitimate reservations about the Joplin Trails Coalition's ability to meet the financial requirements that will be expected of them by both Kansas state law and Cherokee County, Kansas.

Finally, and most importantly, interim trail use should not be granted for the right-of-way in question simply because: (1) the individuals in our community who are opposed to the trail, whether they be

landowners or not, far exceeds those who favor it, and (2) the Joplin Trails Coalition has indicated that they are no longer interested in pursing interim trail use within Kansas due to the financial and legal burdens that Kansas law and Cherokee County, Kansas will impose upon them. Instead the Joplin Trails Coalition has stated that they will only pursue interim trail use for that portion of the right-of-way lying within Missouri (milepost 331.23 to 315.30).

We sincerely hope this correspondence has helped better inform you of our position regarding this very important issue. It is our hope that after examining the facts surrounding interim trail use in Cherokee County, Kansas that you will agree with our sincere opinion that the best course of action is for this railroad right-of-way to be allowed to revert to the adjacent landowners who have the expertise, financial ability, and desire to manage the right-of-way property to its highest and best use.

Thank you for your time and consideration of our remarks. If we can be of further assistance in clarifying any of the information presented above or in providing additional facts, please do not hesitate to contact either of us via the contact information enclosed.

Respectfully,

Nancy R. Evans

Nancy Evans, Secretary/Treasurer
Cherokee County Landowners Association

John R. Gaither

John R. Gaither, Member
Cherokee County Landowners Association

Enclosures
Cc: Burlington Northern Santa Fe Railroad

**Cherokee County Landowner's Association**
**Contact Information**

**Mrs. Nancy Evans**
**Secretary/Treasurer**
**943 SE 30th Street**
**Columbus, Kansas 66725**
**Ph: (620) 674-3257**

**Mr. John R. Gaither**
**Association Member**
**517 S. High School Street**
**Columbus, KS 66725**
**Ph: (620) 429-2828**
**Fax: (620) 429-2044**

# Kansas Recreational Trails Act

Kansas Statutes Annotated (1996 Supp.) 58-3211 through 58-3216

RECREATIONAL TRAILS

**58-3211. Definitions.** As used in this act:

(a) "Adjacent property owner" means a person or entity, other than a responsible party, who owns property or facilities on or adjacent to a recreational trail.

(b) "Recreational trail" means a trail created pursuant to subsection (d) of 16 U.S.C. 1247 (1983).

(c) "Responsible party" means any person, for-profit entity, not-for-profit entity or governmental entity that is responsible for developing, operating or maintaining a recreational trail.

**History:** L. 1996, ch. 223, § 1; July 1.

**58-3212. Duties of responsible party.** (a) The responsible party, at all times after transfer of the deed to the responsible party, shall:

(1) Perform the duties imposed by K.S.A. 2-1314 and amendments thereto along the recreational trail;

(2) provide for the safety, use and accessibility of existing easements, utility facilities and access licenses along the recreational trail;

(3) provide for trail-user education and signs regarding trespassing laws and safety along the recreational trail;

(4) provide for litter control and the enforcement of laws prohibiting littering along the recreational trail, including but not limited to trail-user education and signs about laws prohibiting littering and the provision of trash receptacles and the cleanup of trash and litter;

(5) develop and maintain the recreational trail in a condition that does not create a fire hazard;

(6) designate the recreational trail for non-motorized vehicle use with exceptions only for motorized wheelchairs and maintenance, law enforcement and emergency vehicles;

(7) prohibit hunting or trapping on or from the recreational trail;

(8) provide for law enforcement along the recreational trail;

(9) grant easements to adjacent property owners to permit such owners to cross the recreational trail in a reasonable manner consistent with the use of the adjacent property and with K.S.A. 66-301 through 66-303, and amendments thereto;

(10) (A) maintain any existing fencing between the trail and adjacent property; (B) maintain any future fencing installed between the trail and adjacent property; (C) install between the trail and adjacent property fencing corresponding in class to that maintained on the remaining sides of such adjacent property; and (D) on request of an adjacent property owner, pay one-half the cost of installing fencing between the trail and such property owner's adjacent property with a fence of the class requested by such property owner, if not all remaining sides of such property are fenced; and

(11) (A) maintain the trail; (B) maintain all bridges, culverts, roadway intersections and crossings on the trail, essential to the reasonable and prudent operation of the trail or needed for drainage, flood control or the use of easements for crossing the trail between adjacent properties, or cause maintenance thereof by other parties that have assumed contractual responsibility therefor; and (C) install and maintain any warranted traffic signs on the trail.

(b) If the responsible party is not a governmental entity, the responsible party shall file with the county clerk of each county where a portion of the recreational trail is or will be located a bond or proof of an escrow account in a Kansas financial institution, as defined by K.S.A. 16-117 and amendments thereto, payable to the county. The bond or proof of an escrow account shall be filed at the time of transfer of the deed to the responsible party and annually thereafter. The bond or escrow account shall be conditioned on the responsible party's performance, and shall be in an amount agreed upon between the responsible party and the county commission as sufficient to fully cover the annual costs, of:

(1) Weed control along the trail, as required by subsection (a)(1);

(2) litter control along the trail, as required by subsection (a)(4);

(3) maintenance of the trail in a condition that does not create a fire hazard, as required by subsection (a)(5);

(4) installation and maintenance of fencing between the trail and adjacent property within the county, as required by subsection (a)(10); and

(5) installation and maintenance of signs along the trail, as required by subsections (a)(3), (a)(4) and (a)(11)(C).

If separate bonds are submitted to or escrow accounts established for the various counties through which the trail transverses, the annual costs listed above shall be only for that portion of the trail located within the particular county that is the holder of the bond or beneficiary of the escrow. A responsible party may submit a single bond or escrow account with multiple counties respectively as coobligees or cobeneficiaries, but in

that event the annual costs used in computation of the bond amount shall be for the entire trail length.

(c) If the responsible party is not a governmental entity, the responsible party shall file with the county clerk of each county where a portion of the recreational trail is or will be located, proof of liability insurance in an amount agreed upon between the responsible party and the county commission as sufficient. Such proof shall be filed at the time of transfer of the deed to the responsible party and annually thereafter.

(d) The provisions of this section shall apply to all recreational trails, regardless of when approval to enter into negotiations for interim trail use is or was received from the appropriate federal agency.

(e) The provisions of this section may be modified or supplemented by any city governing body for recreational trails within the corporate limits of such city in the manner provided by K.S.A. 12-137 *et seq.* and amendments thereto. If a city governing body adopts requirements in addition to those provided by this section, the city shall pay all costs of compliance with such additional requirements.

**History:** L. 1996, ch. 223, § 2; July 1.

**58-3213. Procedures for development.** (a) Upon receipt of permission from the appropriate federal agency to enter into negotiations for interim trail use, the responsible party shall give written notice to each adjacent property owner that the responsible party intends to build a recreational trail adjacent to the property owner's property. The responsible party may utilize the addresses to which real estate tax statements are sent, as maintained by county officials, for such notices. Such notice shall be given by first-class mail unless the notice is returned undelivered, in which case a further notice shall be given by certified mail. Further notice shall be published once each week for three consecutive weeks in the official newspaper of the county in which such trail is proposed to be located.

(b) Before commencing development or operation of a recreational trail, the responsible party shall:

(1) Prepare a project plan that includes: (A) The name and address of the responsible party, (B) an itemized estimate of the costs of the project and sources of funding for the project, and (C) maps of the recreational trail;

(2) submit by certified mail, not later than 180 days after receiving approval of interim trail use from the appropriate federal agency, the initial project plan to the county commission of each county where a portion of the trail is to be located outside of city limits and to the governing body of each city where a portion of the trail is to be located inside the city limits;

(3) submit the final project plan to the county commission of each county where a portion of the trail is to be located outside of city limits and make subsequent reports to such county commission as to the status of trail development or operation, or both, at intervals determined by the commission and consider all recommendations the commission has regarding the trail; and

(4) submit the final project plan to the governing body of each city where a portion of the trail is to be located inside the city limits and make subsequent reports to such city governing body as to the status of trail development or operation, or both, at intervals determined by the governing body and consider all recommendations the governing body has regarding the trail.

(c) The responsible party shall complete development of a recreational trail within a period of time equal to two years times the number of counties in which the recreational trail is located. Such period of time shall begin only when the appeal period pursuant to subsection (d) of 16 U.S.C. 1247 (1983) has expired. Any time during which there is pending any court action challenging the development or use of the trail shall not be computed as part of the time limitation imposed by this subsection.

(d) The provisions of this section shall apply to only recreational trails for which approval to enter into negotiations for interim trail use is received from the appropriate federal agency on or after the effective date of this act.

**History:** L. 1996, ch. 223, § 3; L. 1996, ch. 252, § 1; July 1.

**58-3214. Adjacent property owner's duty of care.** An adjacent property owner has no duty of care to any person using a recreational trail except that this section shall not relieve an adjacent property owner from liability for injury to another that is a direct result of such property owner's gross negligence or willful or wanton misconduct.

**History:** L. 1996, ch. 223, § 4; July 1.

**58-3215. Remedies for violations.** A city or county may institute procedures for recourse against the responsible party pursuant to 16 U.S.C. 1247 (1983) and 49 C.F.R. 1152.29 (1986) upon the failure of the responsible party to comply with the provisions of this act.

**History:** L. 1996, ch. 223, § 5; July 1.

**58-3216. Severability.** If any provision of this act or the application thereof to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of this act which can be given effect without the invalid provisions or application. To this end the provisions of this act are severable.

**History:** L. 1996, ch. 223, § 6; July 1.


COLUMBUS, KS – CARTHAGE, MO
CARTHAGE
MILEPOST 315.30
NORTH
COLUMBUS
MILEPOST 343.55

**RESOLUTION/ORDINANCE NUMBER: 7-2002**

BE IT RESOLVED that on this 30 day of September, 2002: upon a vote of the quoram of the Board of Commissioners for Cherokee County, Kansas: said Board comprised of, Mr. Pat Collins (presiding commissioner), Mr. Sam Weaver, and Mr. Dewey Smith, the resolution being voted upon in the normal fashion when calling for a vote and said vote being unanimous to adopt the following resolution, to-wit:

WHEREAS it is understood by the Board that it is the intent of the Burlington Northern/Sante Fe railroad to abandon certain rail lines situate within the confines of Cherokee County, Kansas, and:

WHEREAS it is further understood by the Board that it is the expressed intent of said railroad to lease said abandoned rail lines to the "Rails to Trails" project, and:

WHEREAS it is the express desire of the Board that all such abandoned rail lines be conveyed by the railroad company over to the adjacent landowners; however, the Board, being mindful that this matter is governed by Federal Regulations and it being the understanding of the Board that Federal Regulations pre-empt Kansas State Legislation and County Ordinances to the extent that the Board may adopt only those Ordinances regulating the abandoned rail lines situate within Cherokee County to the extent that said Ordinances do not conflict or impinge upon the Federal Regulations or Kansas State Legislation; the Board of Cherokee County Commissioners hereby adopt the following Ordinance/Resolution:

THAT in the event that Burlington Northern/Sante Fe Railroad shall lease the abandoned rail lines situate within the confines of Cherokee County, Kansas to "Rails to Trails" or any other entity; electing against conveying the abandoned rail lines back to the adjacent landowners then and thereupon this Ordinance shall take immediate effect. That in the event of such a lease then and thereupon the Board of Commissioners for Cherokee County, Kansas hereby adopt the provisions of K.S.A.66-301 et. seq. to the extent that same does not conflict with the Kansas Recreational Trails Act (K.S.A. 58-3211 et. seq.) and that the provisions and mandates of the Kansas Recreational Trails Act shall be incorporated herein as if set forth fully written (a copy of which is attached hereto).

THAT in the event that Burlington Northern/Sante Fe Railroad shall lease the abandoned rail lines situate within the confines of Cherokee County, Kansas then and thereupon the entity to whom said abandoned rail lines are leased to shall provide the Board of Commissioners with a good and sufficient surety bond, issued by a bonding agency of good repute and being in good standing, in the amount of $120,000.00: same a bond of $10,000.00 per mile of abandoned rail line: such bond being required to insure the maintenance provisions of the Kansas Recreational Trails Act and K.S.A. 66-301 et. seq. are complied with by said leasing entity.

ANY portion of this resolution and ordinance that shall fail by reason of lack of

authority to regulate shall be severable and those provisions not otherwise allowable shall remain in full force and effect.

VOTED UPON, RESOLVED AND ADOPTED this 30 day of September 2002 by the Board of Cherokee County Kansas Commissioners.

Pat Collins

Sam Weaver

Dewey Smith

ATTEST:

Sandy Soper--Cherokee County Clerk

BEFORE THE SURFACE TRANSPORTATION BOARD

RECEIVED
MAY 10 2002
MAIL MANAGEMENT
STB

Burlington Northern and Santa Fee )
Railway Co., -- Columbus, KS to ) AB-6 (*sub-no. 395X*)
Carthage, MO )

Statement of Willingness to Assume
Financial Responsibility

In order to establish interim trail use and rail banking under 16 U.S.C. 1247 (d) and 49 CFR 1152.29, the Carl Junction (Missouri) ( "City" or "Interim Trail User"), is willing to assume full responsibility for management of, for any legal liability arising out of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against the right-of-way owned and operated by Burlington Northern and Santa Fe Railway Company, (Railroad) with respect to that portion of the right-of-way in Jasper County, Missouri. The property extends from MP 331.23 at the State Line (border of Cherokee County, KS and Jasper County, MO) to MP 315.30 near Carthage, Missouri, a distance of approximately 15.93 miles in Jasper County, Missouri.[1] The right of way is part of a line proposed for abandonment in Docket AB-6 (Sub-no. 395X)

A map depicting the property is attached.

City acknowledges that use of the right-of-way is subject to the user's continuing to meet its responsibilities described above and subject to possible future reconstruction and reactivation of the right-of-way for rail service. A copy of this statement is being served on the railroad on the same date it is being served on the Board.

City of Carl Junction

By: Jim Wisdom
title: Mayor
City of Carl Junction
PO Box 447
Carl Junction, MO 64834
Tel: 417-649-7237

[1] The Jasper County segment is a portion of a larger line described as MP 343.55 at Columbus, KS to MP 315.30 near Carthage, MO, a distance of 28.25 miles in Cherokee County, KS and Jasper County, MO.


COLUMBUS, KS – CARTHAGE, MO
COLUMBUS
MILEPOST 343.65
State Line
Milepost 331.23
MILITARY
CARL JUNCTION
CARTHAGE
MILEPOST 315.30
NORTH
KANSAS
MISSOURI

32813
DO

SERVICE DATE - LATE RELEASE JUNE 21, 2002

SURFACE TRANSPORTATION BOARD

DECISION

STB Docket No. AB-6 (Sub-No. 395X)

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY–ABANDONMENT EXEMPTION–IN CHEROKEE COUNTY, KS, AND JASPER COUNTY, MO

Decided: June 21, 2002

The Burlington Northern and Santa Fe Railway Company (BNSF) filed a notice of exemption under 49 CFR 1152 Subpart F–Exempt Abandonments to abandon and discontinue service over a 28.25-mile line of railroad between milepost 343.55 in Columbus, Cherokee County, KS, and milepost 315.30 in Carthage, Jasper County, MO. Notice of the exemption was served and published in the Federal Register on May 23, 2002 (67 FR 36298). The exemption is scheduled to become effective on June 22, 2002.

The Board's Section of Environmental Analysis (SEA) served an environmental assessment (EA) in this proceeding on May 28, 2002. In the EA, SEA stated that the State of Kansas Department of Wildlife and Parks (DWP) indicates that the area of the proposed abandonment contains habitat for the following state listed threatened or endangered species: the Northern Spring Peeper, the Dark-sided Salamander, the Eastern Narrowmouth Toad, the Central Newt, and the Northern Redbelly Snake. SEA also states that DWP and the U.S. Fish and Wildlife (FWS) indicate that the Spring River provides habitat for several freshwater mussel species, which are Federal species of concern, especially the threatened Neosho madtom (Noturus placidus). SEA indicates that DWP and FWS state that, if salvage activities are limited to the right-of-way and do not impact the stream channel or its banks, the species of concern will not be affected. Therefore, SEA recommends that, in order to prevent impacts to several Federal species of concern (several freshwater mussel species and the threatened Neosho madtom), BNSF be required to limit salvage activities to the right-of-way and avoid impacts to the stream channel and banks of the Spring River.

SEA states that the Kansas Department of Health & Environment (DHE), indicates that, if the proposed abandonment disturbs more than five acres of soil, BNSF would need to submit a Notice of Intent form to obtain coverage under the Kansas general permit for stormwater discharges. Therefore, SEA recommends that BNSF be required to consult with DHE to determine whether the salvage activities would require coverage under the Kansas general permit for stormwater discharges.

SEA states that the Missouri State Emergency Management Agency (SEMA) indicates that the City of Carthage and Jasper County, MO, are participants in the National Flood Insurance Program and that the proposed abandonment may require permits from the City and Jasper County.[1] SEA also states that the Jasper County Floodplain Administrator (JCFA) has indicated that, although the line proposed for abandonment would cross floodplains within the County, if salvage activities are limited to track removal, the floodplains would not be impacted. SEMA further indicates that, if the proposed abandonment "is located within a regulatory floodway, a 'no rise' certificate and statement as to the effects of possible flooding is required before the development can be permitted.[2] Therefore, SEA recommends that, in order to minimize floodplain impacts, a condition be imposed requiring BNSF to consult with JCFA prior to conducting any salvage activities other than track removal.

SEA states that the Missouri Department of Natural Resources (DNR) indicates that a section 402 permit may be required if the proposed abandonment would involve the discharge of wastewater or stormwater into jurisdictional waters. DNR also states that the following measures could protect the quality of water in the abandoned area: (1) keeping machinery out of the waterway as much as possible; (2) not storing fuel, oil, other petroleum products, equipment and any solid waste below the ordinary high water mark at any time or in the adjacent floodway beyond normal working hours; (3) immediately cleaning up and properly disposing of petroleum products spilled into any waterbody or on the banks where the material may enter waters of the state; (4) minimizing the clearing of vegetation/trees; and (5) using best management practices to limit the amount of erosion and deposition of sediment in waters of the state. Therefore, SEA recommends that a condition be imposed requiring BNSF to consult with DNR to determine whether a section 402 permit is required. SEA states that, if a section 402 permit is required, BNSF shall not perform any salvage or abandonment activities until BNSF obtains the section 402 permit and shall then notify the Board. SEA recommends that BNSF also be required to take the following DNR recommended measures during salvage to protect the quality of water in the abandonment area: keep machinery out of the waterway as much as possible; not store fuel, oil, other petroleum products, equipment and any solid waste below the ordinary high water mark at any time or in the adjacent floodway beyond normal working hours; immediately clean up and properly dispose of petroleum products spilled into any waterbody or on the banks where the material may enter waters of the state;

---

[1] SEA notes that the City of Carthage has submitted comments stating that the proposed abandonment does not fall within the corporate limits of the City and would not impact existing flood zones.

[2] SEMA states that this analysis must be performed by a licensed engineer and to Federal Emergency Management Agency standards.

minimize the clearing of vegetation/trees; and use best management practices to limit the amount of erosion and deposition of sediment in waters of the state.

SEA states that the Missouri Department of Natural Resources State Historic Preservation Office (SHPO), indicates that, although there are no archaeological concerns associated with the proposed abandonment, it recommends that an architectural survey be performed prior to salvage to evaluate all the bridges, trestles and railroad structures along the route, including interchanges with other rail alignments.[3] Therefore, SEA recommends that a condition be imposed requiring BNSF to take no steps to alter the historic integrity of the bridges, trestles and railroad structures along the route, including interchanges with other rail alignments, within the state of Missouri, until completion of the section 106 process of the National Historic Preservation Act, 16 U.S.C. 470f (NHPA).

Finally, SEA states that the U.S. Army Corps of Engineers (Corps) indicates that it requires further information to determine whether the proposed abandonment would affect waters of the United States with the State of Kansas. Therefore, SEA recommends that a condition be imposed requiring BNSF to consult with Mr. Kenny Edgecomb at the Corps' Pomona Regulatory Field Office prior to conducting any salvage activities within the State of Kansas to determine whether any Corps permits would be required.

SEA states that the right-of-way may be suitable for other public use following abandonment. By petition filed May 10, 2002, the City of Carl Junction and the Joplin Trail Coalition (collectively commenters) jointly filed a request for the issuance of a notice of interim trail use/rail banking (NITU) under the National Trails System Act, 16 U.S.C. 1247(d) (Trails Act), for the Missouri portion of the right-of-way between milepost 331.23 at the State line and milepost 315.30 near Carthage, a distance of 15.93 miles. On May 29, 2002, the Joplin Trail Coalition (1) filed a request for the issuance of a NITU for the Kansas portion of the right-of-way between milepost 343.55 at Columbus and milepost 331.23 at the State line, a distance of 12.32 miles, and (2) for a public use condition under 49 U.S.C. 10905.

Commenters request that BNSF be barred from disposing of rail bridges, trestles, culverts or roadbed materials, except for public use as a trail or other compatible purposes, for a 180-day period from the effective date of the exemption. Commenters submitted statements of willingness to assume

---

[3] The Kansas State Historical Society submitted comments stating that the proposed abandonment would not affect any property of historic significance. BNSF indicates that it "is seeking requests for proposals from qualified architectural historians to perform a survey for the three bridges located along the alignment in Jasper County. BNSF states that all other structures on the route are located in Cherokee County, KS.

financial responsibility for management of, for any legal liability arising out of the transfer use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against, the right-of-way, as required at 49 CFR 1152.29, and acknowledged that the use of the right-of-way for trail purposes is subject to future reactivation for rail service. In responses filed on May 16, 2002, and June 12, 2002, BNSF states that it is agreeable to the requests.

Because Commenters' requests comply with the requirement of 49 CFR 1152.29 and BNSF is willing to negotiate for trail use, a NITU will be issued. The parties may negotiate an agreement during the 180-day period prescribed below. If the parties reach a mutually acceptable final agreement, no further Board action is necessary. If no agreement is reached within 180 days, BNSF may fully abandon the line. See 49 CFR 1152.29(d)(1). Use of the right-of-way for trail purposes is subject to restoration for railroad purposes.

As an alternative to interim trail use under the Trails Act, the right-of-way may be acquired for public use as a trail under 49 U.S.C. 10905. See Rail Abandonment–Use of Rights-of-Way As Trails, 2 I.C.C.2d 591, 609 (1986). Under section 10905, the Board may prohibit the disposal of rail properties that are proposed to be abandoned and are appropriate for public purposes for a period of not more than 180 days after the effective date of the decision approving or exempting the abandonment.

To justify a public use condition, a party must set forth: (i) the condition sought; (ii) the public importance of the condition; (iii) the period of time for which the condition would be effective; and (iv) justification for the imposition of the period of time requested. See 49 CFR 1152.28(a)(2). Commenters have satisfied these requirements and, therefore, a 180-day public use condition will be imposed commencing with the effective date of the exemption.

When the need for interim trail use/rail banking and public use are shown, it is the Board's policy to impose both conditions concurrently, subject to the execution of a trail use agreement. If a trail use agreement is reached on a portion of the right-of-way, BNSF must keep the remaining right-of-way intact for the remainder of the 180-day period to permit public use negotiations. Also, a public use condition is not imposed for the benefit of any one potential purchaser, but rather to provide an opportunity for any interested person to acquire the right-of-way that has been found suitable for public purposes, including trail use. Therefore, with respect to the public use condition, BNSF is not required to deal exclusively with Commenters, but may engage in negotiations with other interested persons.

As conditioned, this action will not significantly affect either the quality of the human environment or the conservation of energy resources.

It is ordered:

1. This proceeding is reopened.

2. Upon reconsideration, the exemption of the abandonment of the line described above is subject to the conditions that BNSF shall: (1) limit activities to the right-of-way and avoid impacts to the stream channel and banks of the Spring River; (2) consult with DHE to determine whether the salvage activities would require coverage under the Kansas general permit for stormwater discharges; (3) consult with the JCFA prior to conducting any salvage activities other than track removal; (4) consult with DNR to determine whether a section 402 permit is required, and if so, BNSF shall be prohibited from performing any salvage or abandonment activities until BNSF obtains the section 402 permit and shall then notify the Board. BNSF shall also take the following DNR recommended measures during salvage to protect the quality of water in the abandonment area; keep machinery out of the waterway as much as possible; not store fuel, oil, other petroleum products, equipment and any solid waste below the ordinary high water mark at any time or in the adjacent floodway beyond normal working hours; immediately clean up and properly dispose of petroleum products spilled into any waterbody or on the banks where the material may enter waters of the state; minimize the clearing of vegetation/trees; and use best management practices to limit the amount of erosion and deposition of sediment in waters of the state; (5) take no steps to alter the historic integrity of the bridges, trestles, and railroad structures along the route, including interchanges with other rail alignments, within the State of Missouri, until completion of the section 106 process of the NHPA; and (6) consult with Mr. Kenny Edgecomb at the Corps' Pomona Regulatory Field Office prior to conducting any salvage activities within the State of Kansas to determine whether any Corps permits would be required.

3. The notice served and published in the Federal Register on May 23, 2002, exempting the abandonment of the line described above is modified to the extent necessary to implement interim trail use/rail banking as set forth below, subject to the conditions that BNSF keep intact the right-of-way underlying the tracks, including bridges, trestles, culverts and tunnels, for a period of 180 days from the effective date (until December 19, 2002), to enable any state or local government agency, or other interested person to negotiate the acquisition of the line for public use. If an interim trail use/rail banking agreement is executed before the expiration of the 180-day period specified above, the public use condition will expire to the extent that the trail use/rail banking agreement covers the same line.

4. If an interim trail use/rail banking agreement is reached, it must require the trail user to assume for the term of the agreement, full responsibility for management of, for any legal liability arising out of the transfer or use of (if the user is immune from liability, it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against, the right-of-way.

5. If interim trail use is implemented, and subsequently the user intends to terminate trail use, it must send the Board a copy of this decision and notice and request that it be vacated on a specified date.

6. If an agreement for interim trail use/rail banking is reached by December 19, 2002, interim trail use may be implemented. If no agreement is reached by that time, BNSF may fully abandon the line.

7. This decision is effective on its service date.

By the Board, David M. Konschnik, Director, Office of Proceedings.

Vernon A. Williams
Secretary

2068&86

**BNSF**

SARAH WHITLEY BAILIFF
*Senior General Attorney*

**The Burlington Northern and Santa Fe Railway Company**

2500 Lou Menk Drive
Fort Worth, Texas 76131-2828
(817) 352-2354 - Telephone
(817) 352-2397 – Fax
Sarah.Bailiff@BNSF.com

RECEIVED
DEC 19 2002
MAIL MANAGEMENT
STB

**VIA UPS OVERNIGHT MAIL**

ENTERED
Office of Proceedings
DEC 20 2002
Part of
Public Record

December 18, 2002

Mr. Vernon A. Williams
Secretary
Surface Transportation Board
1925 K Street, N.W.
Washington, DC 20423-0001

**Re: Surface Transportation Board Docket No. AB-6 (Sub-No. 395X); The Burlington Northern and Santa Fe Railway Company ("BNSF") Abandonment between Columbus, Kansas and Carthage, Missouri**

Dear Secretary Williams:

This responds to a letter of December 6, 2002 from representatives of the Cherokee County Landowners Association to the Director of the Office of Proceedings concerning the requested issuance of a Notice of Interim Trail Use in the referenced docket.

BNSF and the Joplin Trails Coalition are still in the process of negotiating for the possible transfer of right-of-way for a trail pursuant to the National Trails Systems Act. Accordingly, on November 21, 2002, BNSF requested an extension of the NITU period to complete discussions with the trails interest.

We submit that a NITU is appropriately entered in this matter pursuant to 16 U.S.C. Section 1247(d) and the Board's implementing regulations, and the requested relief should be denied so that the voluntary processes afforded by applicable law may proceed. That said, expressions of concern from the community on the Kansas portion of the line will be given serious consideration by BNSF as discussions continue. We believe a trail may still be accommodated while taking into account the concerns of the Cherokee County Landowners Association. For example, as the landowners' association acknowledged in its December 6, 2002, letter, BNSF and the trails interest may entertain limited railbanking on the Missouri portion of the line. We encourage the Landowners Association to appoint a single representative to contact us so that we may provide status updates and receive input from that community as the trail negotiations continue with the Joplin Trails Coalition.

It is our hope to reach a solution that addresses the concerns of as many interests as possible. Meanwhile, the rights of the Joplin Trails Coalition to negotiate with BNSF should not be prematurely terminated.

Sincerely,

Sarah Whitley Bailiff

Sarah Whitley Bailiff

cc: Ms. Nancy Evans (Cherokee Co. Landowners Assoc.)
Mr. John Gaither (Cherokee Co. Landowners Assoc.)
Mr. Charles Montange (Joplin Trail Coalition)
Mr. Richard A. Batie
Mr. David Schneider
Mr. David Detjen

207637

BNSF

Burlington Northern Santa Fe Railway

SARAH WHITLEY BAILIFF
*Senior General Attorney*

**The Burlington Northern and Santa Fe Railway Company**

2500 Lou Menk Drive
Fort Worth, Texas 76131-2828
(817) 352-2354 - Telephone
(817) 352-2397 – Fax
Sarah.Bailiff@BNSF.com

RECEIVED APR 16 2003

**VIA UPS OVERNIGHT MAIL**

April 15, 2003

Mr. Vernon A. Williams, Secretary
Surface Transportation Board
1925 K Street, N.W.
Washington, DC 20423-0001

Re: **Surface Transportation Board Docket No. AB-6 (Sub-No. 395X); The Burlington Northern and Santa Fe Railway Company ("BNSF") Abandonment between Columbus, Kansas and Carthage, Missouri**

Dear Secretary Williams:

On May 3, 2002, BNSF filed a Notice of Exemption seeking authority to abandon or discontinue service of 28.25 miles of railroad line between railroad milepost 343.55 in Columbus, Kansas and railroad milepost 315.30 in Carthage, Missouri.

In an order served June 21, 2002, the Board imposed several conditions, including a Section 106 historical condition, prohibiting disposition of the right-of-way. Subsequently, the Board removed the section 106 condition by decision served November 20, 2002.

Within the same order, the Board imposed a notice of interim trail use/rail banking ("NITU") and public use condition. The Board issued a deadline of December 19, 2002 on the NITU. Due to ongoing negotiations with Joplin Trails Coalition the negotiating period was extended to June 17, 2003.

The abandonment of this railroad line must be consummated on May 23, 2003 pursuant to the Board's order of May 23, 2002. However, due to imposition of the historical condition, ongoing negotiations (particularly with respect to the properties in the State of Missouri), and delays in clearing the condition barring disposition, BNSF is requesting an extension of the consummation date. BNSF requests an extension until October 31, 2003 to consummate the abandonment of this line. This extension should accommodate conclusion of a railbanking agreement and salvage of any right of way which may not be subject to railbanking.

If you have any questions, please contact me at (817) 352-2354 or Sarah.Bailiff@BNSF.com

Sincerely,

Sarah Whitley Bailiff

Sarah Whitley Bailiff

SWB/js

Part of Public Record

cc: Richard Batie
Mack Wiens

Fauvergue v. US
No. 08-431L (Fed. Cl.)
Def.'s Opp. to Class Cert.
Defendant's Exhibit 8

33553 SERVICE DATE - MAY 14, 2003
DO

SURFACE TRANSPORTATION BOARD

DECISION

STB Docket No. AB-6 (Sub-No. 395X)

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY–ABANDONMENT EXEMPTION –IN CHEROKEE COUNTY, KS, AND JASPER COUNTY, MO

Decided: May 9, 2003

The Burlington Northern and Santa Fe Railway Company (BNSF) filed a notice of exemption under 49 CFR 1152 Subpart F–Exempt Abandonments to abandon a 28.25-mile line of railroad between milepost 343.55 in Columbus, Cherokee County, KS, and milepost 315.30 in Carthage, Jasper County, MO. Notice of the exemption was served and published in the Federal Register on May 23, 2002 (67 FR 36298). The notice of exemption stated that, if consummation had not been effected by BNSF's filing of a notice of consummation by May 23, 2003, and there are no legal or regulatory barriers to consummation, the authority to abandon will automatically expire.[1] By decision served June 21, 2002, the proceeding was reopened and the City of Carl Junction and the Joplin Trail Coalition were authorized to negotiate an interim trail use/rail banking agreement with BNSF, pursuant to section 8(d) of the National Trails System Act, 16 U.S.C. 1247(d). The negotiation period was scheduled to expire on December 19, 2002, but was extended to June 17, 2003, by decision served December 19, 2002.

On April 16, 2003, BNSF filed a request to extend the deadline for filing of the notice of consummation until October 31, 2003. BNSF stated that an extension is necessary due to imposition of the historical condition, ongoing negotiations (particularly with respect to the properties in the State of Missouri), and delays in clearing the condition barring disposition. Under 49 CFR 1152.29(e)(2), a railroad may, for good cause shown, file a request for an extension of time to file a notice of consummation in abandonment proceedings. BNSF has shown good cause to extend the time to

---

[1] The June 21 decision also imposed environmental conditions and a public use condition. The public use condition expired on December 19, 2003. By decision served November 20, 2003, the section 106 historic preservation condition was removed. The November 20 decision noted that the other conditions imposed in the June 21 decision remain.

consummate the abandonment and for filing a notice of consummation. Accordingly, the deadline for filing the notice of consummation will be extended to October 31, 2003.

This action will not significantly affect either the quality of the human environment or the conservation of energy resources.

It is ordered:

1. BNSF's request for an extension of time to exercise the abandonment authority is granted.

2. The authority to abandon must be exercised, and the notice of consummation must be filed, on or before October 31, 2003.

3. This decision is effective on its service date.

By the Board, David M. Konschnik, Director, Office of Proceedings.

Vernon A. Williams
Secretary

209165

BNSF

SARAH WHITLEY BAILIFF
*Senior General Attorney*

The Burlington Northern and
Santa Fe Railway Company

2500 Lou Menk Drive
Fort Worth, Texas 76131-2828
(817) 352-2354 - Telephone
(817) 352-2397 – Fax
Sarah.Bailiff@BNSF.com

OCT 21 2003
RECEIVED

**VIA UPS OVERNIGHT MAIL**

October 20, 2003

Mr. Vernon A. Williams, Secretary
Surface Transportation Board
1925 K Street, N.W.
Washington, DC 20423-0001

Re: **Surface Transportation Board Docket No. AB-6 (Sub-No. 395X); The Burlington Northern and Santa Fe Railway Company ("BNSF") Abandonment between Columbus, Kansas and Carthage, Missouri**

Dear Secretary Williams:

On May 3, 2002, BNSF filed a Notice of Exemption seeking authority to abandon or discontinue service of 28.25 miles of railroad line between railroad milepost 343.55 in Columbus, Cherokee County, Kansas and railroad milepost 315.30 in Carthage, Jasper County, Missouri. The line traverses United States Postal Service Zip Codes 66725, 66728, 64834, 64835, and 64836. An Interim Trails Use Railbanking Agreement, dated June 16, 2003, was entered into between BNSF and the Joplin Trail Coalition (for the properties in the State of Missouri), in lieu of abandonment. The remainder of the right of way has been salvaged and BNSF's discontinuance of the subject line will be consummated on October 31, 2003.

Please acknowledge receipt of this letter by date stamping the enclosed copy of this letter and returning it to me in the enclosed self-addressed stamped envelope.

Ten (10) additional copies of this letter are enclosed for the Board's use and distribution.

Sincerely,

Sarah Whitley Bailiff

Sarah Whitley Bailiff

SWB/js

cc: Kansas Corporation Commission
Kansas Department of Transportation
Missouri Public Service Commission
Missouri Department of Tranportation
Richard Batie
Charles Montange (Joplin Trail Coalition)
Rail Services Update

Fauvergue v. US,
No. 08-431L (Fed. Cl.)
Def.'s Opp. to Class Cert.
Defendant Exhibit 10

210012

BNSF

SARAH WHITLEY BAILIFF
*Senior General Attorney*

**The Burlington Northern and Santa Fe Railway Company**

2500 Lou Menk Drive
Fort Worth, Texas 76131-2828
(817) 352-2354 - Telephone
(817) 352-2397 – Fax
Sarah.Bailiff@BNSF.com

FEB 4 2004 RECEIVED

**VIA UPS OVERNIGHT MAIL**

February 3, 2004

Mr. Vernon A. Williams, Secretary
Surface Transportation Board
1925 K Street, N.W.
Washington, DC 20423-0001

**Re: Surface Transportation Board Docket No. AB-6 (Sub-No. 395X); The Burlington Northern and Santa Fe Railway Company ("BNSF") Abandonment between Columbus, Kansas and Carthage, Missouri**

Dear Secretary Williams:

This letter serves to clarify my letter dated October 20, 2003 regarding the above-referenced docket.

BNSF and the Joplin Trail Coalition entered into an Interim Trails Use Railbanking Agreement, dated June 16, 2003 (for the properties in the State of Missouri), in lieu of abandonment. The remainder of the right of way, located in the State of Kansas, has been salvaged and fully abandoned. Therefore, BNSF's *discontinuance* of the line for the properties in the State of Missouri and the *abandonment* of the properties in the State of Kansas were consummated as of October 31, 2003.

Please acknowledge receipt of this letter by date stamping the enclosed copy of this letter and returning it to me in the enclosed self-addressed stamped envelope.

Ten (10) additional copies of this letter are enclosed for the Board's use and distribution.

Sincerely,

Sarah Whitley Bailiff

Sarah Whitley Bailiff

SWB/js

ENTERED
Office of Proceedings
FEB - 4 2004
Part of
Public Record

Fauvergue v. US
No. 08-431L (Fed. Cl.)
Def.'s Opp. to Class Cert.
Defendant's Exhibit 11

cc: Kansas Corporation Commission
Kansas Department of Transportation
Missouri Public Service Commission
Missouri Department of Transportation
Richard Batie
Charles Montange (Joplin Trail Coalition)
Rail Services Update