**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| EDWARD L. BRIGHT, II,<br><br>FRED E. and NANCY A. EVANS,<br><br>EARLEEN FAUVERGUE,<br><br>CLARENCE FORKNER,<br><br>RANDY W. and DEBRA J. FROEBE,<br><br>GENEVA GRUBBS,<br><br>NORMA LOU HALL,<br><br>HOMER E. and DEBBIE M. HAMILTON,<br><br>SHIRLEY HENDRICKS,<br><br>DAVID and GAIL HOUSER,<br><br>PATRICK J. O'BRYAN, TRUSTEE OF THE PATRICK J. O'BRYAN REVOCABLE LIVING TRUST UNDER AGREEMENT DATED 9/7/2001,<br><br>LESTER ROARK,<br><br>DONALD LEE ROPER, II,<br><br>RICKY D. RUSSELL,<br><br>B. LORENE SOPER, and<br><br>BRADY J. and ROSE M. STUART,<br><br>For Themselves and As Representatives of a Class of Similarly Situated Persons,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 08-431 |

**FIRST AMENDED COMPLAINT**

**SUMMARY OF THIS CASE**

The Plaintiffs are citizens of the United States and the States of Missouri and Kansas. Mr. Bright, Ms. Fauvergue, Mr. Forkner, Mr. and Mrs. Hamilton, Mr. Russell, and Mr. and Mrs. Stuart own a fee simple estate in land in Jasper County, Missouri and Mr. and Mrs. Evans, Mr. and Mrs. Froebe, Ms. Grubbs, Ms. Hall, Ms. Hendricks, Mr. and Mrs. Houser, Mr. O'Bryan, Mr. Roark, Mr. Roper, and Ms. Soper own a fee simple estate in land in Cherokee County, Kansas. In 1876, the Memphis, Carthage and Northwestern Railroad Company ("MCNRC") and the Missouri and Western Railroad Company ("MWRC") acquired easements for the operation of a railroad across private land. These easements established the 28.25 mile corridor from Columbus, in Cherokee County, Kansas to Carthage, in Jasper County, Missouri.

The MCNRC and MWRC easements were acquired by condemnation decrees. Under the terms of the condemnation decrees and under Missouri and Kansas law, once the successor to the MCNRC and MWRC (which is now the Burlington Northern and Santa Fe Railway ("BNSF")) ceased operating a railroad across the right of way, the railroad easements were abandoned and the Plaintiffs, as the owners of the fee simple estate in this land, regained their right to the exclusive use and physical possession of their property.

However, pursuant to Section 8(d) of the 1983 amendments to the National Trails System Act, 16 U.S.C. §1247(d) ("Trails Act"), the issuance of a Notice of Interim Trail Use ("NITU") by the Surface Transportation Board (STB) operated to: (a) forestall or preclude the Plaintiff property owners' "reversionary"[1] right to this land; and (b) impose

---

[1] Plaintiffs use the term "reversionary" because such term was used in the generic sense by the Federal Circuit in *Barclay* and *Renewal Body Works*. Technically this is not a

two new easements upon Plaintiffs' land, one for a public-access recreational trail and a second for a possible future railroad.

The STB issued a NITU affecting this abandoned railroad right-of-way on June 21, 2002. Pursuant to the Trails Act and this NITU, the City of Carl Junction and the Joplin Trail Coalition (collectively "trail operator") entered into negotiations with the BNSF for acquisition of an easement for a public-access recreational trail to be located across the abandoned railroad corridor crossing over land in Kansas and Missouri. Under the terms of the original railroad condemnation decree, and under Kansas and Missouri law, BNSF did not own or possess any right to grant the City of Carl Junction or the Joplin Trail Coalition an easement across the Plaintiffs' land.

The denial of the Plaintiff landowners' "reversionary right" to possess their property and the imposition of a new easement for an interim public-access recreational trail and the creation of a new easement for a future railroad corridor across the Plaintiffs' property is a taking of the Plaintiffs' property for which the Fifth Amendment to the U.S. Constitution requires that the United States pay "just compensation" to the Plaintiff property owners. To date, the United States has taken these landowners' property and has not paid, nor has the federal government offered to pay, any compensation.

This action is the claim by these United States citizens brought pursuant to the Fifth Amendment and the Tucker Act 28 U.S.C. § 1491 (a)(1) seeking "just compensation" for the value of their property taken from them by the federal government

---

"reversion" of the property. Rather the Plaintiff and her predecessors in title always held fee title to the property. Their fee title had been burdened by an easement for operation of a railroad. Upon the railroad's abandonment of this easement, their fee became "unburdened" by this easement to the extent that "reversionary" is used in this pleading it is used in the generic sense.

through operation of the Trails Act. The "just compensation" they seek includes compensation for the delay between the date their property was taken (or made subject to the Trails Act) and when the federal government ultimately pays them compensation. They also seek the government to pay their attorney fees and expenses incurred in bringing this action pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c)(2000).

Plaintiffs are seeking to have this matter certified as a class action pursuant to RCFC 23 for all those similarly situated landowners that own land abutting or underlying the abandoned BNSF railroad right of way in Cherokee County, Kansas and Jasper County, Missouri. This is the eighth case that has been filed by a property owner owning land abutting or underlying this abandoned right of way. See, *Carl Junction R-1 School District v. United States*, Case No. 05-3L, *Jeff Lundien et al v. United States*, No. 05-4L, *Hance v. United States*, No. 05-3L, *Winder v. United States*, 08-324L, *Beecham v. United States*, No. 08-435L, *Shira v. United States*, No. 08-453L, and *Jones v. United States*. None of the previous seven cases was filed as a class action. Plaintiffs seek to have this case certified to include all those similarly situated property owners who have not participated in any of the three earlier filed cases.

## COMPLAINT

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §1491(a)(1) ("Tucker Act") because this action presents a claim against the United States which is founded upon the Constitution and statutes of the United States.

## STATUTES AND CONSTITUTIONAL PROVISIONS

Plaintiffs' claims is governed by the following statutes and constitutional provision:

1. The Fifth Amendment to the United States Constitution, which provides, "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

2. The National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("Trails Act").

3. The Tucker Act, 28 U.S.C. § 1491(a) ("Tucker Act"), which provides in relevant part, "The United States Court of Federal Claims shall have jurisdiction to render judgment on any claim against the United States founded upon the Constitution."

4. The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) (2000), which provides that just compensation includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

**The Plaintiffs:**

(a) Edward L. Bright, II

1. Edward L. Bright, II is a citizen of the United States and the State of Missouri.

2. Mr. Bright owned a fee simple estate in the land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the Warranty Deed by which Mr. Bright acquired his property on November 14, 1997, recorded in Book 1545, Page 2310 of the Jasper County, Missouri Recorder of Deeds' Office, is attached as "Exhibit A.")

3. Mr. Bright still owns the fee simple estate in this land.

(b) Fred and Nancy Evans

4. Fred E. Evans and Nancy A. Evans are citizens of the United States of America and the State of Kansas.

5. Mr. and Mrs. Evans owned a fee simple estate in the land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the Warranty Deeds by which Mr. and Mrs. Evans acquired their property, recorded in the Cherokee County Recorder of Deeds' Office in Book 194, Page 156, Book 194, Page 262, and Book 24, Page 380, are attached respectively as "Exhibit B, C, and D.")

6. Mr. and Mrs. Evans still own the fee simple estate in their property.

(c) Earleen Fauvergue

7. Earleen Fauvergue is a citizen of the United States of America and the State of Missouri.

8. Ms. Fauvergue and her late husband, George Fauvergue, owned a fee simple estate in the land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the Warranty by which the Fauvergues acquired their property, recorded in the Jasper County Recorder of Deeds' Office in Book 1473, Pages 1020-22, is attached as "Exhibit E.")

9. On April 24, 2006, Mr. Fauvergue passed away. (A copy of the death certificate is attached as "Exhibit F.")

10. Ms. Fauvergue, individually, now owns this property.

(d) Clarence Forkner

11. Clarence L. Forkner is a citizen of the United States of America and the State of Missouri.

12. Mr. Forkner and his late wife, T.J. Forkner, owned a fee simple estate in land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the Indenture and Warranty Deed by which Mr. and Mrs. Forkner acquired their property, are recorded in the Jasper County Recorder of Deeds' Office in Book 1072, Page 525 and Book 1072, Page 526, and are attached respectively as "Exhibit G" and "Exhibit H.")

13. On July 1, 1997, T.J. Forkner passed away.

14. Mr. Forkner, individually, now owns the fee simple estate in this land.

(e) Randy and Debra Froebe

15. Randy W. and Debra J. Froebe are citizens of the United States of America and the State of Kansas.

16. Mr. and Mrs. Froebe owned a fee simple estate in land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the Joint Tenancy Deeds and Quitclaim Deed by which Mr. and Mrs. Froebe acquired their property, are recorded in the Cherokee County Register of Deeds' Office in Book 251, Page 389, Book 251, Page 390, and Book 259, Page 201, and are attached respectively as "Exhibit I," "Exhibit J," and "Exhibit K.")

17. Mr. and Mrs. Froebe still own the fee simple estate in this land.

(f) Geneva Grubbs

18. Geneva Grubbs is a citizen of the United States of America and the State of Kansas.

19. Mrs. Grubbs' late husband, Ronald A. Grubbs, owned a fee simple estate in land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A

copy of the Warranty Deed by which Mr. Grubbs and David E. Houser acquired title to this property, recorded in Deed Book 220, Pages 177-180 of the Cherokee County Register of Deed's Office, and attached as "Exhibit L.")

20. On May 5, 2006, Mr. Grubbs and his wife, Geneva Grubbs, and Mr. Houser and his wife, Gail Houser, conveyed a portion of their interest in the property to Rhonda Loar and John Lock, Jr. (A copy of the Kansas Warranty Deed conveying this interest, recorded in Deed Book 351, Pages 594-595, in the Cherokee County Register of Deed's Office, is attached as "Exhibit M.")

21. On June 20, 2006, Mr. and Mrs. Grubbs and Mr. and Mrs. Houser conveyed another portion of their interest in the property to Gerald W. Longtin and Denise L. Longtin. (A copy of the Kansas Warranty Deed conveying this interest, recorded in Deed Book 354, Pages 556-557, in the Cherokee County Register of Deed's Office, is attached as "Exhibit N.")

22. On December 8, 2007, Mr. Grubbs passed away (A copy of his death certificate is attached as "Exhibit O.")

23. Mrs. Geneva Grubbs is the heir to and owner of that interest in real estate held by Mr. Grubbs on June 21, 2002 and referenced in "Exhibit L.")

(g) <u>Norma Hall</u>

24. Ms. Norma Hall is a citizen of the United States of America and the State of Kansas.

25. Ms. Norma Hall and her late husband, Robert Hall, owned a fee simple estate in land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the Indenture by which the Halls acquired their property, recorded in

Book 189, Pages 467-68 in the Cherokee County Recorded of Deeds Office, is attached as "Exhibit P.")

26. On December 13, 2006, Mr. Hall passed away. (A copy of the death certificate is attached as "Exhibit Q.")

27. Ms. Hall, individually, now owns this property.

(h) <u>The Hamiltons</u>

28. Mr. Homer E. Hamilton and Mrs. Debbie M. Hamilton are citizens of the United States of American and the State of Missouri.

29. Mr. and Mrs. Hamilton owned a fee simple estate in land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the Warranty Deed by which the Hamiltons acquired title to their property, recorded in Deed Book 1414, Page 1377 in the Jasper County Recorder of Deed's Office, is attached as "Exhibit R.")

30. Mr. and Mrs. Hamilton still own the fee simple estate in their property.

(i) <u>Shirley Hendricks</u>

31. Shirley Hendricks (formerly known as Shirley McDown) is a citizen of the United States of America and the State of Kansas.

32. Ms. Hendricks, and her late husband, C.W. McDown, owned fee simple estate in land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the Joint Tenancy Quit Claim Deed by which Ms. Hendricks and Mr. McDown acquired title to their property, recorded in the Cherokee County, Kansas Register of Deeds' Office in Book 177, Page 596, is attached as "Exhibit S.")

33. On March 9, 1983, Mr. McDown passed away (A copy of the death certificate is attached as "Exhibit T.")

34. After her husband's death, Ms. Hendricks changed her name from "Shirley McDown" to "Shirley Hendricks."

35. Ms. Hendricks, individually, is now the fee simple estate owner of this land.

(j) David and Gail Houser

36. David E. and Gail Houser are citizens of the United States of America and the State of Kansas.

37. Mr. Houser owned fee simple estate in the land, which abuts and underlies the former BNSF right of way, on June 21, 2002. ((A copy of the Warranty Deed by which Mr. Grubbs and David E. Houser acquired title to this property, recorded in Deed Book 220, Pages 177-180 of the Cherokee County Register of Deed's Office, is attached as "Exhibit U.")

38. On May 5, 2006, Mr. Houser and his wife, Gail Houser, and Mr. Grubbs and his wife, Geneva Grubbs, conveyed a portion of their interest in the property to Rhonda Loar and John Lock, Jr. (A copy of the Kansas Warranty Deed conveying this interest, recorded in Deed Book 351, Pages 594-595, in the Cherokee County Register of Deed's Office, is attached as "Exhibit V.")

39. On June 20, 2006, Mr. and Mrs. Houser and Mr. and Mrs. Grubbs conveyed another portion of their interest in the property to Gerald W. Longtin and Denise L. Longtin. (A copy of the Kansas Warranty Deed conveying this interest,

recorded in Deed Book 354, Pages 556-557, in the Cherokee County Register of Deed's Office, is attached as "Exhibit W.")

40. Mr. and Mrs. Houser still own the fee simple estate in their property.

(k) Patrick O'Bryan

41. Patrick J. O'Bryan is a citizen of the United States of America and the State of Kansas.

42. Mr. O'Bryan, as Trustee of the Patrick J. O'Bryan Revocable Living Trust under Agreement dated 9/7/2001, owned a fee simple estate in land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the General Warranty Deed by which Mr. O'Bryan's Trust acquired its property, recorded in the Cherokee County Register of Deeds' Office in Book 252, Page 76, is attached as "Exhibit X.")

43. Mr. O'Bryan, as Trustee of his Revocable Living Trust, still owns the fee simple estate in this property.

(l) Lester Roark

44. Lester Roark is a citizen of the United States of America and the State of Kansas.

45. Mr. Roark and his late wife, Conorma Roark, owned a fee simple estate in land which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the Quit Claim Deed by which the Roarks acquired their property, recorded in Cherokee County Register of Deeds' Office in Book 190, Pages 479-80, is attached as "Exhibit Y.")

46. On October 16, 1998, Mrs. Roark passed away. (A copy of the death certificate is attached as "Exhibit Z.")

47. Mr. Roark, individually, now owns this property.

(m) <u>Donald Roper</u>

48. Mr. Donald Lee Roper, II is a citizen of the United States of America and the State of Kansas.

49. Mr. Roper owned a fee simple estate in land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the Indenture by which Mr. Roper acquired his property, recorded in Book 231, Page 476 of the Cherokee County Register of Deeds Office, is attached as "Exhibit AA.")

50. Mr. Roper still owns the fee simple estate in this land.

(n) <u>Ricky Russell</u>

51. Mr. Ricky D. Russell is a citizen of the United States of America and the State of Missouri.

52. Mr. Russell owned a fee simple estate in land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the Warranty Deed by which the Plaintiff acquired his property, recorded in Book 1543, Page 842, is attached as "Exhibit BB.")

53. Mr. Russell still owns the fee simple estate in this property.

(o) <u>B. Lorene Soper</u>

54. B. Lorene Soper is a citizen of the United States of America and the State of Kansas.

55. On January 30, 1996, Mrs. Soper's mother-in-law, Edna Catherine Soper, executed a warranty deed to herself and her son, William L. Soper, as joint tenants with full rights of survivorship. (A copy of the Warranty Deed by which Edna Catherine Soper and William L. Soper acquired title to their property, recorded in Deed Book 237, Page 744-745, is attached as "Exhibit CC.")

56. On January 1, 2005, Edna Catherine Soper passed away. (A copy of Edna Catherine Soper's death certificate is attached as "Exhibit DD.")

57. Under the terms of the January 30, 1996 Warranty Deed (Exhibit CC), the interest in the land described in Exhibit CC passed to William L. Soper, as joint tenant with full right of survivorship, upon Edna Catherine Soper's death on January 1, 2005.

58. On February 16, 2005, William L. Soper and his wife, B. Lorene Soper, conveyed a Warranty Deed to themselves, as joint tenants with the right of survivorship, conveying full interest in the land referenced in Exhibit CC. (A copy of the Warranty Deed, recorded in Deed Book 261, Page 211, is attached as "Exhibit EE".)

59. On July 16, 2005, William L. Soper passed away. (A copy of the death certificate is attached as "Exhibit FF.")

60. As joint tenant with full right of survivorship, B. Lorene Soper now owns this land individually and is the successor in title to the fee owner of this land on June 21, 2002 (See, Exhibits EE and FF).

(p) <u>Brady and Rose Stuart</u>

61. Brady J. and Rose M. Stuart are citizens of the United States of America and the State of Missouri.

62. Mr. and Mrs. Stuart owned a fee simple estate in land, which abuts and underlies the former BNSF right of way, on June 21, 2002. (A copy of the Warranty Deed by which the Stuarts acquired their property, recorded in the Jasper County Recorder of Deeds' Office in Book 1699, Pages 553-54, is attached as "Exhibit GG.")

63. Mr. and Mrs. Stuart still own the fee simple estate in this land.

**The Defendant**:

64. The Defendant in this case is the United States Government, a republic governed by the Constitution and Statutes of the United States of America.

**The Named Plaintiffs Seek to Represent Other Similarly Situated Jasper County, Missouri and Cherokee County, Kansas Property Owners**.

65. Plaintiffs bring this action in their individual capacity as property owners whose land has been taken by the federal government and also as representatives on behalf of themselves and all other similarly situated landowners who own property in Cherokee County, Kansas and Jasper County, Missouri.

66. According to the Federal Circuit,[2] those property owners entitled to bring a claim for "just compensation" are those that owned property on the "date of taking" which is the June 21, 2002 date when the STB issued the NITU. The named Plaintiffs held title to their property on June 21, 2002 and the members of the representative class they seek to represent are those other land owners of land in Missouri and Kansas that also held a fee simple estate in the land subject to the NITU and Trails Act on June 21, 2002.

[2] See, *Caldwell v. United States*, 391 F.3d 1226 (Fed.Cir. 2004), *Barclay v. United States*, 443 F.3d 1368 (2006); and *Renewal Body Works, Inc. v. United States*, 443 F.3d 1368 (2006).

67. To the best of Plaintiffs' information and belief, there are more than 150 other landowners along the approximately 25.28 mile length of abandoned right of way in Cherokee County, Kansas and Jasper County, Missouri who hold a fee estate in the land for which their state law "reversionary" property rights were taken and whose land is now subject to an easement for a public-access recreational trail and possible future railroad use by reason of the NITU and Trails Act.

68. There are questions of law and fact common to the class; Plaintiffs' claims are typical of the claims of the class; and the Plaintiffs will fairly and adequately protect the interests of the class.

**<u>How the Railroad Easement Across the Plaintiffs' Land Was Created</u>**

69. "The former Memphis Carthage and Northwestern Railroad Company [MCNRR] and The Missouri and Western Railway Company [MWRC] acquired the rail line corridor between Columbus, Kansas and Carthage, Missouri between 1875 and 1879." (See, Historical Report, submitted as part of the Notice of Exemption, a copy of which is attached as "Exhibit HH.")

70. On March 13, 1876, the Jasper County Circuit Court in *Memphis, Carthage and North Western Rail Road Company, Plaintiffs v. Evan Evans, et al., Defendants*, Case No. 905, issued a condemnation order establishing, for the benefit of MCNRR, an easement across a strip of land 100 feet wide over and across land now owned by the Plaintiffs. (A copy of this Order is attached as "Exhibit II-1" and a transcribed version of this Order is attached as "Exhibit II-2.")

71. On August 16, 1876, Cherokee County, Kansas issued a condemnation order establishing for the benefit of the Missouri and Western Railroad Company on June 29, 1376, an easement across a strip of land 100 feet wide over and across land now

owned by the Plaintiffs. (A copy of this Order is attached as "Exhibit JJ-1" and a transcribed version of this Order is attached as "Exhibit JJ-2".)

72. Under settled Missouri and Kansas law, when a railroad condemns land for a right of way, the railroad acquires only an easement to use the property for the purpose of operating a railroad. For Missouri, *see* Mo. Const. art. I, § 26; *Quinn v. St. Louis-San Francisco Ry. Co.*, 439 S.W.2d 533, 534-35 (Mo. 1969); *Boyles v. Missouri Friends of the Wabash Trace Nature Trails, Inc.*, 1998 WL 792070 (Mo.Ct.App. 1998). For Kansas, *see* Gen. Stat. 1901, §§ 1359-1365; *Abercrombie v. Simmons*, 71 Kan. 538, 81 P. 208 (1905); *Harvest Queen Mill & Elevator v. Sanders*, 370 P.2d 419, 423 (Kan. 1962).

73. The MCNRR and MWRC acquired only an easement across the land in Cherokee County, Kansas and Jasper County, Missouri upon which the right of way was constructed.

74. The MCNRR and MWRC were the predecessors of the St. Louis and San Francisco Railway Company ("SLSF"), which in 1980, merged into the Burlington Northern Railroad Company ("BN"). The BN subsequently merged with the Atchison, Topeka and Santa Fe Railway in 1995 to become the Burlington Northern and Santa Fe Railway Company ("BNSF"). (See, Exhibit HH, Historical Report).

**<u>Railroad Use of the Plaintiffs' Land Was Abandoned</u>**

75. The BNSF formerly held an easement for a railroad right-of-way between milepost 343.55 in Columbus, Cherokee County, Kansas, and milepost 315.30 in Carthage, Jasper County, Missouri, a distance of approximately 28.25 miles (the "Railroad Line").

76. On May 3, 2002, BNSF filed with the Surface Transportation Board ("STB") a Notice of Exemption to abandon the 28.25 Railroad Line. (A copy of the Notice of Exemption is attached as "Exhibit KK.")

77. In the Notice of Exemption, the BNSF "notifie[d] the Board that it intend[ed] to abandon its line of railroad between BNSF M.P. 343.55 in Columbus, Kansas and M.P. 315.30 in Carthage, Missouri, a total distance of 28.25 miles." (*See id.*)

78. BNSF certified to the STB that "no local traffic has moved over the line for at least 2 years [and] there is no overhead traffic to be rerouted." (*See id.*)

79. BNSF also, however, acknowledged that "[o]n part of the properties involved, title considerations may affect the conveyance of the land for use other than railroad purposes." (*See id.*)

80. On May 10, 2002, the City of Carl Junction (a municipality located on the Kansas/Missouri line) and the Joplin Trail Coalition ("JTC") (a non-profit in the State of Missouri), represented by the same counsel, jointly filed a request for the issuance of a Notice of Interim Trail Use ("NITU") pursuant to 16 U.S.C. § 1247(d) of the National Trails System Act for the Missouri portion of the right-of-way between milepost 331.23 at the State line and milepost 315.30 near Carthage, a distance of 15.93 miles ("Missouri line"). (*See*, Comments on behalf of City of Carl Junction and JTC, a copy of which is attached as "Exhibit LL.")

81. On May 20, 2002, the JTC filed a request for the issuance of a NITU for the Kansas portion of the right-of-way between milepost 343.55 at Columbus and milepost 331.23 at the State line, a distance of 12.32 miles ("Kansas line"). (A copy of

the Statement of Good Cause on behalf of Joplin Trail Coalition is attached as "Exhibit MM.")

82. On June 21, 2002, the STB issued a Decision that granted the commenters' request for issuance of a NITU for both the Missouri line and the Kansas line. The trail use negotiating period was scheduled to expire on December 19, 2002 (A copy of the June 21, 2002 Decision is attached as "Exhibit NN.")

83. On November 22, 2002, BNSF filed a request for a 180-day extension of the trail use negotiation period until June 17, 2003. (A copy of the November 22, 2002 filing is attached as "Exhibit OO.")

84. On December 10, 2002, the Cherokee County (Kansas) Landowner's Association[3] ("Association") filed a statement in opposition to an extension of the trail use negotiating period, which set forth "three compelling reasons why the right-of-way in question should be allowed to revert to the adjacent landowners rather than be approved for interim trail use." (A copy of this December 10, 2002 statement is attached as "Exhibit PP.")

85. First, the Association voiced their concern about the lack of success experienced by rails-to-trails in their area:

> After discussing this issue with several landowners in other southeast Kansas counties who currently own property adjacent to rights-of-way having interim trail use, all reported identical results. Namely, that trail groups lack the significant amount of funding, manpower, and quite frankly, motivation, required to develop and properly maintain the trails they control. (*See id.*)

[3] The Association was composed of over sixty individuals owning property adjacent to the right-of-way.

86. Common problems experienced by other landowners included "inadequate or no police protection by the trail group," "increased liability risks for adjacent landowners," littering and vandalism," "poaching," "bisection of property," removal from tax rolls," and failure to develop or maintain the trail." (*See id.*)

87. "Second, the Joplin Trails Coalition (the group petitioning for interim trail use) lacks the financial and human resources that will be required to: (1) develop the trail to useable status, (2) comply with Kansas state law regarding interim trail use, and (3) comply with Cherokee County Kansas bonding requirements for recreational trails." (*See id.*)

88. Because of the problems the inadequately financed and maintained recreational trails had created for both adjacent landowners and local governments, the Kansas legislature passed the Kansas Recreational Trails Act of 1996 (K.S.A. 58-3211 to 58-3216) imposing the duties to weed and control litter along the trail, provide for law enforcement on the trail, and notify all adjacent landowners of an intent to build a trail adjacent to their property. (*See id.*)

89. The BNSF filed a response to the Association's statement in opposition arguing that "it believes that a trail may still be accommodated while taking into account the concerns of the Association." (December 18, 2002 letter from BNSF to the STB, a copy of which is attached as "Exhibit QQ").

90. In response, the STB stated that "[u]nder the Trails Act and our implementing rules, if a prospective trail user requests a trail condition and the carrier indicates its willingness to negotiate a trail agreement, the Board's role under the Trails Act is largely ministerial ....If the railroad indicates its willingness to negotiate, the Board

must then issue a notice of interim trail use." (See, December 19, 2002 Decision of the STB, Docket No. AB-6 (Sub-No. 395X), a copy of which is attached as "Exhibit RR.")

91. Accordingly, the trail use negotiating period was extended to June 17, 2003. (*See id.*)

**The STB Converted the Abandoned Right-of-Way To Trail Use Under the Trails Act**

92. Pursuant to this NITU and the Trails Act, on June 16, 2003, a Trail Use Agreement was reached between BNSF and the JTC for the Missouri segment of the right of way.

93. The Agreement purports to transfer BNSF's interests to the JTC, and upon notice, to the City of Carl Junction, Missouri, provided the City execute written acknowledgment of the Agreement and agreed to be bound to its terms.

94. On October 20, 2003, the BNSF posted a letter to the STB advising of the consummation of a Trail Use Agreement with the JTC. The BNSF further represented that "[t]he remainder of the right of way has been salvaged and BNSF's discontinuance of the subject line will be consummated on October 31, 2003." (A copy of this October 20, 2003 letter is attached as "Exhibit SS").

95. Effective October 31, 2003, the BNSF discontinued its operations on the line and the JTC, a Missouri non-profit corporation, is operating a public-access recreational trail on the abandoned line in Missouri.

96. On or about September 16, 2004, the BNSF entered into a Quitclaim Deed with the Joplin Trail Coalition, conveying BNSF's right, title and interest to any and all rights of way, reservations and easements of record between the Missouri-Kansas state line and Milepost 315.30 near Carthage, Jasper County, Missouri.

97. The Joplin Trail Coalition is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad.

98. The Plaintiffs own fee simple estate in the land in Jasper County, Missouri and Cherokee County, Kansas that adjoin and underlie a portion of the railroad right-of-way originally established as an easement for the use of the Memphis, Carthage and Northwestern Railroad and the Missouri and Western Railroad and was subject to the June 21, 2002 NITU.

99. The Plaintiffs owned this property on June 21, 2002, (A copy of the instruments by which Plaintiff acquired their property are attached as Exhibits A - GG).

**<u>The Federal Trails Act Operated To Take The Plaintiffs' Land For Which "Just Compensation" Is Due</u>**

100. The Trails Act provides that "in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16. U.S.C. 1247(d).

101. But for operation of the Trails Act, the Plaintiffs would have the exclusive right to physical ownership, possession and use of their property free of any present or future easement for recreational trail use and free of any easement for current or future railroad use.

102. Creating an easement for a current or future public access recreational trail across the Plaintiffs' land and appropriating a new easement for possible future railroad use has taken from the Plaintiffs not just the value of the land physically appropriated for

this rail-trail corridor but has also greatly diminished the value of the Plaintiffs' adjoining property.

103. The United States Constitution requires the federal government to pay "just compensation" to all those property owners holding fee title to property that was subject to the NITU. *Preseault v. United States*, 494 U.S. 1 (1990) (*Preseault I*); *Preseault v. United States*, 100 F. 3d 1525 (Fed. Cir. 1996) (*Preseault II*); *Towes v. United States*, 376 F. 3d 1371, 1376 (Fed. Cir. 2004).

104. The easement granted to the Memphis Carthage and North Western Rail Road Company and the Missouri and Western Railroad Company (and their subsequent successors-in-interest, including Burlington Northern and Santa Fe Railway Company) did not grant to the railroad or any other person or entity the right to use the Plaintiffs' property for a public-access recreational trail.

105. Under the terms of the Condemnation Order and under Missouri and Kansas law, when operation of a railroad was abandoned over the Plaintiffs' property, the easements were abandoned and the Plaintiffs regained the right to use and possess their land free of any easement and to exclude others from their land.

106. The Trails Act allows the conversion of abandoned railroad rights-of-way for use as interim public-access recreational trails and preserves the right-of-way for possible future reactivation as a railroad. The Trails Act further provides that such conversion to trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247 (d).

107. The Plaintiffs' property had never been subject to an easement allowing the public to use the Plaintiffs' property for a recreational trail.

108. The Plaintiffs' property had never been subject to a general right of the public to cross or make use of the Plaintiffs' property for any purpose.

109. Any easement for operation of a railroad across the Plaintiffs' property had been abandoned and extinguished and the Plaintiffs enjoyed under Missouri and Kansas law the right to use and occupy their land free of any present or future easement for operation of a railroad across their land.

110. The federal government, through operation of the Trails Act and issuance of the NITU, has: (a) forestalled or taken from the Plaintiffs their state law "reversionary"[4] right to their property; (b) appropriated an easement across the Plaintiffs' property for an interim public-access recreational trail; and, (c) appropriated an easement for a potential future railroad right-of-way across the Plaintiffs' property and took the Plaintiffs' rights they have under state law to the exclusive use and physical occupation of their land.

111. This taking of the Plaintiffs' property occurred when the STB issued the NITU on June 21, 2008. *Caldwell v. United States*, 391 F.3d 1226, 1236 (Fed. Cir. 2004); *Barclay v. United States*, 443 F.3d 1368, 1378 (Fed. Cir. 2006); consolidated on appeal with *Renewal Body Works, Inc. v. United States*.

112. The United States has neither instituted any condemnation proceeding against Plaintiffs or the other class members, nor paid, nor offered to pay, the Plaintiffs for the property it has taken from them.

---

[4] *See* note 1 regarding Plaintiff's use of the term "reversionary" or "reversion" in this Complaint. *See also, Towes v. United States*, 376 F. 3d 1371, 1376 (2004).

113. The actions of the United States have resulted in the taking of Plaintiffs' property by reason of the direct physical taking of the Plaintiffs' land and by reason of the damage to Plaintiffs' remaining adjacent properties which have and will suffer a loss of privacy and other severance damages as a result of the proximity of the public on the adjoining trail. The remaining property is also less valuable by reason of being divided into smaller parcels by reason of the easement for trail use and adjoining an easement for possible future railroad use.

WHEREFORE, Plaintiffs respectfully requests a judgment in their favor and in favor of similarly situated land owners in Missouri and Kansas:

1. Certification of this matter as an opt-in class action pursuant to RCFC 23. Awarding Plaintiffs the full fair market value of the property taken by the United States on June 21, 2002, including any "severance damages" suffered by the Plaintiffs in loss of value to the Plaintiffs' remaining property not actually physically taken but affected by the taking;

2. Compensation for the delay between the date of the government's taking of the Plaintiffs' property and the actual date when the government finally pays "just compensation" to the Plaintiffs;

3. Paying the Plaintiffs' costs and attorneys' fees incurred pursuant to The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654(c) (2000), which provides that just compensation includes "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

4. Such further relief as this Court may deem just and proper.

Respectfully submitted,

LATHROP & GAGE, L.C.

Date: September 12, 2008

By: /s/ Mark F. (Thor) Hearne, II

MARK F. (THOR) HEARNE, II
LINDSAY S.C. BRINTON
MEGHAN S. LARGENT
The Equitable Building
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
Telephone: (314) 613-2500
Facsimile: (314) 613-2550
(Mailing Address)

Franklin Square, Suite 1050 East
1300 Eye Street, NW
Washington, D.C. 20005
Telephone: (202) 962-0032
Facsimile: (202) 962-0357

Attorney for Plaintiff