**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| EARLEEN FAUVERGUE, et al.,<br><br>For Themselves and As Representatives of a Class of Similarly Situated Persons,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 08-431 |

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO GOVERNMENT'S MOTION IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

LATHROP & GAGE, L.C.

MARK F. (THOR) HEARNE, II
LINDSAY S.C. BRINTON
MEGHAN S. LARGENT
The Equitable Building
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
Telephone: (314) 613-2500
Facsimile: (314) 613-2550
(Mailing Address)

Franklin Square, Suite 1050 East
1300 Eye Street, NW
Washington, D.C. 20005
Telephone: (202) 962-0032
Facsimile: (202) 962-0357

Attorney for Plaintiff

**TABLE OF CONTENTS**


I. INTRODUCTION ....................................................................................................1

II. ARGUMENT..........................................................................................................4

A. Plaintiffs' Motion for Class Certification Satisfies the Numerosity Factor. ............5

B. Plaintiffs' Motion for Class Certification Satisfies the Commonality and Typicality Requirements of RCFC 23. ...................................................................8

C. Plaintiffs' Motion for Class Certification Satisfies the Superiority Requirement of RCFC 23. ........................................................................10

D. The Government Has Acted on Grounds Applicable to the Whole Class............12

E. The Proposed Class Members are NOT Adequately Represented By Other Cases or Other Counsel..........................................................................13

F. Plaintiffs' Motion for Class Certification is NOT an Attempt to "Evade the Statute of Limitations"..........................................................................13

III. CONCLUSION.....................................................................................................14

# TABLE OF AUTHORITIES

## Cases

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) 4
*Barclay v. United States*, 443 F.3d 1368 (2006) ........ 2, 4, 12
*Barnes v. United States*, 68 Fed. Cl. 492 (2005) ........ 5
*Beecham v. United States*, No. 08-435L ........ 2
*Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004) ........ 2, 4, 12
*Carl Junction v. United States*, No. 05-4L ........ 2
*Crown Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) .. 4
*Curry v. United States*, 81 Fed. Cl. 328 (2008) ........ 5
*Hance v. United States*, No. 05-3L ........ 2
*Illig v. United States*, 67 Fed.Cl. 47 (Fed.Cl. 2005) ........ 3, 6
*Jones v. United States*, No. 08-457 ........ 2, 11
*Ladd v. United States*, No. 07-271 ........ 3, 6, 7
*Miller v. United States*, No. 03-2489L ........ 3, 6
*Quinault Allottee Association v. United States*, 197 Ct. Cl. 134, 453 F.2d 1272 (1972)... 3, 4, 8, 9, 10
*Renewal Body Works, Inc. v. United States*, 443 F.3d 1368 (2006) ........ 2, 4, 12
*Rogers v. United States*, No. 07-273 ........ 3, 5, 7, 9
*Shira v. United States*, No. 08-453L ........ 2
*Winder v. United States*, No. 08-324 ........ 2, 11

## Other Authorities

16 U.S.C. § 1247 ........ 2
28 USC § 2501 ........ 4, 14

## I. INTRODUCTION

In hearings before the United States Senate, Senator Burr of South Carolina, the ranking member of the National Parks Subcommittee, criticized the Justice Department for the manner in which it sought to use the statue of limitations to defeat a property owner's right to receive "just compensation" for the government's taking of their land in Trails Act taking cases. Senator Burr said,

> Mr. Chairman, my last statement's not a question, but it is a statement. I understand it's appropriate for the Park Service to come in and say that the issue of Rails-to-Trails and the clarification that's needed is not a National Parks Service issue, and I can appreciate that.
>
> I hope you will take back to the individuals at Justice Department that have made this determination that I take very seriously a takings and I think that when somebody's land is taken there has to be compensation for that.
>
> I'm not an expert on what limitations, statute of limitations we've got currently or what triggers the clock starting. I have always found regardless of what I look at the federal government's clock starts well before usually people on the other side and it's only because we get to interpret and they have to guess.
>
> I truly believe that we have people that were engaged in what they thought was an honest negotiation. If for some reason we found a technical reason to run the clock out and now the position from the Justice Department is "oops, so sorry, you missed out on compensation." That's not the American way.
>
> So, you might send a message to the Justice Department. I would advise finding a way to settle this. If not, legislatively we will accommodate the needs of those property owners who have not been compensated.
>
> And, I'm sorry to use you on your birthday as a telegraph to the Justice Department, but I think you can go back and tell them in the spirit that I gave this in much more so than I can.[1]

[1] The April 23, 2008 hearing before the Subcommittee on National Park is available online: http://energy.senate.gov/public/index.cfm?FuseAction=Hearings.Hearing&Hearing_ID=52b74f78-a8ae-3828-9f86-b5249ed1f624. Senator Burr's remarks were in support of legislation, SB 2073, that would provide "just compensation" to landowners denied compensation by the Justice Department's retroactive application of the *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004) decision, which changed the date when the statute of limitations began to run.

The Government's present motion opposing class certification in this case is yet another example of the exact same strategy that Senator Burr condemned as "not the American way."

A single Notice of Interim Trail Use ("NITU") issued by the federal Surface Transportation Board ("STB"), pursuant to the Trail Act,[2] takes the property interest of all those landowners that own the fee estate in the land that had been subject to the otherwise abandoned railroad easement. The Federal Circuit has held that the taking occurs upon the issuance of the NITU. (See, *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004), *Barclay v. United States*, 443 F.3d 1368 (2006), and *Renewal Body Works, Inc. v. United States*, 443 F.3d 1368 (2006)). This single event – the STB's issuance of the NITU – is common to all the affected landowners and is the "single trigger" upon which the federal government's obligation to pay "just compensation" turns.

In the immediate case, the NITU was issued on June 21, 2002 for the entire 25 mile long right of way. Some of the landowners whose property was taken by the issuance of this NITU have individually filed claims for compensation in other cases.[3] The landowners in the *Carl Junction* and *Nance* cases have already been paid and the Justice Department stipulated to the government's obligation to pay "just compensation." None of these other cases involving this NITU are class actions and none sought to be certified as a class action.

---

[2] 16 U.S.C. § 1247(d).

[3] See, *Winder v. United States*, No. 08-324, *Beecham v. United States*, No. 08-435L, *Shira v. United States*, No. 08-453L, *Jones v. United States*, No. 08-457, *Carl Junction v. United States*, No. 05-4L, and *Hance v. United States*, No. 05-3L.

In Trails Act taking cases, the Justice Department typically does not oppose class certification when it is sought.[4] Class certification is the most effective means by which to resolve claims of multiple property owners whose land is all subject to the same NITU. Likewise, class certification is the most efficient way to make sure that each of the property owners can participate.[5]

Yet, in this case, the Justice Department departs from their past practice of not opposing class certification and objects to class certification in this case.[6] They filed an objection which, while couched in terms of the *Quinault* factors, is really driven by the government's underlying objective of denying landowners the opportunity to make a Fifth Amendment claim for "just compensation" for the government's taking of their land. As such, the government's opposition to class certification is a tactical device to achieve the result of allowing the government to take those citizens' land while avoiding their Constitutional obligation to pay "just compensation."

The Justice Department knows that absent a landowner's ability to participate as an opt-in class member in this case pursuant to Rule 23, the government would be able to use 28 U.S.C.

[4] *See e.g.*, Government's Response to Plaintiffs' Motion to Certify Class Action filed in *Miller v. United States*, No. 03-2489L (March 22, 2004) (a copy of which is attached as "Exhibit A"); Government's Response to Plaintiffs' Motion to Certify Class Action filed in *Rogers v. United States*, No. 07-273 (September 7, 2007) (a copy of which is attached as "Exhibit B"); and Government's Response to Plaintiffs' Motion to Certify Class Action filed in *Ladd v. United States*, No. 07-271 (November 8, 2007) (a copy of which is attached as "Exhibit C").

[5] See¸ Judge Bruggink's Order granting class certification in *Miller* (April 20, 2004) (a copy of which is attached as "Exhibit D").

[6] Only in those cases where the statute of limitations would allow the government to escape liability does the government oppose class certification. Plaintiffs' counsel knows of only one rails-to-trails case where the government has opposed class certification – *Illig v. United States*, 67 Fed.Cl. 47 (Fed.Cl. 2005). In *Illig*, the government opposed class certification because doing so would have denied all uncompensated property owners the ability to make a claim for compensation. The Court, however, dismissed this effort and granted Plaintiffs class certification.

§ 2501 to argue that under *Caldwell, Barclay,* and *Renewal,* the statute of limitations ran on June 21, 2008. The government would use their argument to escape the obligation to pay the landowner for land that the government had (admittedly in the *Carl Junction* and *Nance* cases) taken from them.[7]

As such, the government's opposition to class certification is not a good faith effort to advance the cause of justice, but is rather a tactical device to deny more than 150 Missouri and Kansas citizens and landowners a right to even make a claim for compensation. The Justice Department is again seeking to do what has been criticized by Senator Burr and other members of the United States Senate. Their tactic should not be embraced by this Court, and as we show below, it is without legal merit.

We respond below to the specific *Quinault Allottee Association v. United States*, 197 Ct. Cl. 134, 453 F.2d 1272 (1972) factors and each of the government's individual arguments.

## II. ARGUMENT

As the government correctly noted, the Court of Federal Claims has grouped the requirements of Rule 23(a) and 23(b) into five categories or elements: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; and (5) superiority. In addition, RCFC 23(b)(1) requires a plaintiff seeking class certification to show that "the United States has acted or refused to act on grounds generally applicable to the entire class." The Plaintiffs have shown in their principle motion how this case satisfied each of these factors. Plaintiffs now respond to the

[7] This potential argument by the government is not entirely correct. Absent the filing of this action, the statute of limitations under 28 USC § 2501 would have run on June 21, 2008 as per the Federal Circuit's decision in *Caldwell*, *Barclay*, and *Renewal*. However, the filing of this case on June 12, 2008 tolled the statute. See, *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and *Crown Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). Thus, should this Court deny Plaintiffs' motion for class certification, the statute would not run until nine days after this order becomes final.

government's arguments in the same order as presented in the government's Motion in Opposition.

Plaintiffs first note, however, that the government's Motion in Opposition is based on three incorrect premises: (1) That this case involves only one plaintiff; (2) That there are only 75 potential class members; and (3) That the potential class members that Plaintiffs seek to represent are already represented by other counsel and have already filed their claims for compensation.

The government is wrong on all three points. First, the First Amended Complaint includes claims filed by sixteen Plaintiffs who own land in Kansas and Missouri. Second, there are more than 150 similarly situated landowners that would be eligible to opt-in as new class members. Lastly, <u>none</u> of the more than 150 potential class members has filed a claim for compensation and none of these landowners is currently represented by other counsel and none of these more than 150 other landowners has been paid for the government's taking of their land.

A. <u>Plaintiffs' Motion for Class Certification Satisfies the Numerosity Factor.</u>

Plaintiffs' proposed class consists of over 150 potential class members owning land under the 25 mile long former BNSF right of way between Columbus, Kansas and Carthage, Missouri. In the government's Motion in Opposition, they list two other cases wherein the numerosity requirement had been satisfied – *Barnes v. United States*, 68 Fed. Cl. 492, 493-95 (2005) (5,000 class members) and *Curry v. United States*, 81 Fed. Cl. 328, 332 (2008) (10,000 class members). Mtn. in Opp. at 12. Even though these cases may reflect other cases where this requirement is met, they are by no means the norm. Further, they are not even rails-to-trails cases. A class action need not have thousands of potential class members to satisfy the numerosity requirement.

Three recent Trails Act takings cases represent a much more accurate example of cases certified as a class action in the rails-to-trails context. In *Rogers v. United States*, No. 07-273,

the Plaintiffs requested, and the government did not oppose, the granting of class certification for a twelve mile stretch of abandoned railroad corridor which involved "more than 100 fee owners." *See*, Exhibit B. Subsequently, a total of 336 landowners owning property upon which the twelve mile long abandoned railroad easement had once been located joined as opt-in class members. In *Miller v. United States*, No. 03-2489L, the Plaintiffs requested, and the government did not oppose, the granting of class certification for a two mile stretch of abandoned railroad corridor which involved "approximately 125 present-day property owners." *See*, Exhibit A. In *Miller*, a total of 97 property owners participated and were ultimately compensated. In *Ladd v. United States*, No. 07-271, the Plaintiffs requested, and the government did not oppose, the granting of class certification for an approximately seventy-six mile stretch of abandoned railroad corridor which involved "approximately 100 individuals or entities who own fee parcels." *See*, Exhibit C. In *Illig v. United States*, the government opposed class certification for tactical statute of limitations reasons, similar to the tactical reason the government opposes class certification in this case. Judge Bruggink rejected the government's argument and granted Rule 23 class certification for a case with approximately 100 landowners.

In Plaintiffs' Motion for Class Certification, they alleged that the potential class "likely exceeds seventy-five or more members" who own property along the 28.25 mile stretch of abandoned railroad corridor. However, after title companies in the area performed a more thorough estimate of the number of potential class members, it appears that there are over 150 or more potential class members eligible to make a claim for compensation. This fact is noted in Plaintiffs' First Amended Complaint. This number of individual claims – over 150 – clearly fits

within the type of Trails Act takings cases to which the government does not object and this Court routinely orders to be certified as a class under RCFC 23. *See*, Exhibits A through E.[8]

The government argues that "43.6% of the subject right-of-way is located in Kansas…this segment of the subject right-of-way was not subject to railbanking and interim trail use" and, thus, the claims that relate to the Kansas segment of the subject right-of-way must be excluded from any estimate of the size of the class." Mtn. in Opp. at 13.

This argument is both wrong and wholly inconsistent with the government's position in other similar Trails Act taking cases such as *Ladd*. *Ladd* involves the same situation with a class of owners whose land has been taken “temporarily” and others whose land is taken permanently.[9] The *Ladd* "temporary" takings claims are similar to those claims by Kansas property owners in this case. In both cases, because of the issuance of the NITU, which was the “single trigger,” the property owners were denied the right to enjoy, make use of, or enter their property, and thus, their property rights were "taken" for a period of time. In the government's response to class certification in *Ladd*, the government did not distinguish between property owners who had "temporary" or "permanent" claims to compensation, but rather, consented to allowing all eligible property owners to opt-in to the same class. In *Ladd*, the Court has addressed the government’s liability for both the owners whose land was temporarily taken and those whose land was permanently taken in the same cross-motions for summary judgment. The Plaintiffs would anticipate a similar approach to resolving the issue of liability in this case.

---

[8] Exhibit “E” is a copy of Judge Williams November 21, 2007 Order Granting Plaintiffs’ Motion to Certify Class Action in *Rogers*.

[9] Whether a takings claim is "temporary" or "permanent" is not an issue that needs to be pled in complaint, but rather, is an issue going to the calculation of damages.

The government next argues that "Indeed, based on Plaintiff's estimate that the class will 'likely exceed seventy-five or more members,' the fact that approximately 110 plaintiffs have filed separate claims involving property in Missouri suggests that there are few, if any, remaining landowners who might qualify as members of the class proposed by the Plaintiff." Mtn. in Opp. at 14.

The government is wrong. In Plaintiff's original complaint, she did allege that there were likely seventy-five or more members. This amount was calculated by <u>excluding</u> those members in the cases already filed at that time. In Plaintiffs' First Amended Complaint, Plaintiffs allege their belief that there are over 150 potential class members in Kansas and Missouri. This number, once again, does <u>not</u> include any of those property owners who have already filed claims for compensation in one of the previously non-class action cases.

Based on precedent of this Court, this case, involving more than 150 otherwise uncompensated land owners similarly situated to the Plaintiffs, clearly satisfies the numerosity requirement of the *Quinault* test.

B. <u>Plaintiffs' Motion for Class Certification Satisfies the Commonality and Typicality Requirements of RCFC 23.</u>

As correctly stated by the government, for this Court to certify a class, there must be "questions of law or fact common to the class" and the claims of the representative parties must be "typical of the claims for the class." RCFC 23(a)(2)-(3).

The government's argument on this issue starts with a misstatement. The government states, "Fauvergue alleges that the operation of the Trails Act resulted in a <u>permanent</u> physical taking of her property in Missouri." Mtn. in Opp. at 16 (emphasis supplied). While it is true that Ms. Fauvergue has alleged a physical taking of her property and that taking is permanent, the word "permanent" does not appear anywhere in her complaint, nor has Ms. Fauvergue

differentiated between a "permanent" and "temporary" takings claim as a basis upon which she is similarly situated with the other landowners whose property is subject to the same NITU.

Like every other rails-to-trail taking case, the principal legal issue in this case is whether the STB's issuance of a NITU resulted in a taking of the landowners' property for which they are due "just compensation" under the Fifth Amendment. *See*, Exh. E, Order granting class certification in *Rogers*. This legal issue is common to all named plaintiffs and potential class members.

The government then notes the difference between the trail negotiations in Kansas and Missouri. The government contends that "the only taking claim that could be alleged based on the operation of the Trails Act with respect to the Kansas segment of the subject right-of-way is a temporary regulatory takings claim." Mtn. in Opp. at 17-18. For the next three pages the government proceeds to argue the merits over whether the Kansas landowners would have a regulatory or physical takings claim. This is utterly irrelevant. None of the Plaintiffs – in Kansas or Missouri – are alleging a "regulatory" takings claim. Furthermore, if the government wants to argue the merits of Plaintiffs' claims – whether they are "regulatory" or "permanent" – this is something they are free to raise in a summary judgment motion. At this point, however, the Plaintiffs have simply alleged a Fifth Amendment taking claim that turns on a single government action – the STB's issuance of a NITU – which is common to all potential Plaintiffs. The government's anticipated argument that for some of the Plaintiffs this is only a "regulatory" taking is irrelevant to the question of class certification.[10]

[10] Even if the Plaintiffs argued a "regulatory" taking claim, that would still be common to the class members and would not prevent this from satisfying the second *Quinault* test.

As previously noted, the principal legal issue – whether the STB's June 21, 2002 NITU is a compensable taking under the Fifth Amendment – is common to all Plaintiffs. Whether the Plaintiffs have a "temporary" or "permanent" takings claim is a question to be raised during the damages stage of litigation.

Likewise, the named Plaintiffs' claims are "typical" of those in the class. The government's initial argument that Ms. Fauvergue's claim was not "typical" of the prospective Kansas class members is hereby rendered moot by the filing of Plaintiffs' First Amended Complaint. Plaintiffs' First Amended Complaint includes sixteen named Plaintiffs, ten of which on June 21, 2002, owned land in Cherokee County, Kansas abutting or underlying the abandoned BNSF railroad right of way. These Kansas landowners clearly have claims typical to those of other prospective Kansas class members.

In *Quinault*, the Court held that the difference in monetary value of damages to which each individual class member is entitled does not defeat Rule 23 opt-in class certification.[11] In every class action Trails Act taking case, the compensation that the government owes each individual landowner is different. This has never been held to defeat class certification and, indeed, if it were there could never be any Trails Act taking case which qualifies for Rule 23 class certification.

Thus, it's clear that Plaintiffs' Motion for Class Certification satisfies both the "commonality" and "typicality" requirements of RCFC 23.

C. Plaintiffs' Motion for Class Certification Satisfies the Superiority Requirement of RCFC 23.

For the Court to certify a class action, it must find that the proposed class action "is superior to other available methods for the fair and efficient adjudicating of the controversy."

[11] *Quinault*, 197 Ct. Cl. at 1277.

RCFC 23(b)(2). In this case, class certification is far superior to having countless individual claims brought in separate actions.

The government's argument in opposition to the "superiority" requirement of RCFC 23 is once again based upon a mistaken premise – that the potential class members which the Plaintiffs seek to represent are the same landowners who have already filed claims for compensation in one of the already pending Trails Act cases. Again, this premise is incorrect. The more than 150 potential class members are not currently represented by other counsel, and thus, the government's point on this issue is rendered moot.

The government also argues that "The filing of these other lawsuits also demonstrates that contrary to Plaintiff's assertion, a class action is not the only viable way for potential class members to bring their claims." Mtn. in Opp. at 20. What the government fails to explain, however, is that <u>none</u> of these other lawsuits include anywhere near 150 plaintiffs and they do not include the potential class members which Plaintiffs in this case seek to represent. *Winder v. United States*, the largest of these cases, involves approximately 51 plaintiffs and *Jones v. United States*, the smallest case, involves 1 plaintiff. Joinder of over 150 plaintiffs would be very difficult and impracticable. It would be much more efficient and cost-effective to proceed as a class action.

Further, it is a plaintiff's prerogative whether they choose to proceed as a class or a non-class. In *Winder* and the three other consolidated cases, the plaintiffs chose not to proceed as a class, but to proceed in four separately filed cases.

The Plaintiffs here, however, wish to proceed as a class action. Plaintiffs are seeking to represent those potential class members who are similarly situated and have a similar claim for compensation for the federal government's taking of their land. Plaintiffs believe, and have met

their burden of establishing, that class certification is superior to other methods for adjucating their claims.

D. The Government Has Acted on Grounds Applicable to the Whole Class

RCFC 23(b)(1) requires a plaintiff seeking class certification to show that "the United States has acted or refused to act on grounds generally applicable to the class."

The government contends that the Plaintiffs have not met their burden of satisfying this requirement because "the effect of the NITU on the Kansas segment is thus different than the effect on the Missouri segment." Mtn. in Opp. at 21.

Again, this is not only incorrect but it is also irrelevant. Under *Caldwell*, *Barclay*, and *Renewal*, the federal government's issuance of a NITU operates as the "single trigger" to cause a physical taking of a landowner's property. The subsequent events – whether a trail agreement is ultimately reached and a trail is ultimately built or whether trail negotiations ultimately fail – go to the extent of the damages caused by the "taking" – not whether a taking exists. Regardless of these subsequent events, the NITU has the same affect on both the Missouri and Kansas segments of the abandoned BNSF right of way – it operated to preclude the Plaintiffs' reversionary rights to their property and thus is a taking.

The differences between the trail negotiations over the Missouri segment and the Kansas segment are irrelevant to the issue of the government's liability. There was only one government action which constituted the taking – the June 21, 2002 NITU. It is this NITU that "operates a single trigger" to the takings claim. *Caldwell*, 391 F.3d at 1234. The government's issuance of this NITU had a common affect on the entire class, and thus, the Plaintiffs have satisfied their burden.

E. The Proposed Class Members are NOT Adequately Represented By Other Cases or Other Counsel

As previously noted, the proposed class includes more than 150 property owners in Kansas and Missouri who have not yet filed their claims for compensation. None of these potential class members are currently being represented by other counsel in a Trails Act takings claim.

The government's Motion in Opposition, however, misses this point. The government states "the 102 plaintiffs who have filed their claims separate from this proposed class action have chosen to be represented by other counsel, and should not be divested of that choice by Plaintiff's request that her counsel be designated as class counsel under RCFC 23(g)." Mtn. in Opp. at 22.

Plaintiffs do not propose to "divest" these other landowners of their counsel. The landowners in the other cases are free to proceed and counsel in those individual cases is free to represent those landowners. The named Plaintiff, Ms. Fauvergue, expressly chose not to be represented by the counsel handling the other cases but requested Mr. Hearne and his firm to represent her. Additionally, the 150 plus potential class members have also chosen to not "to be represented by other counsel." Plaintiffs seek to have this case certified as an opt-in class action to provide these more than 150 Missouri and Kansas property owners who have not yet filed a claim for compensation the opportunity to do so should they so choose.

F. Plaintiffs' Motion for Class Certification is NOT an Attempt to "Evade the Statute of Limitations"

The government's argument – that class certification is an attempt to "evade the statute of limitations" – betrays the government's true motive underlying their motion in opposition to class certification. The government is clearly trying to evade its obligation to compensate the Missouri and Kansas landowners for the taking of their property. The federal government took

more than 150 citizens' land and now, as Senator Burr said, it seeks to play "gotcha" and claim "oops, so sorry, you missed out on compensation." Well, as Senator Burr also said, "this is not the American way."

The crux of the government's argument on this issue is that the landowners in Missouri and Kansas were aware of the STB proceedings, and thus, they could have already filed their claim for compensation. While it may be true that the landowners realized that the BNSF had abandoned the right of way or that a trail was being constructed over the Missouri segment, it's by no means accurate to say that they these landowners were aware of the STB's NITU or that they could even file a claim for compensation. Many of these landowners are very elderly and do not have access to the internet and do not make a practice of reading the STB's docket. Neither the government, the railroad, nor the trail group ever provided notice to these landowners telling them of the STB's NITU that took their land.

Moreover, the government's argument is utterly irrelevant. Ms. Fauvergue filed her claim for compensation on June 9, 2008. This is without question within the statute of limitations period as provided by 28 USC § 2501. Ms. Fauvergue's complaint was filed for herself and these other similarly situated landowners in Kansas and Missouri.

## III. CONCLUSION

Under the Fifth Amendment to the United States Constitution, a landowner is owed "just compensation" when their land is "taken" by the United States government. While the former Assistant Attorney General Thomas L. Sansonetti has said that the Justice Department seeks to "ensure that truly deserving landowners receive just compensation in as expeditious manner as

possible,"[12] their present argument proceeds in a contrary direction, employing the strategy criticized by Senator Burr.

Plaintiffs' motion for class certification clearly meets the requirements of RCFC 23(a) and 23(b), and therefore, they respectfully request this Court grant the motion for class certification for all similarly situated landowners whose land in Cherokee County, Kansas and Jasper County, Missouri, was subject to the NITU that the STB issued on June 21, 2002.

Respectfully submitted,

LATHROP & GAGE, L.C.

Date: September 12, 2008

By: /s/ Mark F. (Thor) Hearne, II
MARK F. (THOR) HEARNE, II
LINDSAY S.C. BRINTON
MEGHAN S. LARGENT
The Equitable Building
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
Telephone: (314) 613-2500
Facsimile: (314) 613-2550
(Mailing Address)

Franklin Square, Suite 1050 East
1300 Eye Street, NW
Washington, D.C. 20005
Telephone: (202) 962-0032
Facsimile: (202) 962-0357

Attorney for Plaintiff

[12] The testimony of Assistant Attorney General Thomas L. Sansonetti can be found online at: http://commdocs.house.gov/committees/judiciary/hju80320.000/hju80320_0f.htm.