IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DIANNE J. MILLER, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 03-2489L<br>Senior Judge Eric Bruggink |

RESPONSE TO PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION

Comes now DEFENDANT, UNITED STATES OF AMERICA, in response to plaintiffs' Motion to Certify Class Action ("Pls.' Mot."), dated March 3, 2004. In their motion, plaintiffs seek to certify an opt-in class action consisting of "fee owners of real property located in St. Louis County, Missouri once traversed by the Kirkwood Industrial Lead and/or Carondelet Branch of the Missouri Pacific Railroad. . . ." Pls.' Mot. at 1.

Plaintiffs submit a document entitled "Donation and Purchase and Sale Agreement" ("Agreement"), which was signed by Union Pacific Railroad Company and Trailnet, Inc. on July 26, 2001. See Pls.' Ex. 3. The Agreement appears to pertain to a 2.034-mile section of the railroad corridor. Plaintiffs also submit a Decision and Notice of Interim Trail Use or Abandonment ("NITU"), dated August 18, 1999, which appears to pertain to the same corridor section. See Pls.' Ex. 6. Plaintiffs estimate that there are approximately 125 present-day property owners along the 2.034-mile corridor. See Pls.' Mot. at 1.



Exhibit A

The NITU covers a 2.18-mile section of the corridor, between mileposts 13.62 and 15.80. See Pls.' Ex. 6. The Agreement only covers a 2.034-mile section of the corridor, between mileposts 13.766 and 15.80. See Pls.' Ex. 3. This class should, therefore, be open only to those individuals who owned a fee simple along the subject corridor between mileposts 13.766 and 15.80.

Defendant has reviewed plaintiffs' motion and does not oppose the granting of that motion.

Dated: March 22, 2004

Respectfully submitted,
THOMAS L. SANSONETTI

Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

WILLIAM J. SHAPIRO
Trial Attorney
General Litigation Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Tele: (202) 305-0479
Fax: (202) 305-0506

Attorney for Defendant

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STEPHEN J. ROGERS, et. al. | ) | |
| | ) | Hon. Mary Ellen Coster Williams |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07-273 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**RESPONSE TO PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION**

Defendant, United States of America, herein responds to Plaintiffs' Motion to Certify Class Action ("Pls.' Mot.") and Plaintiffs' Memorandum in Support of Motion to Certify Class Action ("Pls.' Mem."), dated August 21, 2007. In their motion, plaintiffs seek to certify an opt-in class "with themselves as representative parties for that class of similarly situated individuals or entities that held fee title to any land in Sarasota County, Florida which is now encumbered by the easements created by reason of [the] Trails Act and the April 2, 2004 [Notice of Interim Trail Use ("NITU")]." Pls.' Mem. at 1. With their Amended Complaint, plaintiffs submitted a copy of the NITU dated April 2, 2004, which appears to apply to the same 12-mile long corridor described in their Motion to Certify Class Action. Compare Plaintiffs' Amended Complaint, Exh. B ("Pls.' Am. Compl.") with Pls.' Mot. at 1-2. Plaintiffs estimate that there are now "more than 100 fee owners" with property abutting the rail corridor covered by the April 2, 2004 NITU. See Pls.' Mot. at 2.



Exhibit
B

Defendant has reviewed plaintiffs' motion and memorandum and, based on prior precedent that has found class certification to be appropriate in "rails-to-trails" takings cases, does not oppose the granting of that motion.

Dated: September 7, 2007.

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division

s/ Mark T. Romley
Mark T. Romley
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0458
Fax: (202) 305-0506

Of Counsel:

William Shapiro
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice

Evelyn Kitay
Surface Transportation Board
Washington, DC

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| JACK LADD and MARIE LADD, et al., Plaintiffs, v. THE UNITED STATES OF AMERICA, Defendant. | No. 07-271 L<br>Honorable Robert H. Hodges, Jr. |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION**

On October 15, 2007, Plaintiffs filed their Motion to Certify Class Action Pursuant to Rule 23 RCFC ("Pls. Mot.") and Plaintiffs' Memorandum in Support of Motion to Certify Class Action ("Memorandum" or "Pls. Mem.") (collectively, the "Filings"). In their Filings, Plaintiffs seek to certify an opt-in class of "fee owners of property located in Cochise County, Arizona." Pls. Mem. at 1. Plaintiffs seek to bring the class action as "representative parties on behalf of all other landowners holding title to property in Cochise County, Arizona whose property has [allegedly] been taken or damaged as a result of the conversion of their property to a public-use recreational trail pursuant to the National Trails System Act and that Notice of Interim Trail Use ("NITU") issued by the Surface Transportation Board ("STB") on July 25, 2006 . . . ." Pls. Mot. at 1. Plaintiffs estimate "that there are approximately 100 individuals or entities who own fee parcels" that abut the portion of the rail corridor that is allegedly impacted by the July 25, 2006 NITU. Pls. Mem. at 13.

In some instances there are misstatements of law and fact contained in Plaintiffs' Filings. In other instances, the Filings contain statements without support to any evidence or law. In

Exhibit C

defense of the instant case, Defendant fully reserves its right to challenge any misstatements or unsupported statements made by Plaintiffs in their Filings. The unsupported and incorrect statements in the Filings include, but are not limited to, the following examples:

(a) Plaintiffs assert that their property "has been taken . . . as a result of the conversion of their property to a public-use recreational trail pursuant to the National Trails System Act and that Notice of Interim Trail Use ("NITU") issued by the Surface Transportation Board ("STB") on July 25, 2006...." Pls. Mot. at 1. To date, however, the railroad corridor has not been "converted" to a recreational trail. In fact, the negotiating period provided in the NITU has passed without an agreement and no discussions for conversion are currently ongoing. Thus, at most, Plaintiffs can assert a claim for only a temporary taking.

(b) Plaintiffs state that "the El Paso and Southwestern Railroad acquired an approximately 76 mile long easement across the Plaintiffs' property (the 'easement'). The easement was granted for the express purpose of the construction and operation of a railroad and not for any other purpose." Pl. Mem. at 1. Because Plaintiffs have not provided any evidence to support this statement and have not yet provided their initial disclosures pursuant to RCFC 26, Defendant has no way to determine if this statement is, in fact, accurate. Before any finding of liability, Plaintiffs must meet their burden of producing competent evidence that supports their allegation that the interest acquired by the El Paso and Southwestern Railroad, and its successors, along the entire corridor is an easement and that the easement is clearly and unequivocally limited to "construction and operation of a railroad and not for any other purpose."

(c) As a legal matter, Plaintiffs conclude that "whether a railroad has the right to use a specific strip of real estate for operation of a railroad – and what uses can be made of this real

estate pursuant to this right – is exclusively a question of the relevant state's real property law." Pls. Mem. at 2, n.1. This is not a correct statement of the law. There are, in fact, instances in which federal law governs the scope of the property interest acquired by a railroad. For example, the scope of easements granted pursuant to the General Railroad Right-of-Way Act of March 3, 1875, ch. 152, 18 Stat. 482 (codified as 43 U.S.C. §§ 934-939 (1982)), are governed by federal law. State of Idaho v. Oregon Short Line R.R. Co., 617 F. Supp. 207, 212 (D. Idaho 1985).

Notwithstanding the misstatements and unsupported statements contained in Plaintiffs' Memorandum – and while reserving its rights as set forth above – Defendant recognizes that prior precedent has found class certification to be appropriate in "rails-to-trails" takings cases. As such, Defendant does not oppose the granting of Plaintiffs' Motion to Certify a Class Action in this case.

November 8, 2007

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
Environmental & Natural Resources Division

/s/ Rachel A. Dougan

RACHEL A. DOUGAN
JAMES D. GETTE
Trial Attorneys
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, DC 20044-0663
Telephone: (202) 616-5082
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

Of Counsel:
ELLEN D. HANSON, General Counsel
EVELYN KITAY, Attorney
Surface Transportation Board
Office of General Counsel
395 E Street, SW
Washington, DC 20024

# In the United States Court of Federal Claims

No. 03-2489L
(Filed: April 20, 2004)

* * * * * * * * * * * * * * * * * * * * * *

DIANNE J. MILLER, ROBERT N. MILLER, and LISA M. SHANIKA, For Themselves and as Representatives of a Class of Similarly Situated Persons,

*Plaintiffs*,

v.

THE UNITED STATES,

*Defendant*.

* * * * * * * * * * * * * * * * * * * * * *

ORDER

Pending is plaintiffs' motion to certify this as a class action pursuant to Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiffs propose a class comprised of land owners in St. Louis County, Missouri, whose property has been taken as a result of the conversion of the Missouri Pacific Railroad a/k/a Union Pacific Railroad Kirkwood Industrial Lead and/or Carondelet Branch right-of-way to a public use trail pursuant to the National Trials Systems Act, 16 U.S.C. § 1247(d). Defendant does not contest class certification but requests that it be limited to landowners directly affected by the Donation and Purchase and Sale Agreement ("Agreement").

Pursuant to the status conference held April 19, 2004, we believe certification as an opt-in class under RCFC 23 is appropriate. The class shall consist of land owners in St. Louis County, Missouri, whose land is currently burdened by the Kirkwood Industrial Lead and/or Carondelet Branch Trail as specified in the Notice of Interim Trail Use or Abandonment dated August 18,

Exhibit D

1999, and who fall within the scope of the Agreement, namely, those owning fee interest in land along the subject corridor between mileposts 13.766 and 15.80.

The parties shall file a joint status report concerning notification of potential class members on or before May 11, 2004.

ERIC G. BRUGGINK
Judge

# In the United States Court of Federal Claims

**No. 07-273L**
**(Filed November 21, 2007)**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**STEPHEN J. and LINDA L. ROGERS, et al.,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION**

On August 21, 2007, Plaintiffs filed a motion to certify this as a class action pursuant to Rule 23 of the Rules of the United States Court of Federal Claims (RCFC). Plaintiffs requested this Court to:

> certify this action as a class action brought by Plaintiffs as representative parties on behalf of all other land owners holding fee title to property in Sarasota County, Florida whose property has been taken or damaged as a result of the conversion of the Venice Branch of the Seminole Gulf Railway to a public use trail pursuant to the National Trails System Act, 16 U.S.C. § 1547(d) ("Trails Act") and the Notice of Interim Trail Use ("NITU") issued by the Surface Transportation Board ("STB") on April 2, 2004.

Pl.'s Mot. at 1. Defendant did not oppose Plaintiff's motion. On November 8, 2007, the parties filed a joint motion with the court clarifying the definition of the class and submitting a proposed class certification order, a class notice, scheduling order, and entry of appearance.

This Court will only certify a class action where the prerequisites of RCFC 23 have been met. This Court's rules permit only opt-in class certifications, not opt-out classes. See, e.g., RCFC 23 Committee Notes to 2002 Revision.

Exhibit
E

**The Prerequisites of Rule 23(a) are Satisfied Here**

The Court may grant a motion to certify a class only when the prerequisites to a class action have been met:

> **Prerequisites to a Class Action.** One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

RCFC 23(a). As discussed below, each of these elements has been met here.

First, this Court will grant a motion for class certification only when the potential class "is so numerous that joinder of all members is impracticable." RCFC 23(a)(1 ). Based on Plaintiffs' representations drawn from an initial review of the records of the Sarasota County Tax Assessor and Record of Deeds and the work of a title company, Plaintiffs estimate that there are approximately 500 individuals or entities who owned property abutting or underlying the subject railroad corridor on April 2, 2004. This number of potential class members satisfies the numerosity requirement. See Favreau v. United States, 48 Fed. Cl. 774, 777 (2000) ("In this case, the prospective class of over 500 members meets the [numerosity] requirement.").

Second, class certification is appropriate only when there are questions of law or fact common to the class. See RCFC 23(a)(2). The principal legal issue in this case is whether the STB's issuance of a NITU on April 2, 2004, resulted in an unconstitutional taking under the Fifth Amendment. The primary question of law, therefore, is common to all class members. The Court recognizes that in order to address this primary legal issue, the parties will have to address several sub-issues, including: (1) What interest did the Seaboard Air Line Railway, the predecessor in interest of the Seminole Gulf Railway, obtain in the early 1900s when it acquired this right-of-way; (2) what was the effect of the STB's issuance of the April 2, 2004 NITU on the railroad's interest; and (3) did the class members own a compensable property interest on April 2, 2004. Resolution of the first two issues are common to the class, while resolution of the third issue will require development of facts specific to each individual class member.

Third, the Court may grant a motion for class certification only if the claims of the representative parties are typical of the claims of the class. See RCFC 23(a)(3). The named Plaintiffs and class members allege identical legal claims. Specifically, the representative parties allege that the STB's issuance of the April 2, 2004 NITU effected a taking of their property in violation of the Fifth Amendment to the United States Constitution. Although there may be specific factual differences among class members, the Court is satisfied that the claims of the representative parties are typical of the claims of the class.

Fourth, class certification is permitted only if the Court is satisfied that the representative parties will fairly and adequately protect the interests of the class. See RCFC 23(a)(4). The Court is aware of no facts that might raise a potential conflict of interest between the named Plaintiffs and potential class members. Accordingly, the Court finds that the named Plaintiffs will fairly and adequately protect the interests of the class without a conflict of interest.

**The Requirements of Rule 23(b) are Satisfied Here**

In addition to satisfying the prerequisites set forth in Rule 23(a), Plaintiffs must also show that the requirements of Rule 23(b) have been satisfied:

> **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the United States has acted or failed to act on grounds generally applicable to the class; and (2) the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of a class action.

As discussed below, each of these elements has been met here.

First, the Court finds that the United States acted on grounds generally applicable to the named Plaintiffs. Plaintiffs' claims, like those of the potential class members, relate to the STB's issuance of the April 2, 2004 NITU. The United States' act, therefore, is generally applicable to the proposed class members.

Second, the Court finds that questions of law and fact common to the members of the class predominate over any questions affecting only individual members and that a class action will be a superior method of resolving this controversy. The three legal issues presented above will be the predominant questions this court needs to answer in adjudicating this matter on behalf of all class members. It follows that the commonality requirement of RCFC 23(b)(2) is satisfied.

Finally, also pursuant to RCFC 23(b)(2), the court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The superiority requirement is met where "'a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Barnes v. United States, 68 Fed. Cl. 492, 499

(2005) (quoting Fed. R. Civ. P. 23 Advisory Committee Notes (1966 amendment)). Class certification is clearly a superior method of adjudicating the claims of this class because, according to Plaintiffs' estimates, the number of potential class members could exceed 500. A scenario where these hundreds of individuals either seek to join a lawsuit or initiate their own separate lawsuits to remedy their claims would undoubtedly involve the expenditure of more time, effort, and expense by the United States and the potential plaintiffs than will be necessary if this matter proceeds as a class action.

What remains, then, is for this court to determine that the class vehicle will promote uniformity of decisions without sacrificing fairness to the potential class members. Id. Treating this matter as a class will promote uniformity of decision because it will obviate the possibility of inconsistent rulings in individually pursued cases. Further, because the class members' claims are not adverse to one another, there appears to be little likelihood that class proceedings in this case will be unfair or cause other undesirable results to the members. For these reasons, the court finds that a class action is the superior method of resolving this case. Certification of this action as an opt-in class under RCFC 23 is appropriate.

In accordance with RCFC 23(c)(1)(B), if the Court grants class certification it must "define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g)."

**Definition of the Class**

As agreed by the parties, the class shall consist of those individuals:

(1) who owned property abutting or underlying the Seminole Gulf Railway between milepost SW 892 and milepost 904.4 on April 2, 2004;

(2) whose property was allegedly taken in violation of the Fifth Amendment to the United States Constitution as a result of the Surface Transportation Board's (STB) issuance of the April 2, 2004 Decision and Notice of Interim Trail Use or Abandonment ( the NITU); and

(3) who affirmatively opt into this lawsuit in accordance with the procedures outlined in the Court's Scheduling Order, issued this date.

**Definition of the Class Claims**

The class claims a violation of the Fifth Amendment of the United States Constitution resulting from the STB's issuance of the April 2, 2004 NITU. This Court has jurisdiction over claims for "just compensation" founded upon the Takings Clause of the Fifth Amendment under the Tucker Act, 28 U.S.C. § 1491. Moden v. United States, 404 F.3d 1335, 1341 (Fed. Cir. 2005). The class also claims delay damages from the date of the alleged takings (April 2, 2004) until the date the compensation is paid. In addition, the class seeks reimbursement for its attorneys' fees, costs,

and expenses of this action pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4651-4655.

**Identification of Class Issues**

The principal legal issue in this case is whether the STB's issuance of the NITU on April 2, 2004, resulted in an unconstitutional taking under the Fifth Amendment. In order to address this primary legal issue, the parties will have to address several sub-issues, including:

(1) What interest did the Seaboard Air Line Railway, the predecessor in interest of the Seminole Gulf Railway, obtain in the early 1900s when it acquired this right-of-way?

(2) What was the effect of the STB's issuance of the April 2, 2004 NITU on the railroad's interest?

(3) Did the class members own a compensable property interest under Florida law on April 2, 2004?

**Identification of Potential Defenses**

The United States' defenses may include:

(1) the class members did not own a compensable property interest under Florida law on April 2, 2004;

(2) the class members were not the owners of any relevant property on the date of the alleged taking, April 2, 2004; and

(3) the STB's issuance of the April 2, 2004 NITU did not result in the taking of any property owned by a specific class member.

**Appointment of Counsel**

Under RCFC 23(g), this Court is required to appoint class counsel when it certifies a class action. See RCFC 23(g)(1)(A). To serve as class counsel, an attorney must be able to fairly and adequately represent the interests of the class. RCFC 23(g)(1)(B). In appointing class counsel, the Court must evaluate 1) the work the potential class counsel has done in identifying or investigating potential claims in the action, 2) the potential class counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, 3) the potential class counsel's knowledge of the applicable law, and 4) the resources the potential class counsel will commit to representing the class. RCFC 23(g)(1)(C)(i).

In this instance, Plaintiffs' lead counsel, Mark F. "Thor" Hearne, is a member and principal of the law firm of Lathrop & Gage L.C. Mr. Hearne has more than 20 years of experience in real estate, land use regulation, and related federal and state litigation. Moreover, Mr. Hearne has practiced before this Court representing property owners in a number of other Trails Act takings cases. See Miller v. United States, No. 1:03-cv-02849; Illig v. United States, No. 1:98-cv-00934; Town of Grantwood Village v. United States, No. 1:98-cv-00176. Two of these cases, Miller and Illig, were certified as class actions in this Court. Both of these cases, like this matter, concerned takings claims and the Trails Act. See Illig v. United States, 67 Fed. Cl. 47, 48-49 (2005); Miller v. United States, 67 Fed. Cl. 542, 543 (2005). Mr. Hearne's co-counsel, Lindsay S.C. Brinton, an associate at Lathrop & Gage L.C., has experience with rails-to-trails litigation and assisted Mr. Hearne as a law clerk with the litigation of Illig and Miller.

Lathrop & Gage L.C. is a large regional law firm with approximately 250 attorneys, and maintains an office in Washington D.C. Plaintiffs' counsel has informed the Court that Lathrop & Gage possesses the requisite financial and personnel resources necessary to represent the Plaintiffs in this class, and the Court has no reason to question this representation. Accordingly, the Court finds that Mr. Hearne, Ms. Brinton and Lathrop & Gage satisfy the requirements to serve as class counsel under RCFC 23(g).

## Conclusion

Plaintiffs' Motion for Class Certification is **GRANTED**. Identification, notification, and closing of the class shall proceed in accordance with Rule 23(c)(1)(C)(2)(B) and with the schedule set forth in the Court's Scheduling Order issued this date.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**