# In the United States Court of Federal Claims

No. 08-431L
(Filed December 11, 2008)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| **EARLEEN FAUVERGUE et al.,** | Takings; Rails to Trails Act, 16 U.S.C. §§ 1241-1251 (2000); statute of limitations, 25 U.S.C. § 2501 (2000); motion to amend class-action complaint; RCFC 15(a), (c)(C); relation back of class-action complaint. |
| Plaintiffs, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Mark F. (Thor) Hearne, II, St. Louis, MO, for plaintiffs.  Lindsay S.C. Brinton and Meghan S. Largent, Lathrop & Gage, L.C., of counsel.

Kristine S. Tardiff, Concord, NH, with whom was Assistant Attorney General Ronald J. Tenpas, for defendant.  Elizabeth Nicholas, Environment & Natural Resources Division, Washington, DC, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER,** Judge.

Presented as an issue of first impression after argument on a contested motion to amend a complaint for a taking of property under the Rails to Trails Act, 16 U.S.C. §§ 1241-1251 (2000), is whether a class-action complaint can be amended to add named parties after the statute of limitations set forth in 28 U.S.C. § 2501 (2000), has expired.  The court rules that amendment of the complaint does not resolve the issue of whether a class-action complaint can be maintained for individual named plaintiffs or other class members, all of whom had claims that, if filed individually, would be timed barred.  The court will decide that issue when ruling on plaintiffs' separate motion for class-action certification.

## FACTS

The complaint filed on June 12, 2008, recites that on June 21, 2002, Earleen Fauvergue and putative class members ("plaintiffs") 1/ were landowners along the former Memphis Carthage & Northwestern Railroad Company (the "MCNRC") railroad line stretching from Jasper County, Missouri, to Cherokee County, Kansas (the "line"). The line was subject to a Notice of Interim Trail Use or Abandonment (the "NITU") published on June 21, 2002, and had since been turned into a public hiking trail.

The Rails to Trails Act, 16 U.S.C §§ 1241-1251 (the "Trails Act"), was enacted in the early 1980's to promote the conversion of abandoned railroad lines into recreational trails. Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 5 (1990). In general terms, once a railroad abandons use of its track, the fee owners of the burdened estate automatically gain their reversionary interest in the easement. The aegis behind the Trails Act is exploitation of railroad property interests by granting easements to third parties for alternative uses of the land where railroad tracks previously traversed. The Trails Act preserves the railroad's right-of-way by affording a State, municipality, or private group an opportunity to negotiate with a railroad to assume temporary managerial responsibility to implement an interim use of the land to build recreational trails. See Presault, 494 U.S. at 6-8. If an agreement is reached, the interim trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d) (2000). This process has been termed "railbanking." Caldwell v. United States, 391 F.3d 1226, 1229 (Fed. Cir. 2004), reh'g en banc denied, cert. denied, 546 U.S. 826 (2005).

The railbanking process typically starts when a railroad files an application, or other documentation, with the Surface Transportation Board (the "STB") stating its intention to abandon some part of a line. In turn, the STB will publish a notice of exemption in the Federal Register. To avoid abandonment of the track, and take advantage of the Trails Act, a State, municipality, or private group can file a railbanking petition with the STB. If the railbanking petition is sufficient, 2/ and the railroad agrees to negotiate, the STB will issue a NITU, which allows the railroad to salvage track and equipment, discontinue service, and

---

1/ Ms. Fauvergue filed the complaint in her name and in anticipation of class-action certification. As Ms. Fauvergue is the only named plaintiff, the court refers to "plaintiffs" because the original complaint was filed as a class-action complaint.

2/ The railbanking petition must contain (1) a map of the right-of-way, (2) a statement indicating that the applicant will assume financial and legal liability of the right-of-way, and (3) an acknowledgment that the right-of-way may be reactivated for railroad use in the future. See Caldwell v. United States, 391 F.3d 1226, 1229 (Fed. Cir. 2004).

prepare for the interim use without actually abandoning the railroad line.  See generally Caldwell, 391 F.3d at 1229-32.  If subsequent negotiations between the railroad and the applicant for interim trail use are successful, the NITU extends indefinitely; the STB retains jurisdiction for potential future railroad use; and the reversionary interests of the surrounding landowners, which would ordinarily vest upon abandonment of the rail line by the railroad, continue to remain dormant until actual abandonment.  Id.

Most importantly to this motion, as held by the United States Court of Appeals for Federal Circuit in Caldwell, the NITU publication date is the date on which the statute of limitations, 28 U.S.C. § 2501, commences for all claims under the Trails Act.  Caldwell, 391 F.3d at 1235 (holding that "the appropriate triggering event for any takings claim under the Trails Act occurs when the NITU is issued.").

In 1876 the MCNRC secured a 100-foot-plus wide strip of land, through condemnation decrees in Missouri and easements in Kansas, to construct railroad lines.  The terms of the condemnation decrees included the automatic abandonment of the easements once MCNRC, or MCNRC's successor-in-interest, ceased operating a railroad across the right-of-way.  3/  The constructed line included a 28.25-mile-long stretch from Columbus, Kansas, in Cherokee County, to Carthage, Missouri, in Jasper County – the land at issue in this action.

The railroad easements remained in the MCNRC's name until 1980, when the easements were transferred to the St. Louis and San Francisco Railway Company, which, through a series of mergers in 1995, became the Burlington Northern and Santa Fe Railway Company (the "BNSF").  The BNSF filed a Notice of Exemption with the STB to abandon the line on May 23, 2002, after two years of nonuse of the line.

Opportunistically, the city of Carl Junction, a municipality located on the Kansas/Missouri border, and the Joplin Trail Coalition (the "JTC"), a nonprofit organization in Missouri, jointly filed on May 10, 2002, a NITU for the Missouri portion of the line, approximately 15.93 miles long.  Nineteen days later, on May 29, 2002, the JTC filed for a NITU for the Kansas portion of the line, covering a distance of 12.32 miles.  The STB granted both NITUs on June 21, 2002.  A trail-use negotiation period was established, and, following a series of 180-day extensions and reportedly acrimonious debates over the implications of creating a trail, the JTC and BNSF reached a Trail Use Agreement on June

---

3/  The proposed Second Amended Complaint, accompanying plaintiffs' motion to amend filed on October 31, 2008, elaborated that the condemnation decrees provided that the exclusive use and possessory property interests thereafter would revert to the fee owners.

16, 2003. This agreement purported to transfer the BNSF's interests in the easement to the JTC. By letter dated October 20, 2003, the BNSF officially acknowledged that, as of October 31, 2003, it would discontinue use of the line. Moreover, on September 16, 2004, the BNSF entered into a quitclaim deed with the JTC to transfer all land along the line in Missouri.

The complaint alleges that the trail development proceeded without the United States holding any proceedings to establish a new easement or condemnation decree and without the United States compensating, or offering to compensate, plaintiffs. Plaintiffs claim that the rail-to-trail conversion has deprived them of the value of the land now occupied by the trail and also has diminished the value of the adjoining property. Plaintiffs further assert that the taking violates their right to just compensation under the Fifth Amendment to the U.S. Constitution, specifically that the rail-to-trail conversion constituted a physical taking of property by the United States.

On June 12, 2008, plaintiffs filed their complaint in the United States Court of Federal Claims, and the case was assigned to Senior Judge Loren A. Smith. On June 18, 2008, plaintiffs filed a motion, with a supporting memorandum, to certify a class. On August 15, 2008, plaintiffs moved for leave to file an amended complaint. On August 21, 2008, defendant filed its answer and response to plaintiffs' motion for leave to file an amended complaint and defendant's response to plaintiffs' motion for class certification. Also on August 21, 2008, plaintiffs filed their reply brief on the motion seeking leave to amend.

On September 12, 2008, before Judge Smith had ruled on the motion to amend – the same day this case was transferred to the undersigned – plaintiffs inexplicably filed their Second Amended Complaint. On September 18, 2008, defendant moved to strike plaintiffs' amended complaint. By order entered on October 3, 2008, this court granted defendant's motion to strike plaintiffs' first amended complaint. Plaintiffs were directed to file by October 17, 2008, a motion to file a second amended complaint, with defendant to respond by October 31, 2008; plaintiffs to reply by November 10, 2008; and defendant to file a sur-reply by November 20, 2008. 4/

---

4/ Plaintiffs' October 13, 2008 motion to file their Second Amended Complaint sought to add fifteen individuals as newly named plaintiffs; these individuals were included in the original complaint as putative class members. Pls.' Br. filed Nov. 10, 2008, at 7 n.1. Defendant asserts that plaintiffs are attempting to add twenty new plaintiffs. Def.'s Br. filed Nov. 20, 2008, at 9.

As originally framed by the October 3, 2008 order, the issue was whether a timely class-action complaint, filed by one named party on behalf of a larger putative class of similarly situated plaintiffs, can be amended to include putative class members as named plaintiffs after the six-year statute of limitations under 28 U.S.C. § 2501 has expired.

## DISCUSSION

Given the unique procedural disposition of plaintiffs' motion to amend a class-action complaint, this opinion focuses on issues necessary to resolving whether, under RCFC 15(a), plaintiffs can submit a second amended complaint after defendant has answered. Qualification for certification under RCFC 23 is a separate issue that, although fully briefed, cannot take precedence over the prior fully briefed motion to amend. 5/ Moreover, because plaintiffs preempted a ruling on their motion to amend by filing the amended complaint, the matter commands immediate attention.

A grant or denial of a motion to amend under RCFC 15 is within this court's discretion. Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1403 (Fed. Cir. 1989). Under RCFC 15(a)(2), 6/ once a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The United States Supreme Court in

---

5/ This court initially proposed to rule on the jurisdictional problems presented in this case as part of this motion for leave. See Order entered Oct. 3, 2008, ¶ 3. Upon further reflection and analysis of the issues presented in this case, the jurisdictional issues – specifically, issues stemming from the recent Supreme Court case of John R. Sand & Gravel Co. v. United States, 128 S. Ct. 750 (2008) – will be addressed in a separate order.

6/ The Rules of the United States Court of Federal Claims correspond to the Federal Rules of Civil Procedure. See 28 U.S.C. § 2071(a) (2000). RCFC 15(a) "Amendments Before Trial" provides:

(1)     A party may amend its pleading once as a matter of course:
(A) before being served with a responsive pleading; or
(B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.

(2)     Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

<u>Foman v. Davis</u>, 371 U.S. 178 (1962), set forth the standard for determining when amendment under Rule 15(a) is appropriate:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded.  If the underlying facts or circumstances relied upon by a plaintiff may be proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason - such as <u>undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment</u>, etc - the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

371 U.S. at 182 (citation omitted) (emphasis added).  These <u>Foman</u> exceptions have been widely accepted as defining the latitude contemplated by "freely given" amendments under RCFC 15(a).  <u>See</u> <u>Mitsui Foods</u>, 867 F.2d at 1403; <u>see also</u> <u>Te-Moak Bands of Western Shoshone Indians of Nev. v. United States</u>, 948 F.2d 1258, 1262-63 (Fed. Cir. 1991) (ruling that delay of eight years was too long under Rule 15(a) because moving party failed to show reasonableness of neglect and delay).

Amendments, including the addition of new plaintiffs, under RCFC 15(a) can relate back to the filing date of the complaint.  RCFC 15(c) allows

> [a]n amendment to a pleading [to] relate[] back to the date of the original pleading when:  (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted. . . [<u>7</u>/]

---

<u>7</u>/  One judge of the Court of Federal Claims has applied the four-factor test for the relation-back doctrine as advanced in  <u>Olech v. Village of Willowbrook</u>, 138 F. Supp. 2d 1036, 1044-45 (N.D. Ill. 2000).  <u>See</u> <u>Holland v. United States</u>, 62 Fed. Cl. 395, 407-08 (2004) (order granting motion to file second amended complaint) (<u>citing</u> <u>Baldwin Park v.</u>

The Federal Circuit makes a general inquiry to determine "whether a claim should relate back [by] focus[ing] on the notice given [to the defendant] by the general fact situation set forth in the original pleading." Snoqualmie Tribe of Indians v. United States, 372 F.2d 951, 960 (Ct. Cl. 1967); see also Minn. Chippewa Tribe Red Lake Band v. United States, 768 F.2d 338, 340-41 (Fed. Cir. 1985). More recently, Barron Bankshares, Inc. v. United States, 366 F.3d 1360, 1369-70 (Fed. Cir. 2004), referred to Snoqualmie in analyzing the general fact situation and notice provided to the Government. Quoting the trial court's reference to Snoqualmie, the Federal Circuit in Barron Bankshares allowed "'later-added claims that arise out of the same transaction presented in plaintiffs' suit and that present the interests of a related party whose subsequent appearance here as a litigant the government clearly could have anticipated on the basis of the facts that plaintiffs initially had put into issue.'" 366 F.3d 1369-70 (citation omitted).

1. Plaintiffs' amendment under Rule 15(a)

Plaintiffs contend that the proposed Second Amended Complaint "simply clarifies and adds detail to the claims already properly and timely presented [in the complaint.]" Pls.' Br. filed Oct. 13, 2008, at 2. The Second Amended Complaint "adds Plaintiffs' names and their specific property locations to claims already encompassed and timely filed as members of the [opt-in] class included in the original [class action] complaint." Id. At the center of this dispute, plaintiffs included fifteen newly named party plaintiffs in the proposed Second Amended Complaint. Plaintiffs argue: "At most, the amended complaint merely changes the

---

7/ (Cont'd from page 6.)

Comm. Hosp. v. United States, 231 Ct. Cl. 1011, 1012 (1981), and Snoqualmie Tribe of Indians v. United States, 372 F.2d. 951, 960-61 (Ct. Cl. 1967)).

This test analyzes:

> (1) whether the new plaintiff's claim arose out of the "same conduct, transaction, or occurrence" as the original complaint; (2) whether the new plaintiff shares an "identity of interest" with the original plaintiff; (3) whether the defendant had "fair notice" of the new plaintiff's claim; and (4) whether the addition of the new plaintiff causes the defendant prejudice.

Holland, 62 Fed. Cl. at 407-08. Neither the U.S. Court of Claims nor the Federal Circuit has articulated a four-part test, although a later order entered in Holland made the same assertion. See Holland v. United States, 2005 WL6115375 at *5 (Fed. Cl. 2005).

status of these fifteen landowners from putative class members to named parties.  It does not seek to add any new claims or causes of action."  Pls.' Br. filed Nov. 10, 2008, at 20.

Plaintiffs also discount any prejudice to defendant from the addition of new parties to the amended complaint.  Plaintiffs note that discovery has not commenced, that plaintiffs had filed an original motion to amend before defendant's answer was filed, and that the amended complaint provides many of the documents that governmental officials had characterized as desirable while testifying in front of Congress about these types of cases.

Defendant levels the <u>Foman</u> element of prejudice against plaintiffs.  Defendant posits that allowing class members to "circumvent the six-year statute of limitations despite their failure to file their claims within that jurisdictional time limit" would be prejudicial to the Government.  Def.'s Br. filed Nov. 20, 2008, at 14.  Prejudice results from two attributes of a class action in the Court of Federal Claims:  (1) that members of the putative class in an opt-in class action are not "before the court" when the class action is filed, <u>id.</u> at 2; and (2) putative members in an opt-in class action under § 2501 cannot become named parties after the statute of limitations has elapsed because § 2501 is jurisdictional and cannot be tolled, <u>id.</u> at 8-9 (<u>citing</u> <u>John R. Sand & Gravel Co. v. United States</u>, 128 S. Ct. 750 (2008)).

Defendant also invokes <u>Foman</u>'s recognition that futility can defeat a motion to amend.  Defendant cites persuasive case law that found "proposed amendments to be futile because the court lacked jurisdiction over the claim that the plaintiff sought to add through an amendment to the complaint."  Def.'s Br. filed Oct. 31, 2008, at 7 (<u>citing</u> <u>Jablonski v. Pan Am. World Airways, Inc.</u>, 863 F.2d 289, 292 (3d Cir. 1988)).  The "proposed plaintiffs cannot use Fauvergue's class action complaint as a vehicle to bring individual claims that they failed to file prior to the expiration of the six-year statute of limitations."  Def.'s Br. filed Oct. 31, 2008, at 4.  Accordingly, defendant argues that the proposed amendments, especially those adding new named parties, should fail because of futility. <u>8/</u>

---

<u>8/</u>  Defendant's invocation of futility is not appropriate.  Futility, as applied by the Federal Circuit, can be a factor when proposed amendments are rendered moot because of prior rulings on the merits in the case.  <u>Mitsui Foods</u>, 867 F.2d at 1404, presents the quintessential example of when "apparent futility" can defeat a motion to amend under Rule 15(a).  <u>Id.</u>  Plaintiff in <u>Mitsui</u> appealed, <i>inter alia</i>, whether the United States Court of International Trade erred in denying plaintiff's motion to amend.  Mitsui was a Japanese company that imported tuna into the United States.  The United States Customs Service classified Mitsui's tuna under item 112.34, TSUS, and assessed a related duty of 12.5 per centum <i>ad valorem</i>.  Mitsui protested the classification, claiming that its tuna should alternatively be classified as 112.30, TSUS, and assessed a duty of 6 per centum <i>ad valorem</i>.

Defendant's remaining arguments attempting to explicate the interplay between § 2501, tolling, and amendment of an opt-in class action complaint under RCFC 15 define the issue before this court. Defendant and plaintiffs devote much attention to interpreting and reconciling two lines of cases from the Supreme Court: first, the cases interpreting § 2501, culminating with definitive ruling in John R. Sand & Gravel, 128 S. Ct. 750, the statute of limitations applicable to the Court of Federal Claims' jurisdiction; and, second, Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345 (1983), and American Pipe and Construction Co. v. Utah, 414 U.S. 538 (1974), which permit tolling of the statute of limitations for putative class action members once class certification had failed.

Defendant's argument is premised on the fact that, although Ms. Fauvergue filed her complaint in a timely fashion, none of the putative class members named as additional plaintiffs were parties to the complaint. Therefore, any filings by putative class members after the six-year limitations period of § 2501 expired only could be allowed under the doctrine of equitable tolling. Defendant thus interprets the holding in John R. Sand & Gravel as establishing § 2501 as an "absolute jurisdictional statute of limitations that cannot be equitably tolled." Def.'s Br. filed Oct. 31, 2008, at 10. Given its interpretation of John R. Sand & Gravel, defendant relegates as inapplicable the holdings in American Pipe and Crown Cork that permit the equitable tolling of a different statute of limitations for putative members who filed an opt-out class-action suit after their class failed to be certified.

Plaintiffs insist that the court has jurisdiction over the named plaintiff and putative class at the time of filing. Plaintiffs elaborate: "A class action suit is – by definition – a vehicle to present the claims of the similarly situated class members." Pls.' Br. filed Nov. 10, 2008 at 13. Plaintiffs cite as support American Pipe, 414 U.S. at 555; Crown Cork, 462

------

8/ (Cont'd from page 8.)

After Customs denied Mitsui's protest, Mitsui filed suit in the Court of International Trade. Mitsui moved for summary judgment, the Government cross-moved, and Mistui moved to amend and supplement its complaint. The Court of International Trade denied Mitsui's motion for summary judgment because Customs had properly classified Mistui's tuna. The Court of International Trade then denied Mitsui's motion to amend. On appeal the Federal Circuit affirmed both the denial of summary judgment and denial of Mistui's motion to amend. The court deemed the amendment futile because, "[e]ven if Mitsui's motion was granted and the amendment was permitted, the Court of International Trade's decision and judgment [on classification] still would be correct." Id. at 1404. In contrast to Mitsui, this court has made no rulings on the merits, nor has the court ruled on defendant's objections to jurisdiction which presume a dismissal of plaintiffs' complaint.

9

U.S. at 352-55; and <u>United Airlines v. McDonald</u>, 432 U.S. 385, 392-93 (1977). <u>9</u>/  The Supreme Court held in <u>American Pipe</u> that the statute of limitations is tolled to allow putative class members to intervene in a timely fashion when class certification is denied.  414 U.S. at 552-53; <u>see</u> <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 176 n.13 (1974) (clarifying that <u>American Pipe</u> established that "commencement of a class action tolls the applicable statute of limitations as to all members of the class.").  In <u>Crown Cork</u> the Supreme Court expanded on <u>American Pipe</u> by deciding that, if class certification fails, the statute of limitations is tolled to allow putative class members an opportunity not only to intervene, but to file their own complaints.  462 U.S. at 354.  In 2008 the Supreme Court in <u>John R. Sand & Gravel</u> resolved a jurisprudential debate by issuing a definitive ruling that, as a jurisdictional statute of limitations, § 2501 is immune from equitable doctrine and "not susceptible to equitable tolling." 128 S. Ct. at 755.  This rejection of equitable tolling in the context of a jurisdictional statute of limitations defines a threshold issue argued by plaintiffs that shall be resolved before addressing <u>John R. Sand & Gravel</u>, <u>American Pipe</u>, and <u>Crown Cork</u>.

Plaintiffs view equitable tolling as "utterly inapplicable to the matter presently before this Court."  Pls.' Br. filed Nov. 10, 2008, at 20-21.  Plaintiffs argue that jurisdiction has been established for all class members "because the original Complaint presented the claims of Earleen Fauvergue and all similarly situated landowners."  <u>Id.</u> at 21 (emphasis omitted).  The original complaint was timely filed – which has not been challenged by defendant – so "[w]e need not even reach the question of tolling, equitable or otherwise." <u>Id.</u>  Consequently, the threshold issue is whether, once the six-year limitations period of § 2501 has expired, the claims of any named plaintiffs added to the class action complaint under RCFC 15 are outside the jurisdiction of the Court of Federal Claims.

In this context the unique character of a class action in the Court of Federal Claims becomes pertinent.  For historical reasons related to the court's examination of its jurisdiction, Rule 23 recognizes only an opt-in class.  The Rule 23 Rules Committee Notes to the 2002 Revision illuminate the reasoning behind permitting exclusively opt-in class actions in the Court of Federal Claims: opt-out class actions are viewed as "inappropriate [] because of the need for specificity in money judgments against the United States, and the fact that the court's injunctive powers– the typical focus of an opt-out class– are more limited than those of a district court."  Unlike the opt-out class actions invoked in <u>American Pipe</u> and

---

9/  <u>United Airlines</u> teaches that putative class members can intervene to appeal the denial of class certification.  432 U.S at 394-95.  This case has not progressed to determination of class certification, thereby rendering the decision inapposite in the context of a motion to amend.

10

Crown Cork, an opt-in class action does not bind class members described in the class-action complaint. Each must take action to join the class once it is certified.

The Federal Circuit in Barron Bancshares distinguishes between the application of relation-back under RCFC 15(c) and the concept of equitable tolling. See 366 F.3d at 1370 n.5. Plaintiffs invoke Barron Bancshares as authority that tolling, equitable or otherwise, is irrelevant to a RCFC 15(c) motion to amend. In Barron Bancshares the Federal Deposit Insurance Corporation (the "FDIC") 10/ attempted to intervene more than six years after the filing of plaintiff's suit. 11/ Id. at 1369. The Court of Federal Claims allowed the action to proceed under RCFC 15(c). The trial court granted the FDIC's motion to intervene, holding that plaintiff's first amended complaint contained "'all the operative facts from which the FDIC's later-asserted claims arise,'" 366 F.3d at 1369; "taken as a whole," the facts aligned with Snoqualmie, 366 F.3d at 1369 (citation omitted). In affirming the trial court, the Federal Circuit discussed the premium of "notice" stressed in Snoqualmie and agreed that "'later-added claims that arise out of the same transaction presented in plaintiffs' suit and that present the interests of a related party whose subsequent appearance here as a litigant the government clearly could have anticipated on the basis of the facts that plaintiffs initially had put into issue[,]'" under RCFC 15(c), sufficiently relate-back to the timely filed complaint. 366 F.3d at 1369-70 (citation omitted).

Although the decision in Barron Bancshares is important for its holding, a footnote at the conclusion of the opinion is decisive on the issue raised by plaintiffs' motion to amend. The court concluded by stating, "We agree with the court that the FDIC's complaint sufficiently relates back [under RCFC 15(c)] to Barron's original complaint to overcome the

---

10/ Several inconsequential differences are noted between the FDIC's situation in Barron Bancshares and the unnamed plaintiffs' situation in this case. The FDIC, through its predecessor, had "actively participated in the suit as early as 1991," 366 F.3d at 1369, while the opt-in plaintiffs in this suit may, or may not, have participated at any point before the motion for leave was filed. A parallel between the FDIC as intervenor and the newly named plaintiffs in the case at bar is that the latter are, at least facially, part of the same cause of action, and the FDIC acted, as did the Government in this case, in "a role coincident with Plaintiffs' pursuit of [their] . . . claims." Id. (quoting Barron Bancshares, Inc. v. United States, No. 90-830C, slip. op. at 3 (Fed. Cl. June 25, 2001) (order denying dismissal of FDIC's Claims).

11/ The plaintiffs, who did not press a class-action complaint, filed their complaint on August 28, 1990; the FDIC filed its motion to intervene on March 27, 1997. See Barron Bancshares, 366 F.3d at 1369.

government's challenge based upon the six-year statute of limitations [in § 2501]." 366 F.3d at 1370. The court qualified its holding in the following footnote:

> Because we hold that the FDIC's complaint relates back to Barron's original complaint, we need not reach the issues of whether the statute of limitations [§ 2501] is subject to equitable tolling and whether certain agreements between the RTC and the United States Department of Justice served to toll the statute of limitations.

Id. at 1370 n.5 (emphasis added).

The law of the circuit is that equitable tolling does not apply to this RCFC 15 motion to amend the complaint. In fact, neither American Pipe nor Crown Cork uses the term "equitable tolling," but various forms of the word "toll" to explain their holdings. See American Pipe, 414 U.S. at 544, 554, 555, 558, 559; Crown Cork, 462 U.S. at 346, 348, 349, 350, 351. What is a temporary reprieve awaiting the resolution of the impact of John R. Sand & Gravel on RCFC 23, American Pipe, and Crown Cork almost undoubtedly will be ripe for decision when the court rules on plaintiffs' motion for class-action certification or when the RCFC 23 opt-in class members who had not filed prior to the expiration of the limitations period attempt to intervene, or file individually, if class certification fails.

Defendant submitted that, under equitable tolling theory, allowing this amendment would be futile and prejudicial. The Federal Circuit's holding that equitable tolling does not apply to a motion to amend under RCFC 15(c) defeats defendant's objection under the Foman elements. Per Barron Bancshares and the general notice requirement of Snoqualmie, plaintiffs successfully have satisfied the Foman standard for leave to amend. Upon plaintiffs' filing of a timely class action complaint, defendant was notified of the cause of action, the possibility that defendant would have to defend against a broader claim, 12/ and the provenance of these new claims from closely related parties. 13/ Because Rule 15(a) mandates that leave of court to amend should be freely granted, this court grants plaintiffs' motion for leave of court to file the second amended complaint.

---

12/ An opt-in class action complaint inherently broadens a claim.

13/ Defendant distinguishes between the cause of actions asserted by plaintiffs in Kansas and plaintiffs in Missouri. Assuming, *arguendo,* that defendant is correct, the Court of Claims in Snoqualmie allowed an amendment to include plaintiffs who "technically presented a new cause of action." Barron Bancshares, 366 F.3d at 1369 (discussing trial court's application of Rule 13(c) of former Indian Claims Commission, which is identical to RCFC 15(c), applied in Snoqualmie).

2.  Plaintiffs' second amended complaint considered under Rule 15(c)

Plaintiffs argue that RCFC 15(c) moots defendant's argument that 28 U.S.C. § 2501 does not recognize later-added plaintiffs in class action complaints, because RCFC 15(c) allows an amendment of a pleading to relate back to the date of the original pleading when the "claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  RCFC 15(c)(1)(B).

First, plaintiffs argue that the amendments relate to the "same 'conduct, transaction, or occurrence' described in the original Complaint" because the "issuance of [the same] NITU operated to take all of the Plaintiffs' property on June 21, 2002."  Pls.' Br. filed Nov. 10, 2008, at 16 (quoting RCFC 15(c)(1)(B)).  Second, plaintiffs assert that an identity of interest is present between Ms. Fauvergue, the original named plaintiff, and the fifteen landowners added as named plaintiffs in the amended complaint.  Plaintiffs add that, because these landowners were "involved in the proceedings from the start and share 'an identity of interest' with Ms. Fauvergue," more than "a mere unofficial involvement has been shown." Id. at 17.  Third, plaintiffs posit that defendant had fair notice of the fifteen new named plaintiffs, stating that fair notice "requires only that the defendant had 'fair notice that a legal claim existed,'" id. (quoting Holland v. United States, 2005 WL 6115375 at *5 (Fed. Cl. 2005) [14/] (order granting motion file third amended complaint) (quoting Creppel v. United States, 33 Fed. Cl. 590, 597 (1995) (order denying motion to amend complaint)).  15/  As a class-action complaint, plaintiffs view the nature of complaint as giving sufficient notice.  Fourth, plaintiffs dispute that the amendments could prejudice defendant because no evidence has been lost due to the passage of time and discovery is open for full exploitation by defendant.

Conceding that, while the fundamental question of a RCFC 15(c) inquiry is notice to the defendant, defendant denies that RCFC 15(c) can be "applied in a manner that enlarges the statute of limitations set forth in Section 2501[.]"  Def.'s Br. filed Nov. 20, 2008, at 11-12.  Based on John R. Sand & Gravel, § 2501 is a "jurisdictional" statute of limitations, and "courts may not apply equitable considerations to extend them."  Id. at 11.

In the event that RCFC 15(c) "can be used to circumvent the statute of limitations applicable to the claims of the putative class members in this case," Def.'s Br. filed Nov. 20, 2008, at 12, defendant asserts that the newly named plaintiffs have claims that lack identity

_____

14/  The order in Creppel discussed only the meaning of fair notice in Rule 15(c).

15/  See note 7 supra.

13

with that of Ms. Fauvergue.  Defendant agrees that all claims stem from the same NITU, published on June 21, 2002, but contends that plaintiffs in the Kansas segment of the line have claims that arise from different circumstances than those underlying the Missouri residents.  In addition, defendant insists that the individual property interests of the putative class members and Ms. Fauvergue are unique and cannot be agglomerated for purposes of satisfying a jurisdictional statute of limitations.

All plaintiffs, including the newly named plaintiffs from the putative class, have claims that, under <u>Snoqualmie</u>, arise out of the same transaction originally presented by Ms. Fauvergue in her timely filed complaint.  Moreover, the general fact situation, especially in the context of a class-action complaint, provided defendant with notice that other plaintiffs could enlarge the suit.  Insofar as significant differences inhere in the Missouri and Kansas plaintiffs' claims, that issue is appropriate to resolve as a challenge to plaintiffs' motion for class-action certification.  This court provisionally holds that the statute of limitations was not equitably tolled.  However, because plaintiffs must establish that the court has jurisdiction over those claims, the relation-back doctrine cannot be used to revive a class-action claim that is not within the jurisdiction of the Court of Federal Claims.

## CONCLUSION

Plaintiffs' motion for leave to file a second amended complaint is granted. Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Plaintiffs' Second Amended Complaint is filed this date.

2. A ruling will enter on the pending motion for class-action certification before the court sets a date for defendant to answer or otherwise respond to the Second Amended Complaint.  An order for supplemental briefing entered this date.


s/ Christine O.C. Miller

_____
**Christine Odell Cook Miller**
Judge


14